# EXHIBIT "A"

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

ROBERT MEANY, GRAHAM DICKINSON, JOHN BRISCOE, TODD GAMMON, MICHAEL FISK, PAUL UNRUH, JOVAN SILVA DELGADO, GREGORY LOBERG, VINCENT D'AMELIO, CARTER RUESS, DANIEL WERTER, JEFFREY ROGERS, ERIK NELSON, LANDON GRUBB, SAM BREAZEALE, BRENDA ABBLEY, DERECK ERNEST, ERIC JENSEN, DOUGLAS EDWARDS, DUSTIN FALK, AND DANIEL HAYES

*Plaintiffs,*

v.

ATOMIC PROTOCOL SYSTEMS OÜ D/B/A ATOMIC WALLET AND, EVERCODE INFINITE D/B/A EVERCODE LAB, KONSTANTIN GLADYSHEV A/K/A KONSTANTIN GLADYCH, ILIA BRUSOV A/K/A ILYA BEREZOVSKY A/K/A ILYA BERE, AND PAVEL SOKOLOV A/K/A PAUL SOKOLOV

*Defendants.*

CASE NO. 1:23-cv-01582-PAB-MEH

**Deleted:** AND

**Deleted:**

**Deleted:** AND

---

### FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs file this Complaint on behalf of themselves, and all other similarly situated users of Atomic Wallet consumers, against Defendants Atomic Protocol Systems OÜ d/b/a Atomic Wallet (hereinafter "Atomic Wallet"), Evercode Infinite d/b/a Evercode Lab (hereinafter, "Evercode Lab"), Konstantin Gladyshev a/k/a Konstantin Gladych (hereinafter, "Gladyshev"), Ilia Brusov a/k/a Ilya Berezovsky a/k/a Ilya Bere (hereinafter, "Brusov"), and Pavel Sokolov a/k/a Paul Sokolov (hereinafter, "Sokolov").

**Deleted:** and

**Deleted:** .

**INTRODUCTION**

1.      This is a class action brought on behalf of all persons who have suffered damages as a result of Defendants' negligent, fraudulent, and unlawful conduct in connection with its cryptocurrency platform, Atomic Wallet.

> **Deleted:** exchange

2.      Plaintiffs in this case deposited cryptocurrency with Atomic Wallet, a decentralized "wallet" that accommodates various cryptocurrencies and is available to users on both a desktop and mobile application.

> **Deleted:** Atomic Wallet is owned, designed, created, and advertised Defendants.

3.      Atomic Wallet is owned, designed, operated, and advertised by Defendants who, together under false aliases, operate a web interrelated of crypto blockchain companies incorporated in various countries throughout the world to disguise their Russian origins from the public and from regulators.

> **Deleted:** On or before June 3, 2023

4.      As a result of Defendants' negligent, fraudulent, and unlawful conduct, countless Atomic Wallet user wallets around the world were hacked by North Korean hackers, resulting in the loss of over $100,000,000.00 (100 million) USD worth of cryptocurrency related assets on or about June 3, 2023.

> **Deleted:** .
>
> **Formatted:** Font: 12 pt

2

5.      Defendants knew of existing security vulnerabilities in the Atomic Wallet platform since at least as early as April 2021 but failed to take necessary security measures or precautions to protect user data and funds. In particular, Defendants were informed by its security auditor Least Authority that funds held in Atomic Wallet may be at risk due to "existing security vulnerabilities" and that Atomic Wallet should not be deployed or used until the security vulnerabilities were sufficiently remediated but took no measures to inform users of those risks or protect against those risks.[1]

6.      Least Authority issued a report finding that that "the design and implementation of the Atomic Wallet system does not sufficiently demonstrate considerations for security and places current users of the wallet at significant risk." And that the platform was "insufficiently secure in protecting user assets and private data."[2] Least Authority warned Defendants of concluded:

> **In addition, until the issues and suggestions outlined in the report have been sufficiently remediated and the Atomic Wallet has undergone subsequent security audits, we strongly recommend against the Atomic Wallet's deployment and use."[3]**

7.      Least Authority highlighted security risks for Defendants, including but not limited to:

- current users are vulnerable to a range of attacks that may lead to the total loss of user funds, specifically due to the current use and implementation of cryptography;

---

[1] https://web.archive.org/web/20220210153123/https://leastauthority.com/blog/disclosure-of-security-vulnerabilities-in-atomic-wallet/ (last accessed June 13, 2023).

[2] *Id.*

[3] *Id.* (emphasis in original).

- a lack of adherence to wallet system design and development standards and best practices, reducing the overall security of the system and increasing the Atomic Wallet's attack surface;

- a lack of robust project documentation and a comprehensive test suite; and

- an incorrect use of Electron, a framework for building desktop applications, leading to an increased risk of potential security vulnerabilities and implementation errors; and

- as out-of-date and unmaintained dependencies.[4]

8.     Despite knowledge of security vulnerabilities, and recommendations to assess those vulnerabilities and protect user assets, Defendants failed to implement reasonable safeguards. As a result, the Atomic Wallet platform was hacked, and the Plaintiffs' funds stolen. Plaintiffs' wallets were vulnerable because of Defendants failure to implement security measures including those recommended by its own consulting security safety group and other measures that a reasonable company in the same industry should have implemented under the circumstances.

9.     These additional security measures also include but are limited to: implementing security practices that prevent the installation of unauthorized software; and/or implementing company-wide training and education on best practices when performing job functions that have a potential to introduce vulnerabilities and/or unauthorized disclosure of private information or transfer of cryptocurrency.

10.    As a result of Defendants' failures, over $100 Million in US Dollar equivalents were stolen from thousands of users who used the Atomic Wallet platform.

---

[4] https://web.archive.org/web/20220210153123/https://leastauthority.com/blog/disclosure-of-security-vulnerabilities- in-atomic-wallet/ (last accessed June 13, 2023) (emphasis added).

