IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01582-PAB-MEH

**ROBERT MEANY** et al.,
*Plaintiffs*,

v.

**ATOMIC PROTOCOL SYSTEMS OÜ D/B/A ATOMIC WALLET** et al.,
*Defendants.*

---

### DEFENDANT EVERCODE INFINITE'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2), (5), AND (6)

---

Defendant Evercode Infinite ("Evercode") hereby moves to dismiss under Rule 12(b)(2), (5), and (6) the claims asserted against it in Plaintiffs' First Amended Class Action Complaint ("FAC") (ECF No. 15).[1]

### INTRODUCTION

Plaintiffs are 21 individuals who collectively had over $800,000 invested in cryptocurrency funds held in a cryptocurrency "wallet." North Korean hackers stole their money. Now, they seek to represent all victims of the hack in a nationwide class action against two foreign companies that developed and maintained the cryptocurrency wallet, along with certain individual corporate executives, all foreign citizens. But Plaintiffs served the wrong Evercode, the Court lacks personal jurisdiction over the right Evercode, and Plaintiffs fail to state a plausible claim for relief on any of their claims. The Court should dismiss all claims against Evercode.

---

[1] **Conferral Certificate:** Counsel for Evercode conferred with Plaintiffs' counsel by email and telephone on October 20, 2023. Plaintiffs oppose this Motion.

## COMPLAINT ALLEGATIONS[2]

Evercode is a software development company based in Dubai, United Arab Emirates (U.A.E.), where it was incorporated in 2022. FAC ¶ 34. Evercode developed a cryptocurrency "wallet," known as Atomic Wallet, that offers a platform for trading cryptocurrency and holding funds via a desktop and mobile application, or "app." FAC ¶¶ 33, 34. Evercode was responsible for wallet development, app creation and installation, account setup, app updates, and technical and marketing support. FAC ¶¶ 34, 57. Evercode also provides the mnemonic phrases used as logins for app users. FAC ¶¶ 34, 60. Evercode does not own or operate Atomic Wallet; rather, the app is offered to users by a separate entity, Atomic Protocol Systems OÜ ("Atomic Systems"). FAC ¶ 33.

In June 2020, Evercode posted a description of the Atomic Wallet product on its website[3]:

- Atomic Wallet "combines the maximum level of security possible as well as anonymity for its end-users," and "safety and convenience were our priorities."

- Atomic Wallet's mnemonic keys are "stored by users only" and, because "it is not necessary to transfer unique keys to the network . . . these keys cannot be stolen there."

- With the app's system for person-to-person cryptocurrency exchange, "it is virtually impossible" for sensitive data to be lost or stolen during exchange transactions.

FAC ¶¶ 58–60 & n.11. In a separate blog post in August 2020, Evercode stated that "[t]he novelty of this wallet lies in usability and incapacity of private keys stealing." FAC ¶ 60 & n.12.

Access to Evercode's website, https://evercodelab.com, is governed by Evercode's Terms of Use, attached as **Exhibit 1**.[4] These "define the rules for the using of the [Evercode] Website," and

---

[2] These allegations are taken as true only for purposes of Rule 12(b)(6).

[3] Plaintiffs cite a June 1, 2023 snapshot of the page via the Wayback Machine. FAC ¶ 58 & n.11. The same tool shows the page was originally posted on June 17, 2020. https://web.archive.org/web/20200617195450/https://evercodelab.com/cases/atomic.

[4] Because Plaintiffs incorporate Evercode's website into the FAC by reference, including screenshots, the Court may consider the website's Terms of Use. *See Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*, 353 F. Supp. 3d 1070, 1082–83 (D. Colo. 2018). The Court may also take judicial notice.

"[b]y accepting these Terms and using [Evercode's] Website, [users] agree to be legally bound" by them. Ex. 1 at 1. The Terms of Use disclaim all warranties and representations. Ex. 1 §§ 1.2, 1.3.

Atomic Systems made Atomic Wallet available to users worldwide. FAC ¶¶ 61–65. Each user accessed the app "pursuant to contract with" Atomic Systems, FAC ¶¶ 11–31, including an End User License Agreement ("EULA"), attached as **Exhibit 2**.[5] Each user "agree[d] to be bound by the terms and conditions set forth in th[e] EULA." Ex. 2 at 1. Per the EULA, Atomic Systems agreed to "provide updates and maintenance on the Software on an as needed basis." *Id.* § 2(B). The EULA expressly disclaims all warranties and representations with respect to Atomic Wallet. *Id.* §§ 10, 12.

The Atomic Systems Terms of Service, attached as **Exhibit 3**, governed use of the Atomic Systems website and Atomic Wallet app. Ex. 3 at 1. This includes a "Specifically Disclaimed Risks" provision stating that "[u]sing Virtual Currency software necessarily entails many risks" and "Atomic specifically disclaims and shall have no liability to You for the following risks: . . . theft of virtual currency tokens." *Id.* § 5. The Terms disclaim all warranties and representations. *Id.* §§ 6, 13.