**PARTIES**

**I.    Plaintiffs**

11.    Plaintiff Robert Meany is a citizen and resident of the State of Connecticut. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Connecticut. Plaintiff's transactions spanned from approximately May 14, 2021, through approximately June 3, 2023, at which point approximately $42,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

12.    Plaintiff Graham Dickinson is a citizen and resident of the State of Colorado. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Colorado. Plaintiff's transactions spanned from approximately 2021 through approximately 2023, at which point approximately $33,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

13.    Plaintiff John Briscoe is a citizen and resident of the State of California. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in California. Plaintiff's transactions spanned from approximately 2021 through approximately 2023, at which point approximately $35,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

5

14.     Plaintiff Todd Gammon is a citizen and resident of the State of Florida. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Florida. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $55,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

15.     Plaintiff Michael Fisk is a citizen and resident of the State of Idaho. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Idaho. Plaintiff's transactions spanned from approximately 2023 through approximately 2023, at which point approximately $8,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

16.     Plaintiff Paul Unruh is a citizen and resident of the State of Kansas. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Kansas. Plaintiff's transactions spanned from approximately 2023 through approximately 2023, at which point approximately $35,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

17.     Plaintiff Jovan Silva Delgado is a citizen and resident of the State of Massachusetts. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Massachusetts. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $14,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

18.     Plaintiff Gregory Loberg is a citizen and resident of the State of Missouri. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Missouri. Plaintiff's transactions spanned from approximately 2022 through approximately 2023, at which point approximately $21,400 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

19.     Plaintiff Vincent D'Amelio is a citizen and resident of the State of New Jersey. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in New Jersey. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $43,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

20. Plaintiff Carter Ruess is a citizen and resident of the State of Nevada. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Nevada. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $13,500 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

21. Plaintiff Daniel Werter is a citizen and resident of the State of New York. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in New York. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $7,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

22. Plaintiff Jeffrey Rogers is a citizen and resident of the State of Ohio. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Ohio. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $90,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

23.     Plaintiff Erik Nelson is a citizen and resident of the State of Oregon. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Oregon. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $50,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

24.     Plaintiff Landon Grubb is a citizen and resident of the State of South Carolina. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in South Carolina. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $35,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

25.     Plaintiff Sam Breazeale is a citizen and resident of the State of Tennessee. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Tennessee. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $24,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

26.     Plaintiff Brenda Abbley is a citizen and resident of the State of Texas. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Texas. Plaintiff's transactions spanned from approximately 2018 through approximately 2023, at which point approximately $13,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

27.     Plaintiff Dereck Ernest is a citizen and resident of the State of Utah. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Utah. Plaintiff's transactions spanned from approximately 2022 through approximately 2023, at which point approximately $71,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

28.     Plaintiff Eric Jensen is a citizen and resident of the State of Virginia. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Virginia. Plaintiff's transactions spanned from approximately 2022 through approximately 2023, at which point approximately $110,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

10

Formatted: Font: 10 pt

29.     Plaintiff Douglas Edwards is a citizen and resident of the State of Washington. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Washington. Plaintiff's transactions spanned from approximately 2021 through approximately 2023, at which point approximately $11,400 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

30.     Plaintiff Dustin Falk is a citizen and resident of the State of Wisconsin. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in Wisconsin. Plaintiff's transactions spanned from approximately 2023 through approximately 2023, at which point approximately $82,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

31.     Plaintiff Daniel Hayes is a citizen and resident of the State of West Virginia. Plaintiff is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff and class members, pursuant to contract with and solicitations from Defendants, purchased, repurchased, invested, and/or reinvested cryptocurrency and held funds using the Atomic Wallet platform while in West Virginia. Plaintiff's transactions spanned from approximately 2020 through approximately 2023, at which point approximately $15,000 of Plaintiff's funds were stolen. As a result, Plaintiff sustained significant damages for which Defendants are liable.

Formatted: Font: 10 pt

## II.    Defendants

32.    As set forth below, Defendants together operate a web of interrelated, "decentralized" crypto blockchain companies. Defendants have each operated under various aliases and incorporated in multiple countries throughout the world in order to disguise their Russian origins and their business relationships with one another.

33.    **Defendant Atomic Protocol Systems OÜ d/b/a Atomic Wallet** was founded in 2017 as Atomic Swap by Defendants Gladyshev, Brusov, and Sokolov. Atomic Wallet represents itself publicly as being owned and operated solely by Gladyshev. Atomic Swap was released in 2018. Upon information and belief, Gladyshev changed or reincorporated this corporate entity under the name Atomic Wallet, which is incorporated in Tallinn, Estonia. Atomic Wallet offers a platform for buying, selling, and trading cryptocurrency, and holding funds, via a desktop and mobile application ("app"). It currently offers trading in over 500 cryptocurrencies and makes available various other investment opportunities involving cryptocurrency, including a staking program. Atomic Wallet operates in multiple jurisdictions throughout the world including in Estonia, Nigeria, Russia, Iran, Turkey, Istanbul, and Peru[5] and is available to customers internationally and throughout the United States.

34.    Defendant Evercode Infinite d/b/a Evercode Lab (hereinafter, "Evercode Lab") is a mobile and web software development company specializing in the crypto and fintech sector that was founded by Defendants Brusov and Sokolov. Evercode Lab develops crypto wallets and other blockchain tools for digital assets. Evercode Lab, under the ownership of Brusov and Sokolov, developed Atomic Wallet, including its desktop and mobile applications.[6] Evercode Lab has also

---

[5] https://www.linkedin.com/company/atomicwallet/people/ (last accessed June 21, 2023).
[6] https://evercodelab.medium.com/development-of-atomic-wallet-and-guarda-wallet-b3236569ad8f (last accessed July 6, 2023).

built other wallets such as Guarda Wallet, also founded by Brusov and Sokolov. Evercode Lab is responsible for development of the wallet, app creation and installation, account setup, app updates, and technical and marketing support. In particular, Evercode Lab provides mnemonic phrases on the wallets it develops and is responsible for updates to the wallet and apps. Evercode Lab was incorporated in Dubai, United Arab Emirates in January 2022, where its "main client and development office" is located. It also maintains an office in Larnaca, Cyprus.