In March 2021, a cryptocurrency research and security group, Least Authority, was hired to audit Atomic Wallet. FAC ¶ 70. In April 2021, Least Authority identified security vulnerabilities creating a risk of loss for user assets. FAC ¶ 71. On February 10, 2022, Least Authority issued a publicly available online statement cautioning users about the security vulnerabilities and recommending against use of Atomic Wallet until those vulnerabilities had been remedied. FAC ¶ 72 & n.13. Least Authority's public warning was highlighted in at least one news article in February 2022.

---

See *Labertew v. Winred, Inc.*, 2022 U.S. Dist. LEXIS 90580, at *17–18 (D. Utah May 18, 2022).

[5] Again, the Court may consider the EULA as incorporated into the FAC by reference or through judicial notice. Plaintiffs cannot circumvent the EULA through artful pleading. *See Kelvion, Inc. v. Petrochina Can., Ltd.*, 918 F.3d 1088, 1093–94 (10th Cir. 2019).

FAC ¶ 74 n.14. Atomic Systems' CEO issued a public response. FAC ¶ 74 & n.14.

On June 3, 2023, over two years after the Least Authority audit, North Korean hackers attacked Atomic Wallet, impacting an estimated 5,500 user wallets. FAC ¶ 76. Atomic Systems is investigating the hack, but there is no known explanation as to the root cause. *See* FAC ¶¶ 77, 82.

Less than three weeks after the hack, Plaintiffs filed a putative class action complaint asserting one negligence claim against Atomic Systems and its CEO (ECF No. 1). On August 16, 2023, Plaintiffs filed the FAC, adding Evercode and other defendants and alleging negligence, gross negligence, fraudulent misrepresentation, fraudulent concealment, and civil conspiracy.

## <u>ARGUMENT</u>

### I.    The Court Should Dismiss Under Rule 12(b)(5) Because Evercode Wasn't Served.

Rule 12(b)(5) allows a defendant to challenge improper service, including "serving the wrong person." *Richardson v. Carl's Jr.*, 2021 U.S. Dist. LEXIS 225600, at *11 (D. Colo. Nov. 23, 2021). When a defendant contests service, the "plaintiff bears the burden of making a prima facie case that he or she has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over the defendant." *Lopez v. Colorado*, 2020 U.S. Dist. LEXIS 42114, at *57 (D. Colo. Jan. 7, 2020) (alteration omitted), *adopted*, 2020 U.S. Dist. LEXIS 39123 (D. Colo. Mar. 6, 2020). That burden includes proving compliance with Rule 4's procedures for effecting service. *Id.* at *57–58. The Court may consider affidavits and other documentary evidence submitted by the parties. *Id.* at *57.

Here, Plaintiffs served the wrong entity. Plaintiffs named "Evercode Infinite d/b/a Evercode Lab," a U.A.E. corporation, as a defendant, FAC ¶ 34, but Plaintiffs served Evercode Lab Limited, a separate entity incorporated in Hong Kong. *See* attached **Exhibit 4**. Evercode Infinite, the named defendant, has not been served. Because Plaintiffs served the wrong entity, they have not complied with Rule 4. Nor is Evercode Infinite's actual notice of the FAC a valid substitute for service of

process. *See, e.g., Ellibee v. Leonard*, 226 F. App'x 351, 357 (5th Cir. 2007) (per curiam). The Court should thus dismiss the claims against Evercode or alternatively quash the service. *See Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983).

## II.     The Court Should Dismiss Under Rule 12(b)(2) for Lack of Personal Jurisdiction.

This Court also lacks personal jurisdiction over Evercode. Plaintiffs allege two bases for personal jurisdiction under Rule 4(k)(1) and (2). *See* FAC ¶¶ 41–42. Both theories fail.

### A.     The Court has no jurisdiction over Evercode under Rule 4(k)(1)(a).

The Court's exercise of personal jurisdiction is governed by constitutional due process limitations and Colorado's long-arm statue, which "extends jurisdiction to the Constitution's full extent." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). "Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). A defendant's contacts with the forum state may give rise to either general or specific personal jurisdiction. *Id.* Neither is present here.

#### 1.     The Court lacks general personal jurisdiction over Evercode.

A corporation is generally "at home" for purposes of general jurisdiction only in its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, Evercode's principal place of business and place of incorporation are both in the U.A.E. FAC ¶ 34. Any minimal contacts Evercode has with Colorado do not render Evercode "at home" in Colorado.

#### 2.     The Court lacks specific personal jurisdiction over Evercode.

Specific jurisdiction requires that "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (quotation omitted).

A defendant can also "defeat jurisdiction by presenting a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quotation omitted).