35.    **Defendant Konstantin Gladyshev a/k/a Konstantin Gladych** is founder and CEO of Atomic Wallet, formerly Atomic Swap. Upon information and belief, Gladyshev is a citizen and resident of Russia who resides outside of the United States. Gladyshev obtained his PhD in data mining and machine learning from St. Petersburg State University of Telecommunications in Russia. Gladyshev incorporated Atomic Wallet in 2017 in Estonia and has since exercised majority control over all of Atomic Wallet's business activities at all times. Gladyshev is the sole executive at Atomic Wallet and one of two management board members, alongside Defendant Brusov. Gladyshev is the majority owner of Atomic Wallet, owning 74.4% of outstanding shares of the company. Gladyshev can make decisions without votes of assent from other shareholder Defendants based on his majority ownership. Gladyshev employs a "decentralized team" that works 100% remotely.[7]

36.    **Defendant Ilia Brusov a/k/a Ilya Berezovsky a/k/a Ilya Bere** is a shareholder of Atomic Wallet, owning 12.8% of all outstanding shares. She is also one of two management board members alongside Defendant Gladyshev. Brusov is also co-founder of Defendant Evercode Lab along with Defendant Sokolov. Upon information and belief, Brusov is a citizen and resident of Russia, who resides outside the United States.

---

[7] *See* https://atomicwallet.io/blog/christmas-greetings (last accessed June 21, 2023); https://atomicwallet.io/careers (last accessed June 21, 2023);

37.     **Defendant Pavel Sokolov a/k/a Paul Sokolov** is a shareholder of Atomic Wallet, owning 12.8% of all outstanding shares. Sokolov is also co-founder of Defendant Evercode Lab along with Defendant Brusov. Upon information and belief, Sokolov is a citizen and resident of Russia, who resides outside of the United States. Sokolov serves as CTO of Atomic Wallet.

### RELATED ENTITIES

38.     **Changelly**: Changelly, a noncustodial instant cryptocurrency exchange, was established as a prototype startup by developers of Minergate—a crypto mining software product—including Gladyshev, in 2013 in Prague, Czech Republic. It became an independent exchange service in 2014. In 2015, the team allegedly created a separate unit to lead the exchange service with Gladyshev as CEO. Defendant Brusov served as COO from 2017-2018. Later in 2018, around the time that Atomic Wallet was established and that the Czech Republic began implementing KYC/AML procedures, Changelly moved its incorporation to Malta, Gladyshev stepped down as CEO, and Brusov was appointed as CEO. Atomic Wallet integrates Changelly into its system to effect instant exchange transactions.

39.     **Guardarian OÜ d/b/a Guarda Wallet (hereinafter, "Guarda Wallet"):** Guarda Wallet, like Atomic Wallet, is a crypto wallet. It was launched in 2017 by Guardarian OÜ and incorporated in Estonia. Brusov and Sokolov are both founders, beneficial owners, and shareholders of Guarda Wallet. Sokolov is a management board member and is CEO of Guarda Wallet.

### JURISDICTION AND VENUE

40.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action for a sum involving approximately $100,000,000 (100 million dollars), exclusive of interest and costs, in which at least one class member is a citizen of

Formatted: Font: 10 pt

a state and Defendants are citizens of a foreign state.

41.     Defendants are subject to personal jurisdiction in this District because they purposely availed themselves of the privilege of conducting activities in the United States and direct business activities toward, and conducts business with, consumers throughout the United States, including within the States of California, Colorado, Connecticut, Florida, Idaho, Kansas, Massachusetts, Missouri, New Jersey, Nevada, New York, Ohio, Oregon, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin, West Virginia, and all other States in the Union, through its website and mobile application, which is accessible to, marketed to, and used by United States investors. Furthermore, Defendants engaged in conduct that had a foreseeable, substantial effect in the United States connected with their unlawful acts.

Deleted: Colorado, Connecticut

42.     Alternatively, Defendants are subject to personal jurisdiction in this District pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

43.     Venue is proper in this District under 28 U.S. C. § 1391 because hundreds of Class Members reside in this District; Defendants engaged in business in this District; and Defendants entered into transactions and/or received substantial profits from Class Members who reside in this District.

## FACTUAL ALLEGATIONS

### I.     Background on Cryptocurrency and the Products at Issue

44.     A cryptocurrency is a form of digital asset based on a network that is distributed across many computers. At present, cryptocurrencies are not issued by central governments or authorities. Bitcoin is the most well-known cryptocurrency, but there are thousands of others. The value of some cryptocurrencies fluctuates with respect to the U.S. Dollar and all other fiat

Formatted: Font: 10 pt

currencies. Other cryptocurrencies, like U.S. Dollar Coin, are so-called stablecoins because their value is pegged to a fiat currency-for U.S. Dollar Coin, the U.S. Dollar.

45.     Different cryptocurrencies are typically designated by three-or four-letter symbols, like stock tickers. Bitcoin's is BTC. U.S. Dollar Coin is USDC. Coins at issue in this case include ETH, BZRX, OOKI, and several others.

46.     The system by which a network of computers securely and publicly records the transactions of a given cryptocurrency is called a blockchain. There are several different blockchains that record transactions of a variety of different cryptocurrencies. The blockchains at issue in this case are called Ethereum, Polygon, and the Binance Smart Chain. Each of these blockchains has a "native" cryptocurrency, in which the computers operating the network are rewarded, and supports other cryptocurrency transactions as well. Ethereum's native cryptocurrency, for example, is Ether (ticker: ETH).

47.     A cryptocurrency token is a unit of a specific virtual currency. These tokens are fungible and tradeable.

48.     Cryptocurrency tokens are held via a virtual wallet. The wallet is secured using cryptography and can typically be accessed only with a lengthy passphrase, which is a form of strong password. The wallet has an address-typically a seemingly random of string of letters and numbers-that can be published on the blockchain without revealing the identity of the wallet-holder.

49.     For cryptocurrency to reasonably function in a sophisticated marketplace, users must transact between currencies, crypto- or otherwise; must be able to lend and borrow; and must be able to earn some rate of return on stored assets.

50.    Equally important is that wallets in which these assets are stored must have an architecture and design, along with safety measures, which reasonably protect the stored assets from being compromised or hacked.

**II.    Defendants' Russian Origins and Web of Interrelated Companies**

51.    Defendants together operate a web interrelated of crypto blockchain companies that purposefully "decentralized" and incorporated in various countries throughout the world in an effort to avoid regulation and hide their Russian origins from the public and from regulators.