### a. Evercode did not purposefully direct activities at Colorado.

The first prong requires "that a defendant have deliberately engaged in significant activities within the forum State or deliberately directed its activities at the forum State, so that it has manifestly availed itself of the privilege of conducting business there." *XMission*, 955 F.3d at 840 (cleaned up). "[R]andom, fortuitous, or attenuated contacts, . . . the unilateral activity of another party or a third person . . . or the mere foreseeability that [a defendant's] actions may cause injury in that jurisdiction" are insufficient. *Id.* at 840–41 (quotations omitted).

Here, Plaintiffs allege personal jurisdiction collectively over "Defendants" based on their "business activities" directed at "consumers throughout the United States, including within the State[] of . . . Colorado . . . and all other states in the Union, through its website and mobile application." FAC ¶ 41. But personal jurisdiction over Evercode cannot be based on allegations regarding Defendants' *collective* contacts. *See Burger King*, 471 U.S. at 475. And, looking only to Evercode's purported contacts with Colorado, Plaintiffs fail to allege any actual contacts between Evercode and Colorado or that Evercode deliberately exploited a Colorado market. Rather, Evercode's business only runs through the end product, Atomic Wallet, which is owned by Atomic Systems. FAC ¶ 57.

"[P]ersonal jurisdiction [does] not exist simply because of a defendant's awareness that its products could, through the stream of commerce, end up in the forum State." *XMission*, 955 F.3d at 843; *accord Moore v. Elec. Mktg., LLC*, 2022 U.S. Dist. LEXIS 231759, at *9 (W.D. Okla. Dec. 27, 2022) ("[S]omething more than merely placing a product into the stream of commerce is required. . . ."). Instead, there must be "a particular focus by the defendant on the forum State." *XMission*, 955 F.3d at 843. But Plaintiffs do not—and cannot—allege that Evercode had any such "focus" on Colorado.

*See, e.g.*, *Moore*, 2022 U.S. Dist. LEXIS 231759, at *12–13 (defendant did not purposefully avail itself of Oklahoma market in actively seeking to increase its U.S. market share).

Moreover, nothing in the FAC establishes that Evercode "expressly aimed its activities" at Colorado "with knowledge that the brunt of the injury would be felt" there. *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020). "[M]erely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed." *Old Republic*, 877 F.3d at 917; *see also XMission*, 955 F.3d at 845–46 (no purposeful direction because defendant had no knowledge its emails would be sent into the forum state); *Dental Dynamics*, 946 F.3d at 1232 (similar). In sum, Plaintiffs do not establish that Evercode in any way aimed at Colorado or intended to create effects specifically in Colorado. *Cf. Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

### b.     Plaintiffs' claims do not "arise out of" contacts with Colorado.

Next, the Court must "determine whether the plaintiff's injuries 'arise out of' the defendant's forum-related activities." *Old Republic*, 877 F.3d at 908. This requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264–65 (2017). This requirement applies to each named plaintiff. *Murphy v. Aaron's, Inc.*, 2020 U.S. Dist. LEXIS 76047, at *32–33 (D. Colo. Apr. 30, 2020); *see also Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) ("[T]he named representatives must be able to demonstrate . . . personal jurisdiction . . . .").

Here, Evercode has no forum contacts, so none of the claims asserted against it "arise out of" forum-related activities. That conclusion is doubly strong for the 20 (out of 21) Plaintiffs who are not Colorado residents and who were allegedly injured in other states based on alleged contacts with those other states. FAC ¶¶ 11–31. As a result, none of those Plaintiffs can satisfy the relatedness requirement, nor can they piggyback their claims on the Colorado resident's claims. *See Bristol-Myers*,

582 U.S. at 265 ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California . . . does not allow the State to assert specific jurisdiction over the nonresidents' claims.").

**c.     Exercising jurisdiction over Evercode would be unreasonable.**

Finally, exercising jurisdiction over Evercode would "offend traditional notions of fair play and substantial justice." *See Dental Dynamics*, 946 F.3d at 1229. This analysis turns on (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiffs' interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies. *Id.* "The weaker a plaintiff's showing with respect to minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (quotation omitted).

Here, exercising jurisdiction over Evercode would be unconstitutionally unreasonable. *First*, litigating in Colorado imposes a substantial burden on Evercode, a foreign company with no connections to Colorado. *See Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987); *Dental Dynamics*, 946 F.3d at 1232. *Second*, Colorado has no specific interests in this action, as the alleged misconduct took place elsewhere, the impact on Colorado residents is fortuitous, and Colorado law would likely not apply. *See Dental Dynamics*, 946 F.3d at 1232. *Third*, Plaintiffs may litigate their claims elsewhere, albeit in a less convenient forum. *Fourth*, litigating in Colorado would be inefficient because most witnesses and evidence are in foreign countries and because Colorado law will apply minimally, if at all. *See OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1097 (10th Cir. 1998). *Fifth*, exercising jurisdiction over foreign-based Evercode would be contrary to the Supreme Court's admonition that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 115.