52.    Defendants operate under the same corporate structure as many other Russian-affiliated crypto and blockchain players: they incorporate in Estonia or Malta as a "decentralized" company that claims to be "globally-oriented" and publicly use false names to disguise their Russian identity. Gladyshev has reportedly stated, "***We are not like pushing it on the front page. Russian developers? C'mon!***"[8] Russia does not recognize cryptocurrency exchanges as legal banking entities and does not recognize cryptocurrency as a valid asset.

---

[8] https://decrypt.co/11652/why-russian-crypto-companies-hide-their-identity, last accessed July 5, 2023.

17

53. Defendants' connections are depicted in the graphic below:



54. Changelly, a noncustodial instant cryptocurrency exchange, was founded by Defendant Gladyshev and others in 2013. Gladyshev became CEO in 2015, and Brusov began serving as COO In 2017. Later in 2018, around the time that Defendant Atomic Wallet was established and that the Czech Republic began implementing KYC/AML procedures, Changelly moved its incorporation to Malta, Gladyshev stepped down as CEO, and Defendant Brusov was appointed as CEO.

55. Brusov confirmed that the move to incorporate in Malta was motivated by avoiding regulation. When asked whether Changelly would ever "introduce mandatory KYC if pressed by regulators," Brusov responded: "I can imagine that coming, I guess we will have to look for a way

to establish a compromise. By the way, we're planning to move our jurisdiction to Malta soon[.]"[9]

56.     Atomic Wallet integrates Changelly on its platforms to effect instant exchanges of cryptocurrencies in the app, and Gladyshev has stated "Changelly was the first project I worked at as CEO. Now it is one of our key partners[.]."[10]

57.     Atomic Wallet's software was developed by Defendant Evercode Lab, at the direction of Defendants Brusov and Sokolov. According to its website, Evercode Lab was responsible for development of the wallet, app creation and installation, account setup, app updates, and technical and marketing support. In particular, Evercode Lab provided "Mnemonic phrase for security and privacy" and has at all times been responsible for updates to the wallet and apps.

58.     Up until at least June 1, 2023, Evercode Labs had an entire page on its website dedicated to its development of Atomic Wallet.[11] Evercode Lab took down the Atomic Wallet page following the June 2023 hack, but a snapshot as of June 1, 2023, it is still accessible via Wayback Machine.

59.     ***Evercode Lab developed Atomic Wallet and made it available to users within a mere 4 months***. Its beta release was done within 6 months. Evercode Lab represents to users that Atomic Wallet "combines the maximum level of security possible as well as anonymity for its end-users" and that "safety and convenience were our priorities[.]"

---

[9] https://bitcoinist.com/changelly-ceo-speaks-on-monero-controversy-and-shapeshift-ending-anonymity-interview/
(last accessed June 30, 2023).
[10] https://changenow.io/blog/know-the-wallet-atomic (last accessed June 30, 2023).
[11] https://web.archive.org/web/20230601232054/https://evercodelab.com/cases/atomic.

60.     Evercode created for Atomic Wallet mnemonic keys, a set of 12 randomly generated words, which it claims were "stored by users only" and "cannot be stolen[.]" They also claim that with the wallet's Atomic Swap system "it is virtually impossible" for sensitive data to be lost or stolen. A 2020 blog post from Evercode Lab also states regarding Atomic Wallet, "The novelty of this wallet lies in usability and incapacity of private keys stealing because they don't get to the network."[12]

**Evercode Lab Website as of June 1, 2023:**

## Atomic wallet – universal cryptocurrency wallet

The Evercode Lab team developed a multi-cryptocurrency wallet making it possible to perform cross-blockchain swaps. This wallet can be used in an anonymous fashion and stores keys exclusively on users' devices.

### Security

To begin with, we engineered a dependable authorization system without compromising quality. The idea was to generate a mnemonic key, a set of 12 randomly generated words. Such phrases are stored by users only and used as logins to restore the wallet on other devices and as password recovery codes.

We also managed to enable users to sign transactions on their devices. As a result, it is not necessary to transfer unique keys to the network. Hence, these keys cannot be stolen there.

---

[12] https://evercodelab.medium.com/development-of-atomic-wallet-and-guarda-wallet-b3236569ad8f, last accessed July 6, 2023.

**Evercode Lab Website as of July 6, 2023:**

# 404

Page not found

## Sorry :(

## We coudn't find this page

**III.     Atomic Wallet and its Promises**

61.     Atomic Wallet describes itself as a "non-centralized custodial" crypto wallet used "for buying, staking, & exchanging" that is "[t]rusted by 5,000,000 users worldwide."

62.     Atomic Wallet represents that its platform is "secured" and promises users: "Your private keys are encrypted and never leave your device. You fully control your funds."

Formatted: Font: 10 pt

Formatted: Font: 12 pt, Bold

Formatted: Font: 10 pt

Formatted: Font: 10 pt

63.     Atomic Wallet also touts that it does not employ verification or know-your-customer "KYC" controls:



64.     Atomic Wallet's website describes its service as follows:

Atomic Wallet is a non-custodial decentralized wallet. It means that you own your backup phrase and private keys, thus, you fully control your funds. We have no access to your wallet and your sensitive information. Your 12-words backup and private keys are stored locally on your device and strongly encrypted. Moreover, your funds are not located in the wallet itself, there are safely stored on the blockchain. Atomic Wallet connects directly to the blockchain nodes and shows the information about your balances, transaction history and everything you see in the wallet. It also allows you to perform transactions on the blockchain. Atomic Wallet also provides you with exchange and buying crypto services with the help of our partners.

65.     The website further explains that user private keys and backup phrases are stored locally on user devices and "strongly encrypted" and that the wallet and all operations within are password-protected. Atomic Wallet claims not to store any "private data" and claims that wallets are safe so long as users do not compromise their own devices or share their 12-wor

Formatted: Font: 10 pt

backup or private keys. Atomic Wallet states on its website, "***Your backup is like a key to your wallet, whoever owns it, owns the funds. Take your passwords seriously.***"

66.     As set forth below, Atomic Wallet failed to take its own advice.

67.     Atomic Wallet's failure to implement security measures, including those recommended by its own consulting security safety group, resulted in thousands of users' private keys being compromised by hackers in June 2023, resulting in over $100 million of losses to affected users.