**B.    The Court cannot exercise jurisdiction over Evercode under Rule 4(k)(2).**

Because Rule 4(k)(2) applies only to "a claim that arises under federal law," it does not apply to Plaintiffs' tort claims. *See also Getz v. Boeing Co.*, 654 F.3d 852, 859 (9th Cir. 2011) ("Rule 4(k)(2) is available only to plaintiffs who allege a 'federally created cause of action.'" (quotation omitted)).

**III.    The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(6).**

Finally, Plaintiffs fail to state any plausible claim for relief against Evercode. To survive a motion under Rule 12(b)(6), "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Tatten v. Bank of Am. Corp.*, 562 F. App'x 718, 720 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation omitted). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

Here, Plaintiffs assert claims untethered from any governing law, ignore the controlling agreements and the economic loss rule, fail to identify any recognized duty of care, impermissibly engage in group pleading of fraud claims, fail to allege claims with the requisite level of specificity, and request damages precluded by contract and law.

**A.    Plaintiffs fail to identify a governing law for their claims.**

Plaintiffs assert common law claims for negligence, gross negligence, fraudulent misrepresentation, fraudulent concealment, and civil conspiracy. FAC ¶¶ 105–43. These claims are asserted individually by Plaintiffs residing in 21 different states, FAC ¶¶ 11–31, against Defendants residing in Estonia (Atomic Systems), U.A.E. (Evercode), and Russia (Gladyshev, Brusov, and Sokolov), FAC ¶¶ 33–37, based on conduct occurring online or abroad. Plaintiffs do not identify a

governing law for their claims, nor do they allege facts sufficient to enable a meaningful choice-of-law analysis. The Court may dismiss the FAC on these grounds alone. *See Enigma Holdings, Inc. v. Gemplus Int'l S.A.*, 2006 U.S. Dist. LEXIS 72996, at *21 (N.D. Tex. Oct. 5, 2006); *Doe v. Github, Inc.*, 2023 U.S. Dist. LEXIS 86983, at *7 n.5 (N.D. Cal. May 11, 2023).

To the extent the Court takes it upon itself to determine under which law Plaintiffs assert their tort claims, it must apply Colorado's choice of law rules. *Zhou v. Sec. Life of Denver Ins. Co.*, 506 F. Supp. 3d 1119, 1124–25 (D. Colo. 2020). Colorado follows the most significant relationship test for multistate tort controversies. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509 (Colo. 2007). Under that test, Plaintiffs' claims are governed by the law of the foreign country in which each Defendant resides. *See SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 n.1 (D. Colo. 2017) (selecting law of defendant's forum state in a data breach case brought by citizens of various states); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1245 (D. Colo. 2018) (same). That means that the claims against Evercode are governed by U.A.E. law. However, assuming, *arguendo*, that state law applies, Evercode seeks dismissal of Plaintiffs' claims under Colorado law and the law of the other jurisdictions where Plaintiffs reside.[6] Evercode reserves the right, however, to seek application of U.A.E. law to future proceedings in this litigation.

## B.   Plaintiffs' claims are precluded by the economic loss rule.

As a threshold matter, Plaintiffs' claims are precluded by Colorado's economic loss rule and similar rules in other jurisdictions. Put simply, because Plaintiffs' relationship with Evercode and the other Defendants is governed by a network of interrelated contracts, they are precluded from asserting

---

[6] One plaintiff is a Colorado resident. FAC ¶ 12. His claims fail under Colorado law, and the claims of the other Plaintiffs likewise fail under the laws of their respective states.

tort claims arising from that contractual relationship.

Colorado's "economic loss rule bars a party that suffered only economic loss as a consequence of a breach of contract from asserting a tort claim premised on the breach unless the breaching party also owed the nonbreaching party an independent duty of care under tort law." *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 506 P.3d 108, 118 (Colo. App. 2021). This rule applies where contractual duties arise from a network of "interrelated contracts" and "can extend to individuals and entities who were not parties to the underlying contract." *McWhinney Holding Co., LLP v. Poag*, 2018 U.S. Dist. LEXIS 167852, at *42 (D. Colo. Sept. 28, 2018).

Here, Plaintiffs' use of Atomic Wallet was governed by the EULA and the Atomic Systems Terms of Service, and their use of Evercode's website was governed by the Evercode Terms of Use. *See* Exs. 1–3. These agreements preclude Plaintiffs' claims.

*First*, Plaintiffs assert negligence claims based on Defendants' alleged failure to maintain adequate app security. FAC ¶¶ 106–08. But any duty in that regard is expressed in the EULA: "Licensor shall provide updates and maintenance on the Software on an as needed basis." Ex. 2 § 2(B). The EULA thus establishes the applicable duty of care, and Colorado has not recognized any independent duty "related to data security." *SELCO*, 267 F. Supp. 3d at 1295. That means Plaintiffs' negligence claims are barred by the economic loss rule, and "[i]t makes no difference that [Defendants'] contractual duties arise from a web of interrelated agreements . . . rather than bilateral contracts." *Id.* at 1296; *see also Bellwether*, 353 F. Supp. 3d at 1085 (applying Colorado's economic loss rule to data breach claims).[7]