68.     The stolen funds appear at this point to be unrecoverable.

69.     As set forth fully below, Defendants failed to take reasonable steps to secure the platform and prevent the theft that occurred as a result.

**IV.     Defendants Were on Notice of Security Vulnerabilities on the Atomic Wallet Platforms but Failed to Inform Users of Relevant Risks and Failed to Mitigate Against Those Risks.**

    **a.     The Least Authority Audit Revealed Security Vulnerabilities and Recommended Action.**

70.     Almost two years before Atomic Wallet user wallets throughout the world were hacked, resulting in over $100 million in lost cryptocurrency-related assets, Defendants hired crypto research and security group Least Authority to conduct "a comprehensive security audit of the Atomic Wallet system design, in addition to the corresponding core, desktop, and mobile coded implementations" which began on March 3, 2021 and concluded upon delivery of the Initial Audit Report on April 7, 2021.

71.     In April 2021, Least Authority advised defendants of serious "existing security vulnerabilities" impacting the security of user wallets and funds. Least Authority reported that users were vulnerable to a total loss of assets due to the current use and implementation of cryptography, a lack of adherence to wallet system best practices and standards, a lack of robust project documentation, and an incorrect use of Electron, a framework for building desktop apps.

24

72.     In a published statement arising from its original audit and subsequent audits of Atomic Wallet, Least Authority stating in relevant part:

*[W]e strongly recommend that the Atomic Wallet team immediately notify users of the existing security vulnerabilities. In addition, until the issues and suggestions outlined in the report have been sufficiently remediated and the Atomic Wallet has undergone subsequent security audits, we strongly recommend against the Atomic Wallet's deployment and use.[13]*

73.     Least Authority confirmed that despite Defendants' knowledge of existing security vulnerabilities to protect user assets and private data, and recommendations to cure those security vulnerabilities, Defendants took no action to do so. Facing Defendants' refusal to remedy the security vulnerabilities, Least Authority warned Defendants it planned to write a blog post alerting existing users of the security vulnerabilities and offered Defendants an opportunity to take remedial action before doing so. Defendants still chose to take no action, and Least Authority wrote the blog post, which outlined Defendants' repeated failure to take action:

Following the delivery of the Initial Audit Report, the Atomic Wallet team provided a response to our findings on 16 November 2021. During the verification phase, our team reviewed the commits provided by Atomic Wallet and found that a significant number of issues and suggestions remain unresolved and that the implementation in its current state continues to be a security risk for users

. . .

[W]e notified the Atomic Wallet team of our plans to responsibly disclose the risk to users and invited them to work collaboratively with us in hopes that they would take immediate action, as recommended. We provided the Atomic Wallet team several opportunities to address the issues in our report and reached out several times to inform them of our reasoning and intentions prior to publishing this blogpost. However, they have not provided a sufficient or timely response after several suggestions by our team encouraging their proactive participation in this disclosure to alert users.

---

[13] https://web.archive.org/web/20220210153123/https://leastauthority.com/blog/disclosure-of-security- vulnerabilities-in-atomic-wallet/ (last accessed June 30, 2023) (emphasis added).

74.     Defendants did not undertake due diligence and remedial measures addressing vulnerabilities in its Atomic Wallet. Rather, Gladyshev responded with the following representations:

- We have taken all the issues discovered by Least Authority into full account.

- For some issues, we have already released corresponding patches and notified Least about doing so.

- To implement the remaining suggestions, we will need to rework some parts of our application's core architecture. This will take some more time as per our estimate, but we are working on it. ***None of those issues pose any security risks to our users***, as Atomic is a non-custodial wallet and all data is stored locally on users' devices. We are expecting to implement the rest of Least's suggestions in Q2 2022. Once we are done, we will re-audit the application.

- Atomic Wallet has undergone two security audits so far. The other audit, conducted by DerSecur Ltd, asserted: "The application's average security score is 4.7. This result is higher than the market average. ***The application can be considered secure enough***, nevertheless, we recommend bringing to the attention vulnerabilities discovered during the audit and consulting with the detailed results."

- Security is our highest priority, and we are continuously working on improving Atomic Wallet. Therefore, we have thoroughly reviewed Least's report and will be done implementing their recommendations in full in Q2, 2022.[14]

75.     Despite Defendants' promises and reassurances to customers of security, Atomic Wallet lacked reasonable safeguards and failed to implement measures to correct and mitigate against known security deficiencies. As a result, thousands of user wallets were hacked, and the Plaintiffs' funds stolen. Plaintiffs' wallets were vulnerable because of Defendants failure to implement security measures including those recommended by its own consulting security safety group. Defendants knew the risks in their security systems, and the measures recommended to mitigate those risks as reasonably necessary to protect Plaintiffs' wallets from a hack. The end result was a total theft of over $100 Million in US Dollar equivalents.

---

[14] Henken, *Least Authority Discloses Security Risks in Atomic Wallet* (Feb. 22, 2022), available at https://www.coindesk.com/tech/2022/02/10/least-authority-discloses-security-risks-in-atomic-wallet/ (last accessed June 21, 2023) (emphasis added).

**b. In June 2023, Hackers Exploited Atomic Wallet's Known Security Vulnerabilities and Stole over $100 Million in US Dollar Equivalents.**

76.     On June 3, 2023, numerous sources began reporting an attack on Atomic Wallet that resulted in significant financial losses for many victims, including Plaintiffs in this action. According to Elliptic Connect ("Elliptic"), a blockchain analysis company, an estimated 5,500 crypto wallets have been affected by the attack, and losses have been reported at over $100 million. In many cases, users have lost entire portfolios.

77.     On June 4, 2023 Atomic Wallet downplayed the hack on both its blog and its official Twitter account, reporting that "less than 1% of our monthly active users have been affected/reported," and that the "[s]ecurity investigation is ongoing" but has failed to provide any explanation as to the root cause of the losses.

78.     Elliptic has traced stolen funds and linked them to the notorious Lazarus Group. Lazarus Group is a well-known and state-sponsored hacking group out of North Korea believed to be responsible for stealing over $2 billion in cryptocurrency through various schemes. The U.S. FBI named Lazarus the prime suspect in a $100 million Harmony Protocol hack earlier this year. Lazarus is thus a known threat throughout the cryptocurrency marketplace.