---

[7] So too under at least the laws of California, Connecticut, Idaho, Kansas, Massachusetts, Missouri, New Jersey, New York, Nevada, Oregon, Ohio, South Carolina, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin. *See, e.g.*, *SELCO*, 267 F. Supp. 3d at 1292; *Gordon*, 344 F. Supp. 3d at 1246; *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498–99 (1st Cir. 2009); *Xat.com Ltd. v. Hosting*

*Second*, Plaintiffs assert claims for fraudulent misrepresentation, fraudulent concealment, and civil conspiracy based on alleged representations and omissions on Defendants' websites. FAC ¶¶ 117–43. But the economic loss rule applies to fraud claims too, where plaintiffs seek to recover through their tort claims relief expressly excluded under the contract. *Dream Finders*, 506 P.3d at 122. Put simply, Plaintiffs cannot pursue tort claims in "an attempt to avoid the application of unfavorable contractual language." *Id.* at 126. Yet that is precisely what Plaintiffs seek to do. Each of the three interrelated contracts governing Plaintiffs' use of Atomic Wallet and Defendants' websites includes multiple specific disclaimers of warranties and representations. Ex. 1 §§ 1.2, 1.3; Ex. 2 §§ 10, 12; Ex. 3 §§ 5, 6, 13. Because these contracts disclaim all warranties and representations, any claims based on alleged representations or omissions made after Plaintiffs began using Atomic Wallet or accessed Defendants' websites are barred by the economic loss rule.[8] *See Dream Finders*, 506 P.3d at 126; *McWhinney*, 2018 U.S. Dist. LEXIS 167852, at *50.

### C.   Plaintiffs cannot state claims for negligence and gross negligence.

To prevail on a negligence claim under Colorado law, a plaintiff must show: "(1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff." *Gilbert v. U.S. Olympic Comm'n*, 423 F. Supp. 3d 1112, 1146 (D. Colo. 2019) (quotation omitted).[9] To establish gross negligence, the plaintiff must show that the defendant acted recklessly, with conscious disregard for the safety of others, extending beyond

---

*Servs.*, 2017 U.S. Dist. LEXIS 15672, at *13 (D. Utah Feb. 2, 2017); *Rider v. Uphold HQ Inc.*, 2023 U.S. Dist. LEXIS 29617, at *16 (S.D.N.Y. Feb. 22, 2023); *see also* 2 Frumer & Friedman, *Products Liability* § 13.07 (Matthew Bender, rev. ed.) (listing the states following some variation of the economic loss rule and collecting cases).

[8]   Many Plaintiffs allege that they began using Atomic Wallet before any of the alleged misrepresentations or omissions attributed to Evercode. *See* FAC ¶¶ 14, 17, 19–26, 31.

[9]   These elements are generally consistent across state law. *Cf.* Restatement (Second) of Torts § 281.

mere unreasonableness. *Id.* at 1149. Here, Plaintiffs' negligence claims fail on each element.

*First*, Plaintiffs fail to allege facts giving rise to a legal duty. They claim that Defendants owed them duties to maintain Atomic Wallet's security and to protect against hacking. FAC ¶¶ 106–08. This Court has repeatedly rejected similar claims because Colorado recognizes no such duty. *See Bellwether*, 353 F. Supp. 3d at 1084; *Gordon*, 344 F. Supp. 3d at 1244 n.5; *SELCO*, 267 F. Supp. 3d at 1295.

Courts in other states at issue, like Virginia and Washington, have likewise declined to recognize any such claimed duty. *See Deutsche Bank Nat'l Tr. Co. v. Buck*, 2019 U.S. Dist. LEXIS 54774, at *15 (E.D. Va. Mar. 29, 2019); *In re MCG Health Data Sec. Issue Litig.*, 2023 U.S. Dist. LEXIS 74398, at *6–9 (W.D. Wash. Mar. 27, 2023). Other states, including Connecticut, Idaho, Missouri, Oregon, Tennessee, Texas, Utah, West Virginia, and Wisconsin, appear not to have yet addressed this specific issue. And although some courts have recognized the possibility of a duty in data security cases, that duty only arises where the defendant collects and stores personal, confidential information belonging to the plaintiffs. *See, e.g.*, *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 U.S. Dist. LEXIS 240360, at *57–59 (D.N.J. Dec. 16, 2021). Here, in contrast, Plaintiffs acknowledge that Atomic Wallet is a non-custodial, decentralized wallet, meaning that Defendants have no access to Plaintiffs' sensitive information. FAC ¶ 64. Nothing in the FAC alleges that Defendants collect any confidential or personal information from Plaintiffs, let alone that Evercode specifically does so.

*Second*, with respect to Plaintiffs' claim of a duty to "ensure that important passwords or security details could not be revealed to bad actors," FAC ¶ 107, Plaintiffs do not plausibly allege a breach of that duty. Although Plaintiffs allege that a hack occurred and that their funds were stolen, they do not allege that important passwords or security details were revealed to bad actors. *See id.* Instead, they acknowledge that the cause of the hack is unknown. FAC ¶ 77.