79.     The Elliptic investigation has revealed that the funds have been linked to a coin mixing service called Sinbad—the preferred mixer of Lazarus—and the funds are being swapped for bitcoin (BTC) before being laundered through Sinbad. Coin mixers enable anonymity in cryptocurrency transactions by randomly mixing crypto transfers to obscure the origin and destination of the funds.

80.     Ellpitic's analysts found that the Sinbad mixer was a clone of a different, previously-sanctioned mixer, Blender, and Lazarus had laundered over $100 million in stolen funds using Sinbad by February 2023.

---

Formatted: Font: 10 pt

Deleted: ¶
¶
¶
<object>¶
[4] Henken, *Least Authority Discloses Security Risks in Atomic Wallet* (Feb. 22, 2022), available at https://www.coindesk.com/tech/2022/02/10/least-authority-discloses-security-risks-in-atomic-wallet/ (last accessed June 21, 2023).¶

Deleted: on crypto assets

Deleted: Elliptic's

Formatted: Font: 10 pt

81.     Atomic Wallet has since taken down their download server, "get.atomicwallet.io," likely out of concern that their software was breached and to prevent the spread of further compromises.

82.     Atomic Wallet is now collecting information from victims, asking what operating system they are using, where they downloaded the software, what was done before crypto was stolen, and where the backup phrase was stored. Victims are also asked to submit this information, and more, on a Google Docs "unauthorized transaction report" form[15] that was created to investigate the incident.

83.     Based on the mass losses due to a single event hack, Defendants failed in providing sufficient security to prevent the hack which clearly infiltrated Defendants' servers and/or architecture of its Atomic Wallet design enabling the theft of Plaintiffs' and others similarly situated assets and cryptocurrency property.

**V.      Defendants Profits from Trade Fees.**

84.     Atomic Wallet charges customers fees for use of the platform, which represents Defendants' primary revenue source.

85.     Atomic Wallet charges trade fees of 2-5%[16] for transactions involving fiat currency. In addition, the Atomic Website notes that the card's issuing bank will charge a processing fee that "can be quite high (around ~ 5%) as buying crypto purchases is seen as a high-risk operation."

---

[15] Available at https://docs.google.com/forms/d/1sSFm8VHKm-ifnjCGj-JA2godUWEOtV9tHVeI- DAaqVw/viewform?edit_requested=true.
[16] While one section of the Atomic Wallet website states, "there is a flat 2% fee ($10 min) that you'll have to pay if you buy cryptocurrency with fiat," another section states, "Atomic Wallet charges a flat 5% fee, with a minimum of $10 per operation."

27

86.     Atomic Wallet charges all users a "network fee" for its "mining" services involved in processing transactions, including its Staking Service. The Atomic Wallet website states that the fee "goes to miners to process [the staking] transaction" and "the fee size depends on the network's current load. The more transactions are queued to get confirmed, the higher the fee will be." The website further states:

> Think about it this way: when making a transaction, you're the miners' client. Since any miner is always looking to increase their revenue, they'll first choose the transactions that offer the highest potential pay. When the network is overloaded and lots of transactions are queued to get completed, some people will be willing to offer higher fees to make their transactions more appealing to miners and thus speed up the confirmation process. Therefore, the average network fee will go up.

87.     Atomic Wallet also charges a separate variable network fee for trades in BTC, LTC, and DGB, which changes depending on "the number of inputs" a single transaction will have. The website explains:

> What are inputs? Imagine you need to buy something that costs $350, and you need to pay with cash. Since a $350 bill doesn't exist, you'll use three $100 bills and one $50 bill. It will be quite easy for the cashier to count the money. If you use 35 $10 bills instead, though, things will get a bit harder.
>
> This works the same way on the blockchain. If Bob has 0.45 BTC on his balance, this amount is likely composed of numerous smaller BTC pieces. Instead of saying he owns 0.45 BTC, it would be more accurate to say he owns 0.1 + 0.2 + 0.1 + 0.05 BTC. Therefore, if he wanted to transfer 0.15 BTC to Alice, he'd be sending her 0.1 + 0.05 BTC, as opposed to a single 0.15 BTC piece.
>
> These 'pieces' are inputs. The more you're sending, the heavier the transaction will be.

88.     Atomic Wallet charges a separate fee for trades in ETH, which reportedly "has no impact on the network fee size."

89.     Atomic Wallet partners with exchanges and offers additional fees on those exchanges amounting to 0.5% plus the exchange partner commission.

---

*Formatted: Font: 10 pt*

*Moved up [4]:* While one section of the Atomic Wallet website states, "there is a flat 2% fee ($10 min) that you'll have to pay if you buy cryptocurrency with fiat," another section states, "Atomic Wallet charges a flat 5% fee, with a minimum of $10 per operation."

*Deleted:* ¶ ¶ ¶ <object> 6

*Formatted: Font: 12 pt*

*Moved (insertion) [5]*

*Moved up [5]:* Therefore, if he wanted to transfer 0.15 BTC to Alice, he'd be sending her 0.1

*Deleted:* 0.1 + 0.05 BTC.

*Formatted: Font: 10 pt*

**CLASS ALLEGATIONS**

90.    As detailed below in the individual counts, Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Rule 23(a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure.