*Third*, and finally, Plaintiffs do not adequately plead that Evercode's alleged action or inaction

proximately caused the North Korean hack. Again, Plaintiffs concede that the cause of the hack is unknown. The only allegation resembling proximate cause is the conclusory and circular assertion that the hack was a result of Defendants' failure to provide sufficient security, as evidenced by the hack. FAC ¶ 83. This, too, warrants dismissal. *See Gilbert*, 423 F. Supp. 3d at 1149 (dismissing negligence claim where Plaintiffs relied on "naked assertions" of injury caused by the alleged negligence); *see also M.K. v. Google LLC*, 2023 U.S. Dist. LEXIS 133602, at *24 (N.D. Cal. Aug. 1, 2023) (similar).

For these reasons, Plaintiffs' negligence claims fail, as do their gross negligence claims. *See Weil v. First Nat'l Bank*, 983 P.2d 812, 815 (Colo. App. 1999); *Gilbert*, 423 F. Supp. 3d at 1150 (same).

### D.      Plaintiffs do not adequately allege fraud against Evercode.

Next, Plaintiffs claim fraudulent misrepresentation and fraudulent concealment. Rule 9(b)'s heightened pleading standard governs these claims, so Plaintiffs must "set forth the time, place[,] and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation omitted); *accord W. State Bank v. Cosey, L.L.C.*, 2019 U.S. Dist. LEXIS 190874, at *7–8 (D. Colo. Nov. 4, 2019). Where, as here, fraud is alleged against multiple defendants, "blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth." *In re HomeAdvisor, Inc. Litig.*, 491 F. Supp. 3d 879, 892 (D. Colo. 2020) (quotation omitted).

#### 1.      Plaintiffs cannot establish fraudulent misrepresentation.

To establish fraud by misrepresentation, Plaintiffs must show: "(1) a fraudulent misrepresentation of material fact was made by [Evercode]; (2) [Plaintiffs] relied on the misrepresentations; (3) [Plaintiffs] have the right to rely on, or were justified in relying on, the misrepresentation; and (4) the reliance resulted in damages." *See M.D.C./Wood, Inc. v. Mortimer*,

866 P.2d 1380, 1382 (Colo. 1994).[10] Plaintiffs fail to establish each element.

*First*, Plaintiffs do not adequately allege that Evercode misrepresented any material fact. Instead, Plaintiffs largely lump all Defendants together in alleging fraud, failing to set forth the specifics of Evercode's alleged fraudulent activity and failing to satisfy Rule 9(b). *See Airquip, Inc. v. HomeAdvisor, Inc.*, 2017 U.S. Dist. LEXIS 154738, at *22 (D. Colo. Sept. 21, 2017). Indeed, the FAC identifies only a handful of statements allegedly made by Evercode in 2020. FAC ¶¶ 59–60. None are actionable against Evercode, for a variety of reasons.

To start, Plaintiffs allege that Evercode wasn't incorporated until January 2022.[11] FAC ¶ 34. A corporation incorporated in 2022 cannot be held liable for statements made in 2020. *See Nanodetex Corp. v. Sandia Corp.*, 2007 U.S. Dist. LEXIS 85962, at *5–6 (D.N.M. Sept. 5, 2007). In any event, each of Evercode's identified statements is a statement of opinion or mere puffery, not an actionable statement of fact. *See Renfro v. Champion Petfoods USA, Inc.*, 475 F. Supp. 3d 1242, 1247 (D. Colo. 2020); *Amato v. Mesa Labs., Inc.*, 2015 U.S. Dist. LEXIS 122136, at *7–8 (D. Colo. Sept. 14, 2015); *see also Linenweber v. Sw. Airlines Co.*, 2023 U.S. Dist. LEXIS 167141, at *17–19 (N.D. Tex. Sept. 19, 2023) (vague statements of safety and reliability not actionable). Nor are there any allegations that Evercode's statements were false when made. Evercode's statements relate to the security of user mnemonic keys and sensitive data, and Plaintiffs do not allege that the hack ensued due to a theft of user mnemonic keys or involved the theft of users' sensitive data. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1116–17 (D. Colo. 2010) (dismissing fraud claim due to insufficient allegations of falsity).

Further, Plaintiffs fail to sufficiently plead that Evercode "*knew* the representations were false"

---

[10] The elements of fraud are generally consistent across states, such that Plaintiffs' claims fail under the law of each jurisdiction where Plaintiffs reside. *Cf.* Restatement (Second) of Torts § 525.