**I.    Class Definitions**

91.    Plaintiffs seek to represent the following Nationwide Class and subclasses (collectively, the "Classes"):

(1)    **Nationwide Class**: All persons or entities in the United States who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

(2)    **California Subclass**: All persons or entities in the state of California who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

(3)    **Colorado Subclass**: All persons or entities in the state of Colorado who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

(4)    **Connecticut Subclass**: All persons or entities in the state of Connecticut who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

(5)    **Florida Subclass**: All persons or entities in the state of Florida who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

29

**(6)      Idaho Subclass**: All persons or entities in the state of Idaho who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(7)      Kansas Subclass**: All persons or entities in the state of Kansas who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(8)      Massachusetts Subclass**: All persons or entities in the state of Massachusetts who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(9)      Missouri Subclass**: All persons or entities in the state of Missouri who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(10)     New Jersey Subclass**: All persons or entities in the state of New Jersey who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(11)     Nevada Subclass**: All persons or entities in the state of Nevada who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(12)     New York Subclass**: All persons or entities in the state of New York who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023

30

**(13)     Ohio Subclass:** All persons or entities in the state of Ohio who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(14)     Oregon Subclass**: All persons or entities in the state of Oregon who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(15)     South Carolina Subclass**: All persons or entities in the state of South Carolina who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(16)     Tennessee Subclass**: All persons or entities in the state of Tennessee who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(17)     Texas Subclass**: All persons or entities in the state of Texas who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(18)     Utah Subclass**: All persons or entities in the state of Utah who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(19)     Virginia Subclass**: All persons or entities in the state of Virginia who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

31

**(20)    Washington Subclass**: All persons or entities in the state of Washington who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023;

**(21)    Wisconsin Subclass**: All persons or entities in the state of Wisconsin who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023; and

**(22)    West Virginia Subclass**: All persons or entities in the state of West Virginia who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023.

Excluded from the Classes are Defendants and their officers, directors, affiliates, legal representatives, and employees; any governmental entities; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

92.    The Class Period is January 1, 2017 through the present.

93.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes, or to include additional classes or subclasses, if investigation or discovery indicate that the definitions should be narrowed, expanded, or otherwise modified, before or after the Court determines whether such certification is appropriate as discovery progresses.

**II.    Numerosity**

94.    The Classes are comprised of thousands of consumers globally, who used the Atomic Wallet platform and whose assets were stolen in June 2023. Membership in the Classes

are thus so numerous that joinder of all members is impracticable. The precise number of class members is currently unknown to Plaintiffs but is easily identifiable through other means, such as through Atomic Wallet's corporate records or self-identification.

### III.   Commonality/Predominance

95.    This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

(a)    Whether Defendants owed a duty to Plaintiff and the Classes;

(b)    whether Defendants breached their duty to Plaintiff and the Classes;

(c)    whether Defendants' actions were the proximate and actual cause of Plaintiffs' and the Classes' losses

(d)    the type and measure of damages suffered by Plaintiffs and the Classes;

(e)    whether Plaintiffs and the Classes have sustained monetary loss, and the measure of that loss;

(f)    whether Plaintiffs and the Classes are entitled to consequential damages, punitive damages, statutory damages, disgorgement, and/or other legal or equitable appropriate remedies as a result of Defendants' conduct.

### IV.   Typicality

96.    Plaintiffs' claims are typical of the claims of the members of the Classes because all members were injured through the uniform misconduct in violation of laws described herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all such members. Plaintiff and members of the Classes have sustained damages from Defendants' common course of unlawful conduct. Further, there are no defenses available to any Defendants

33

that are unique to Plaintiffs.

**V.      Adequacy of Representation**

97.      Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse, conflicting, or antagonistic interests to those of the Classes. Plaintiffs anticipate no difficulty in the management of this litigation as a class action. To prosecute this case, Plaintiffs have chosen the undersigned law firms, which have the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

**VI.     Ascertainability**

98.      Members of the Classes are readily ascertainable and identifiable. Members of the Classes may be identified by blockchain ledger information and records maintained by Defendants or their agents.

**VII.    Requirements of Fed. R. Civ. P. 23(b)(3)**

99.      The questions of law or fact common to Plaintiffs' and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Classes. All claims by Plaintiffs and the unnamed members of the Classes are based on the common course of conduct by Defendants.

100.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

101.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the Classes as is in the case at bar, common questions will be held to predominate over individual questions.

34

### a. Superiority

102. A class action is superior to individual actions for the proposed Classes, in part because of the non-exhaustive factors listed below:

(a) Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside worldwide, nationwide, and throughout the state;

(b) Individual claims by Class members are impracticable because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

### VIII. Requirements of Fed. R. Civ. P. 23(c)(4)

103. As it is clear that one of the predominant issues regarding Defendants' liability is whether Defendants acted negligently, utilizing Rule 23(c)(4) to certify the Class for a class wide adjudication on this issue would materially advance the disposition of the litigation as a whole.

### IX. Nature of Notice to the Proposed Class.

104. The names and addresses of all Class Members are contained in the business records maintained by Atomic Wallet and are readily available to Atomic Wallet. Alternative notice will be proposed in the form of electronic internet based NFTs and/or traditional internet-based communications and/or notices or advertisements. The Class Members are readily and objectively identifiable. Plaintiffs contemplate that notice will be provided to Class Members by e-mail, mail, and published notice.

**COUNT 1**
**Negligence**
**(Plaintiffs Individually and on behalf of the Classes)**

105.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-104 above,

as if fully set forth herein.

106.     Defendants owed Plaintiffs a duty to maintain the security of the funds in Atomic

Wallet wallets, including but not limited to putting in place procedures such that a hacking attack

would not result in a multi-million dollar theft; it breached that duty; and Defendants' actions in

breaching their duty were the proximate and but-for cause of an injury-namely, the loss of funds

deposited with Plaintiffs' Atomic Wallet wallets.

107.     Defendants owed Plaintiffs a duty ensure that important passwords or security

details could not be revealed to bad actors; it breached that duty; and Defendants' actions in

breaching their duty were the proximate and but-for cause of an injury-namely, the loss of funds

deposited with Plaintiffs' Atomic Wallet wallets.

108.     Defendants owed Plaintiffs a duty secure against malicious attacks that could result

in the theft of millions of dollars of assets; it breached that duty; and Defendants' actions in

breaching their duty were the proximate and but-for cause of an injury-namely, the loss of funds

deposited with Plaintiffs' Atomic Wallet wallets.

109.     Defendants are therefore jointly and severally liable for Plaintiffs' injuries.

**COUNT 2**
**Gross Negligence**
**(Plaintiffs Individually and on behalf of the Classes)**

110.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-109

above, as if fully set forth herein.

111.     Defendants owed Plaintiffs a duty to maintain the security of the funds in Atomic

Wallet wallets, including but not limited to putting in place procedures such that a hacking attack

Deleted: 65

Deleted: is

would not result in a multi-million dollar theft; it breached that duty; and Defendants' actions in breaching their duty were the proximate and but-for cause of an injury-namely, the loss of funds deposited with Plaintiffs' Atomic Wallet wallets.