[11] The actual incorporation date was April 1, 2022. Ex. 4 at 5. U.A.E. formats dates DD/MM/YYYY.

when made and "that they were specifically made 'with the intention that [they] be acted upon." *Carson v. Ocwen Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 196334, at *12 (D. Colo. Aug. 26, 2016) (alteration in original) (quotation omitted). The fact that a representation turned out to be false is not enough to make out a fraud claim; rather, the representation must have been known to be false at the time the statement was made. *Id.* But here, Evercode made the alleged statements in 2020, *before* Least Authority flagged the purported security vulnerabilities, and there is no allegation that Evercode knew of any security vulnerabilities at that time. In fact, there are no sufficiently particular allegations that Evercode knew about the Least Authority audit report even after it was issued. Instead, Plaintiffs again rely on improper group pleading to allege that Least Authority was hired by "Defendants" and "advised defendants" of its findings, and "Defendants took no action." FAC ¶¶ 70–73. That cannot establish Evercode's knowledge. *See Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1224 (D. Colo. 2014).

*Second*, Plaintiffs do not allege with particularity actual reliance on Evercode's alleged statements. Plaintiffs solely rely on conclusory allegations of reliance and do not allege that any Plaintiff actually accessed Evercode's website and saw the alleged statements prior to downloading Atomic Wallet. "Plaintiffs cannot state a claim for fraudulent misrepresentation based on misrepresentations of which they were unaware." *Prymak v. Contemporary Fin. Sols., Inc.*, 2007 U.S. Dist. LEXIS 87734, at *62 (D. Colo. Nov. 29, 2007); *accord Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (similar). Website statements are likewise not actionable as fraud absent specific allegations for each Plaintiff as to their actual knowledge of and reliance on those statements. *See, e.g., Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 897–98 (E.D.N.Y. 2018); *Tyman v. Pfizer, Inc.*, 2017 U.S. Dist. LEXIS 212879, at *62–63 (S.D.N.Y. Dec. 27, 2017).

*Third*, Plaintiffs cannot establish that any actual reliance was justifiable. To the contrary, any reliance was unreasonable as a matter of law because the Evercode Terms of Use expressly disclaim

all warranties and representations. Ex. 1 §§ 1.2, 1.3; *see Cahey v. IBM*, 2020 U.S. Dist. LEXIS 158307, at *30 (D. Colo. Sept. 1, 2020) ("[C]lear and unequivocal disclaimers, even when such disclaimers do not arise in binding agreements, will otherwise render a plaintiff's reliance on contradictory statements unreasonable as a matter of law."); *Steak N Shake Enters. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1082–83 (D. Colo. 2015) (similar).

Additionally, any reliance would be further unreasonable once Least Authority publicly warned Atomic Wallet users in February 2022 about the purported security vulnerabilities. FAC ¶¶ 72–73. Because Plaintiffs thus had "access to information that was equally available to both parties and would have led to the true facts, [Plaintiffs] have no right to rely upon the false representation." *See M.D.C./Wood*, 866 P.2d at 1382; *accord Brush Creek Airport, LLC v. Avion Park, LLC*, 57 P.3d 738, 749 (Colo. App. 2002) (similar). Because any Google search of Atomic Wallet would have revealed the public warning and related news article(s), Plaintiffs had "no right to rely on a false representation." *See CLVM LLC v. Handel*, 2023 U.S. Dist. LEXIS 82449, at *23–24 (D. Colo. Mar. 23, 2023).

*Fourth*, and finally, Plaintiffs cannot show that their purported reliance resulted in any damages. Again, Plaintiffs do not allege with particularity that the purported security vulnerabilities identified by Least Authority were the root cause of the North Korean hack. To the contrary, Plaintiffs concede that the hack's root cause is unknown. Plaintiffs therefore cannot establish that Evercode's alleged statements caused their claimed injuries. *See 1881 Extraction Co. v. Kiinja Corp.*, 2023 U.S. Dist. LEXIS 39847, at *29–30 (D. Colo. Mar. 9, 2023) (dismissing fraud claim for inadequate causation allegations).

## 2. Plaintiffs likewise fail to allege facts to establish concealment.

Plaintiffs' concealment claim fails for many of the same reasons. To state this claim, under Colorado law, Plaintiffs must allege:

(1) the concealment of a material existing fact that in equity and good conscience

should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Baker v. Wood, Ris & Hames, PC*, 364 P.3d 872, 883 (Colo. 2016) (quotation omitted).[12] Plaintiffs again fail to do so.

*First*, Plaintiffs do not allege that Evercode knowingly concealed a material existing fact that it had a duty to disclose. Plaintiffs allege that "Defendants concealed from Plaintiffs" the security audit results and recommendations as well as "Defendants' failure to implement such recommended courses of action." FAC ¶ 130. But again, Plaintiffs do not allege with specificity that Evercode ever knew about the audit, nor that Evercode had any involvement in Atomic Systems' response. Instead, Plaintiffs again rely on impermissible group pleading.