112.    Defendants failed to act in a reasonable manner by intentionally deciding not to implement security measures that a reasonable company in the same industry should have implemented under the circumstances.

113.    Defendants acted willfully and wantonly with a reckless disregard for Plaintiffs' and Class Members' funds when Defendants consciously and knowingly failed to implement appropriate security measures to protect user funds against malicious attacks, despite knowledge of existing security vulnerabilities and recommended action plans to address such vulnerabilities.

114.    Defendants owed Plaintiffs a duty ensure that important passwords or security details could not be revealed to bad actors; it breached that duty; and Defendants' actions in breaching their duty were the proximate and but-for cause of an injury-namely, the loss of funds deposited with Plaintiffs' Atomic Wallet wallets.

115.    Defendants owed Plaintiffs a duty secure against malicious attacks that could result in the theft of millions of dollars of assets; it breached that duty; and Defendants' actions in breaching their duty were the proximate and but-for cause of an injury-namely, the loss of funds deposited with Plaintiffs' Atomic Wallet wallets.

116.    Defendants are therefore jointly and severally liable for Plaintiffs' injuries.

**COUNT 3**
**Fraudulent Misrepresentation**
**(Plaintiffs Individually and on behalf of the Classes)**

117.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-116 above, as if fully set forth herein.

118.    Defendants made numerous misrepresentations of material facts to Plaintiffs and

37

Class Members about the security and safety of the Atomic Wallet platforms, including purported surveillance and controls that were in fact virtually non-existent.

119.    Defendants had knowledge of their misrepresentations at the time, as their security vulnerabilities had been identified by their own consulting security safety group.

120.    Defendants failed to share those security vulnerabilities with Plaintiffs and Class Members and instead touted and misrepresented the security of their platforms.

121.    Defendants made such misrepresentations with the intention inducing confidence and driving consumers to use their platforms as a non-centralized custodial crypto wallet and to engage in their buying, staking, and exchange services.

122.    Defendants intended that Plaintiffs and Class Members would act upon their misrepresentations by either deciding as a new user to use the platform and services or deciding as an existing user to continue using the platform and services.

123.    Plaintiffs and Class Members were unaware of the falsity of the misrepresentations made by Defendants.

124.    Defendants' misrepresentations induced Plaintiffs and Class Members into using Defendants' platforms as a non-centralized custodial crypto wallet and to engage in their buying, staking, and exchange services.

125.    Plaintiffs and Class Members actually relied on Defendants' misrepresentations and omissions in deciding to use Defendants' platforms as a non-centralized custodial crypto wallet and to engage in their buying, staking, and exchange services.

126.    Plaintiffs' and Class Members' reliance on Defendants' misrepresentations was reasonable.

127. Plaintiffs' and Class Members' reliance on Defendants' misrepresentations resulted in damage to Plaintiffs and Class Members, including but not limited to the loss of funds deposited with Plaintiffs' Atomic Wallet wallets.

128. Defendants are therefore jointly and severally liable for Plaintiffs' injuries.

**COUNT 4**
**Fraudulent Concealment**
**(Plaintiffs Individually and on behalf of the Classes)**

129. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-128 above, as if fully set forth herein.

130. Defendants concealed from Plaintiffs and Class material facts regarding the security and safety of the Atomic Wallet platforms, including but not limited:

• Security vulnerabilities identified by their own consulting security safety group;

• Courses of action recommended by Defendants' consulting security safety group to address existing security vulnerabilities; and

• Defendants failure to implement such recommended courses of action or any other courses of action to remedy the known, existing security vulnerabilities.

131. Defendants had knowledge of the concealment of such material facts.

132. Plaintiffs and Class Members were unaware of the falsity of the omissions and concealment of material facts made by Defendants.

133. Defendants concealed such material facts with the intention inducing confidence and driving consumers to use their platforms as a non-centralized custodial crypto wallet and to engage in their buying, staking, and exchange services.

134. Defendants intended that Plaintiffs and Class Members would act upon their omissions by either deciding as a new user to use the platform and services or deciding as an existing user to continue using the platform and services.

39

135.   Defendants' concealment resulted in damage to Plaintiffs and Class Members, including but not limited to the loss of funds deposited with Plaintiffs' Atomic Wallet wallets.

136.   Defendants are therefore jointly and severally liable for Plaintiffs' injuries.

**COUNT 5**
**Civil Conspiracy**
**(Plaintiffs Individually and on behalf of the Classes)**

137.   Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-136 above, as if fully set forth herein.

138.   Defendants made numerous misrepresentations and omissions to Plaintiffs and the Class Members about the safety and security of the Atomic Wallet platform to induce confidence and to drive consumers to invest on its platforms, misleading customers with the false impression that assets held on its platforms were safe and secure.

139.   Defendants entered into one or more agreements with each other for the purpose of making these misrepresentations and/or omissions and to induce Plaintiffs and the Class Members to induce confidence and to drive consumers to invest on its platforms.

140.   Defendants engaged in unlawful acts, namely negligence, misrepresentations, and omissions made to Plaintiffs and the Classes.

141.   Defendants' conspiracy substantially assisted or encouraged their own wrongdoing.

142.   Defendants had knowledge of such fraud and wrongdoing because of their relationships, as described above, and, as such, knew that the representations made to Plaintiffs were deceitful and fraudulent.

143.   Defendants' conspiracy caused damages to Plaintiffs and the Classes in the amount of their lost investments.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for a judgment on behalf of themselves and the Classes:

a.  Certifying the Class as requested herein;

b.  Awarding actual, direct, and compensatory damages;

c.  Punitive damages as appropriate

d.  Awarding restitution and disgorgement of revenues if warranted;

e.  Awarding allowable attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54, or any other applicable provision or principle of law; and

f.  Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims so triable.

Dated: August 11, 2023

Respectfully submitted,

By: */s/ Douglass A. Kreis*
Douglass A. Kreis, Esq.
Daniel J. Thornburgh, Esq.
D. Nicole Guntner, Esq.
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ**
dkreis@awkolaw.com
dthornburgh@awkolaw.com
nguntner@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Fax: 850-916-7449

*Counsel for Plaintiffs and the Class*