*Second*, the very facts that Plaintiffs claim Defendants concealed were made publicly available by both Least Authority and Atomic Systems. FAC ¶¶ 72–73 & n.13 (Least Authority's publicly available "blog post alerting existing users of the security vulnerabilities"); *id.* ¶ 74 (Atomic Systems' public response). Evercode could not "conceal" something that was publicly available. *See Aaron H. Fleck Revocable Tr. v. First W. Tr. Bank*, 2023 U.S. Dist. LEXIS 178266, at *17–18, 23 (D. Colo. Oct. 3, 2023) (no fraud where the info was publicly available).

*Third*, Plaintiffs' conclusory allegations do not establish that Evercode intended for Plaintiffs "to act on any purported concealment." *See Baker*, 364 P.3d at 884. To the contrary, the disclaimer provisions in the Evercode Terms of Use "refute any claim of intended reliance." *See id.*

*Fourth*, Plaintiffs do not allege sufficient facts to show "that they acted based on their belief

---

[12] The elements of fraudulent nondisclosure or concealment are generally consistent across states, so Plaintiffs' claims fail no matter which law applies. *Cf.* Restatement (Second) of Torts §§ 550, 551.

that the facts were other than what they understood them to be and therefore suffered damages." *See id.* Plaintiffs include no specific allegations regarding which Plaintiffs conducted which transactions on Atomic Wallet and when. And again, any reliance would be unjustifiable because of (i) the publicly available information warning against using Atomic Wallet, and (ii) the contractual disclaimers. *See Cahey*, 2020 U.S. Dist. LEXIS 158307, at *27 (disclaimer language can preclude concealment claim).

*Fifth*, and finally, as addressed above, Plaintiffs cannot show that any purported reliance resulted in any damages because the cause of the North Korean hack is unknown. *See Baker*, 364 P.3d at 884 ("[Plaintiffs] did not allege how they were damaged by any action that they took or did not take as a result of their alleged misunderstanding of the true facts.").

**E.      Plaintiffs fail to state a claim for civil conspiracy.**

Plaintiffs' last claim alleges that Defendants conspired to commit fraud. FAC ¶¶ 138–39.[13] Under Colorado law, this requires Plaintiffs to show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Vickery v. Evelyn V. Trumble Living Tr.*, 277 P.3d 864, 871 (Colo. App. 2011) (quotation omitted).[14] Because Plaintiffs' conspiracy claim is based on alleged fraud, it must be pled with particularity under Rule 9(b). *See Bell v. 3M Co.*, 344 F. Supp. 3d 1207, 1228 (D. Colo. 2018). It is not.

To start, Plaintiffs include no plausible underlying factual allegations for their conclusion that all Defendants conspired together to commit any unlawful act. *See, e.g., id.* ("[P]laintiffs have also failed

---

[13] Plaintiffs also reference negligence, FAC ¶ 140, but conspiracy to commit negligence is "paradoxical at best." *Custard v. Armijo*, 2016 U.S. Dist. LEXIS 35339, at *44 (D. Colo. Feb. 10, 2016).

[14] Again, the elements of this claim are generally similar across jurisdictions. *Cf.* Restatement (Third) of Torts: Liability for Economic Harm § 27.

to explain how defendants participated in a conspiracy with each other rather than merely participating in parallel conduct."); *Gen. Steel Domestic Sales, LLC v. Chumley*, 2011 U.S. Dist. LEXIS 61997, at *19–20 (D. Colo. June 10, 2011) (similar). In any event, because Plaintiffs fail to state a claim for any underlying predicate unlawful act, their conspiracy claim necessarily fails. *See Vickery*, 277 P.3d at 871.

**F.      The Court should also strike or dismiss Plaintiffs' claim for punitive damages.**

Finally, to the extent any of Plaintiffs' claims avoid dismissal, the Court should strike or dismiss Plaintiffs' request for punitive damages. FAC at 41. This request is precluded by the Evercode Terms of Use. Ex. 1 § 4.1 ("You understand and agree that Evercode Lab shall not be liable to you for any . . . exemplary damages . . . ."); *see SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 838 (10th Cir. 2016) (enforcing limitation of liability provision to exclude damages). It is also procedurally improper under Colorado law. *See Chumley*, 2011 U.S. Dist. LEXIS 61997, at *20 (striking request for punitive damages for failure to comply with Colo. Rev. Stat. § 13-21-102(1.5)(a)).

<u>**CONCLUSION**</u>

For these reasons, the Court should dismiss all claims against Evercode.

Dated: October 27, 2023.                    Respectfully submitted,

/s/ Jessica J. Smith
Jessica J. Smith
Nicholas W. Katz
Daniel H. Athenour
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8000
Fax: (303) 223-3262
jjsmith@hollandhart.com
nwkatz@hollandhart.com
dhathenour@hollandhart.com
**ATTORNEYS FOR DEFENDANT EVERCODE**

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2023, I have caused the foregoing to be served on the following electronically via ECF:

> dthornburgh@awkolaw.com
> nguntner@awkolaw.com
> dkreis@awkolaw.com

**Attorneys for Plaintiffs**

<u>/s/ Jessica J. Smith</u>
HOLLAND & HART LLP

30697501_v10