IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01582-PAB-MEH

**ROBERT MEANY** et al.,
    *Plaintiffs*,

v.

**ATOMIC PROTOCOL SYSTEMS OÜ D/B/A ATOMIC WALLET** et al.,
    *Defendants*.

## DEFENDANT EVERCODE INFINITE'S MOTION TO STRIKE CLASS ALLEGATIONS

Defendant Evercode Infinite ("Evercode") hereby moves to strike the class allegations asserted against Evercode in Plaintiffs' First Amended Class Action Complaint ("FAC") (ECF No. 15) pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D).[1]

## INTRODUCTION

Plaintiffs seek to represent a nationwide class of everyone who, from January 1, 2017 to present, utilized the Atomic Wallet app to trade cryptocurrency and whose assets were stolen in June 2023, asserting common law claims for negligence and fraud.[2] This is a remarkable request. Under Colorado's choice-of-law rules, Plaintiffs' claims are governed by either (i) the law of each state in which a class member was injured, (ii) the law of Defendants' residences (Russia, Estonia, and the U.A.E.), or (iii) some combination thereof. This alone precludes class certification because a class-wide resolution is impossible where the Court would have to determine, under each applicable

---

[1] **Conferral Certificate:** Counsel for Evercode conferred with counsel for Plaintiffs via email and telephone on Friday, October 20, 2023. Plaintiffs oppose the relief requested herein.

[2] Evercode's concurrently filed Motion to Dismiss provides a recitation of the background to this dispute, which is incorporated herein by reference.

1

jurisdiction's law, whether the relationship between each class member and Defendants gave rise to a duty to prevent cyberattacks and, if so, the contours of that duty; whether Defendants breached that duty with respect to that class member; whether the economic loss rule applied; whether contributory/comparative negligence applied; and more.

Nor would that end the inquiry. Plaintiffs' claims would also require an individualized, fact-intensive inquiry for each class member as to their awareness of Defendants' alleged representations and omissions; their reliance on anything Defendants did or didn't do; the reasonableness of any reliance based on their level of sophistication and experience with cryptocurrency; what damages, if any, were traceable to Defendants' alleged conduct; and more. These issues and others render class certification impossible.

## LEGAL STANDARD

Under Rules 12(f) and 23(d)(1)(D), the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter," and may require plaintiffs to amend their complaint "to eliminate allegations about representation of absent persons."[3] "The court need not wait for a motion for class certification if 'the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims.'" *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (quotation omitted). Where, as here, it is clear from the complaint that a class cannot be certified, the Court should strike the class allegations to avoid unnecessary and burdensome class discovery. *See Dollison v. Am. Nat'l Ins. Co.*, 2013 U.S. Dist. LEXIS 67279, at *26 (N.D. Okla. May 9, 2013).

---

[3] This Court has viewed motions filed pursuant to Rules 12(f) and 23(d)(1)(D) the same. *See Ramsay v. Frontier, Inc.*, 2020 U.S. Dist. LEXIS 151176, at *71–73 (D. Colo. July 30, 2020), *adopted*, 2021 U.S. Dist. LEXIS 31030 (D. Colo. Feb. 19, 2021).

Plaintiffs bear the burden of making a prima facie showing that Rule 23 is satisfied or is likely to be after discovery. *Edwards v. Zenimax Media Inc.*, 2012 U.S. Dist. LEXIS 137520, at \*6 (D. Colo. Sept. 25, 2012); *see also Stubbs*, 224 F.R.D. at 674. The Court "need not blindly rely on conclusory allegations which parrot Rule 23 requirements and may consider the legal and factual issues presented by plaintiff's complaints." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999) (alterations and quotation omitted).

## ARGUMENT

### I. Plaintiffs Fail To Present a Properly Defined, Ascertainable Class.

"[A]n essential prerequisite to an action under Rule 23 is that there must be a class." *Edwards*, 2012 U.S. Dist. LEXIS 137520, at \*11. Plaintiffs must therefore show "that a defined or identifiable class exists and that the class representatives are members of the class." *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 443 (D.N.M. 2007). Moreover, a class description must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995), *aff'd*, 194 F.3d 1116, 1146 (10th Cir. 1999). "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation . . . ." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

#### A. Plaintiffs' proposed class is overbroad.

Plaintiffs' class definition is overly broad in relation to the issues Plaintiffs raise. A class cannot be defined so broadly as to include putative members who have no claim. *Friedman v. Dollar Thrifty Auto. Grp.*, 304 F.R.D. 601, 606–07 (D. Colo. 2015); *see also Edwards*, 2012 U.S. Dist. LEXIS 137520, at \*13–14 (class treatment not appropriate where proposed class includes members not injured by defendant). Where the proposed class is facially overbroad, the proper course is to strike the class

3

allegations. *Ramsay*, 2021 U.S. Dist. LEXIS 31030, at *19–22. A Seventh Circuit case, *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), is illustrative. There, the court held a proposed class was not sufficiently definite in a fraud class action alleging non-disclosure of product ingredients. *Id.* at 514. The proposed class, the court explained, "could include millions who were not deceived and thus have no grievance" or who bought the product at issue knowing it contained the pertinent ingredient. *Id.*

Here, Plaintiffs' FAC suffers from the same flaw. Plaintiffs allege that Defendants committed negligence and fraud following an April 2021 security audit report identifying security vulnerabilities in Atomic Wallet. FAC ¶ 71. Plaintiffs' proposed class, however, includes putative members who utilized Atomic Wallet as early as 2017, before Defendants knew of any purported security vulnerabilities. *See* FAC ¶ 92. The proposed class would also include app users who never saw the alleged misrepresentations and thus could not have relied on them. It would likewise include individuals who were aware of the security audit results and voluntarily accepted the risks by using Atomic Wallet. This renders the class indefinite and overbroad.

### B. Plaintiffs' proposed class is not readily ascertainable.

A class is further inadequately defined if it is not "administratively feasible for the court to determine whether a particular individual is a member." *Edwards*, 2012 U.S. Dist. LEXIS 137520, at *12. Administrative feasibility means the Court can "ascertain the members of the class by reference to objective criteria." *Id.*; *accord Friedman*, 304 F.R.D. at 606. It also means "a manageable process that does not require much, if any, individual factual inquiry." *Friedman*, 304 F.R.D. at 606; *accord Edwards*, 2012 U.S. Dist. LEXIS 137520, at *13–14.

Here, Plaintiffs' proposed class—even if refined to rectify its overbroad nature—would not be readily ascertainable because there is no administratively feasible way to identify which individuals (i) used Atomic Wallet after April 2021, (ii) saw Evercode's alleged representations, (iii) were unaware

4

of the Least Authority security audit, (iv) continued to use Atomic Wallet in reliance on the alleged representations or omissions, and (v) had funds stolen because of the purported security vulnerabilities. *See Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 396–97 (D. Colo. 2014) (denying certification because of the need for "individual investigation and fact-finding" to identify class members); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (similar). To determine the class here, the Court would need to consider evidence from each putative member through individualized fact-finding.

Complicating things even further, Atomic Wallet users are, per Plaintiffs' own allegations, not readily ascertainable because Atomic Wallet "does not employ verification or know-your-customer 'KYC' controls." FAC ¶ 63. There are "[n]o accounts, no verification, no KYC for basic features in the wallet," and Atomic Wallet does not store any "private data." FAC ¶¶ 63, 65.[4] The Court would thus have to rely on self-identification by Atomic Wallet users and conduct additional individualized fact-finding to confirm their membership in the class.

## II.     Plaintiffs Cannot Satisfy Rule 23(a)'s Four Prerequisites.

### A.     Plaintiffs have not established numerosity.

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs must present some plausible allegation "of a sufficient number of similarly situated putative class members." *Ramsay*, 2020 U.S. Dist. LEXIS 151176, at *77. Here, Plaintiffs allege a class "comprised of thousands of consumers globally," FAC ¶ 94, but this is based on Plaintiffs' overbroad class definition. "[W]ithout a proper class definition, it is not possible to tell whether the proposed class is so numerous that joinder of all plaintiffs is

---

[4] Plaintiffs claim that members "may be identified by blockchain ledger information and records maintained by Defendants," FAC ¶ 98, but that is belied by Plaintiffs' own allegations.

impracticable." *Morris v. Travelers Indem. Co. of Am.*, 2006 U.S. Dist. LEXIS 99034, at *23–24 (D. Colo. Jan. 19, 2006). And because of the issues with identifying class members, it will be impossible for Plaintiffs to ever establish—or even credibly plead—numerosity without an individualized fact-finding exercise. *See id.* ("[T]his court would necessarily have to resolve the merits of the litigation before certifying the class.").

### B. Plaintiffs have not established commonality.

Merely raising a common question does not establish commonality; rather, the common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1218–19 (10th Cir. 2013) (vacating class certification for lack of commonality). Here, there may be common questions of whether Defendants owed users a duty to prevent cyberattacks and breached that duty, but those questions do not generate common answers apt to move the litigation forward.

Instead, the answer to those questions for each putative class member will depend on the governing law. Yet identifying the governing law for each class member is no simple task. In diversity cases like this, the Court must apply the forum state's choice of law rules. *Zhou v. Sec. Life of Denver Ins. Co.*, 506 F. Supp. 3d 1119, 1124–25 (D. Colo. 2020). Colorado follows the most significant relationship test for multistate tort controversies. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509 (Colo. 2007). That test looks at (i) where the injury occurred; (ii) where the conduct causing the injury occurred; (iii) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (iv) where the relationship, if any, between the parties is centered. *Id.* at 510. These contacts "are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

Accordingly, for each putative class member, the Court would have to determine which law to apply to each claim. Yet Plaintiffs propose a nationwide class asserting claims against entities based in the U.A.E., Estonia, and Russia. FAC ¶¶ 33–37. That means that to resolve Plaintiffs' claims, the Court would need to apply the law of each and every state in the United States; the laws of Russia, Estonia, and the U.A.E.; or some combination thereof. This precludes certification: "No class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1015 (7th Cir. 2002). No such uniformity exists here, where negligence law varies by jurisdiction. Determining whether a duty to prevent cyberattacks existed and, if so, identifying the contours of that duty to determine when it is breached, would require an individualized analysis for every jurisdiction at issue. That analysis would depend on individualized inquiries into the following questions, and likely more:

- Which jurisdiction's law controls and what are the applicable standards for determining the existence of a duty to prevent cyberattacks?
- What, if any, were the statements and conduct of each of the parties prior to the class member's use of the Atomic Wallet app and/or after they began use but before the hack?
- How sophisticated and experienced was the class member in cryptocurrency and its risks?
- How foreseeable was the risk of harm to that class member and what's the test for determining the foreseeability of a criminal act by a third-party?
- How certain is it that the plaintiff suffered injury and how close is the connection between Defendants' conduct and the claimed injury?
- How would the jurisdiction assess the moral blame attached to Defendants' conduct?
- What is the jurisdiction's policy with respect to preventing future harm of this nature?
- How would the jurisdiction weigh the burden to the defendants and consequences to the community of imposing a duty to exercise care?
- What is the jurisdiction's test for proximate causation and how does it apply to the contacts between Defendants and the class member and the alleged harm?
- If there was a duty, what are the contours of that duty and did Defendants breach that duty with respect to that class member?

7

Thus, even if "[a]t some extreme level of generality" Plaintiffs' negligence claims present "some general question of breach of [a] duty, . . . in the real world of litigation, these general allegations are so abstract that they fail to present the specific common legal or factual question that would make class certification appropriate." *See Quinn v. Stanley*, 2006 U.S. Dist. LEXIS 104951, at *9 (D. Utah May 16, 2006). And even once the duty question was answered, the Court would have to continue with a fact-intensive inquiry as to jurisdiction-specific defenses, including the economic loss rule:

- What is the scope of the jurisdiction's economic loss rule and how do you determine when it applies?
- What were the terms of the Atomic Wallet End User License Agreement (EULA) when the class member began using Atomic Wallet? Did the terms change during the class member's use of the app?
- For any class member that accessed Defendants' websites, what were the websites' Terms of Use at that time? Have those terms changed since then?
- Was the class member aware of the EULA or the Terms of Use?
- Does the class member have any individualized defenses against the EULA and the Terms of Use?
- Does the jurisdiction recognize any applicable legal defenses to enforcement of the EULA and the Terms of Use to preclude tort claims?
- Does the jurisdiction apply comparative or contributory negligence defenses and, if so, was the class member negligent in their use of Atomic Wallet?
- Did the class member fail to mitigate damages?

More of the same applies to Plaintiffs' fraud claims. Regardless of what laws apply, these are inherently fact-intensive claims requiring an individualized inquiry as to each class member:

- Did the class member utilize Defendants' websites and see the purported representations prior to using the Atomic Wallet app?
- Did the class member actually rely on any of the purported representations in deciding whether to use the app?
- How sophisticated and experienced was the class member in cryptocurrency and its risks?
- Based on their sophistication and experience in cryptocurrency, was it reasonable for the class member to rely on the purported representations?

8

- For any class member who saw the purported representations, were they material to his or her decision to use Atomic Wallet?
- Did the class member take any steps to inquire as to Atomic Wallet's security?
- Was the class member ever aware of the Least Authority blog post warning of Atomic Wallet's purported security vulnerabilities?
- Was the class member aware of other cryptocurrency hacks?
- What transactions did the class member make on the app and were they before or after the purported representations or the publication of the Least Authority report?
- Were the class member's Atomic Wallet funds stolen due to the alleged security vulnerabilities or for some other reason, like a misplaced mnemonic key?
- How much was stolen as a result of the alleged security vulnerabilities, and how much of that amount was deposited in Atomic Wallet in reliance on the purported representations?

Plaintiffs' claims are thus too fact-intensive and individualized for class-wide resolution. *See In re Synergen, Inc. Sec. Litig.*, 154 F.R.D. 265, 267 (D. Colo. 1994) (class action purpose frustrated where each plaintiff's reliance must be tried separately); *Morris*, 2006 U.S. Dist. LEXIS 99034, at *25 ("[C]ertification is not appropriate where the factual circumstances of each member of the class would have to be considered separately . . . ."); *Greene v. Karpeles*, 2021 U.S. Dist. LEXIS 116181, at *15–19, 22 (N.D. Ill. June 22, 2021) (denying certification in crypto hacking case where fraud claims "would depend on individualized showings of actual reliance"). In other words, one class member's claim against Defendants says nothing of the others. And again, Plaintiffs' "arguments are hampered by the exceptionally broad nature of the proposed classes, which makes it difficult to determine who would qualify as a class member and doubtful that many of the stated issues would apply to all or substantially all of the defined classes." *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 621 (D. Kan. 2008).

### C. Plaintiffs have not established typicality.

Plaintiffs cannot establish typicality for many of the same reasons they cannot establish commonality. Typicality requires that "the claims or defenses of the representative parties are typical

9

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In other words, typicality requires that "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). But here, a named plaintiff who proves that Defendants owed him a duty or that he actually and reasonably relied on their purported representations will not have proved anyone else's claim. *See Quinn*, 2006 U.S. Dist. LEXIS 104951, at *11 (typicality not satisfied for breach of fiduciary duty claims where success for named plaintiffs would not ensure success of other class members). Instead, the differences in the governing law among plaintiffs and each class members' "unique factual circumstances," including their interactions with Defendants and Defendants' websites, will dictate the viability of each of their tort claims. *See Friedman*, 304 F.R.D. at 612. Those differences defeat typicality. *See id.*; *see also Oshana*, 472 F.3d at 514; *Thompson*, 250 F.R.D. at 624–26 ("State law differences in the extent of the common law duty of care owed to customers such as the members of the purported classes would render a nationwide negligence class doubtful . . . due to conflicts in state negligence laws.").

### D. Plaintiffs have not established adequacy.

Plaintiffs also cannot establish their adequacy as representatives of the proposed class. "A class action may not be maintained by a putative representative who is not a member of the class." *Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Tex.*, 511 F.2d 1073, 1077 (10th Cir. 1975). Adequacy also requires that the named plaintiffs not have any conflicts of interest with other class members. *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 295 F.R.D. 506, 515–16 (D. Colo. 2013); *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 485 (D. Colo. 2007).

Here, Plaintiffs fail to allege adequacy for any properly defined class because they do not plausibly allege with specificity that they were actually aware of or reasonably relied on the Defendants' purported misrepresentations. Instead, Plaintiffs rely on conclusory allegations and insist that they are

adequate representatives simply because they used Atomic Wallet and had funds stolen in June 2023. Yet several Plaintiffs began using the app years before the alleged fraud, precluding the possibility of any reliance. *See* FAC ¶¶ 14, 17, 19–26, 31. These plaintiffs would have conflicting interests with class members who saw and relied on the alleged representations prior to using the app. *See Friedman*, 304 F.R.D. at 613 (named plaintiff not adequate where his experience was inconsistent with other class members). They would also have conflicting interests if the state where they reside does not recognize a duty to prevent cyberattacks. Colorado is a good example. *See Bellwether Cmty. Credit Union v. Chipotle Mexican Grill*, 353 F. Supp. 3d 1070, 1084 (D. Colo. 2018) ("[T]here is no basis in Colorado statutory or common law for imposing a duty of care related to data security.").

### III.     Plaintiffs Cannot Satisfy Rule 23(b).

Plaintiffs seek to bring this class action pursuant to either Rule 23(b)(2) or Rule 23(b)(3). But for the reasons described below, Plaintiffs cannot satisfy either subsection.

#### A.     Rule 23(b)(2) does not apply because Plaintiffs seek only monetary damages.

Plaintiffs seek solely monetary damages: actual, direct, and compensatory damages; punitive damages; and restitution and disgorgement of revenues. FAC at 41. This precludes certification under Rule 23(b)(2), which applies only where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs seek no such relief. Moreover, each putative class member would be entitled, if successful in this action, to an "individualized award" based on their respective losses, *see* FAC ¶¶ 11–31, which renders class certification under Rule 23(b)(2) impossible. *See Wal-Mart*, 564 U.S. at 360–61 ("Rule 23(b)(2) . . . does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."); *see also Friedman*, 304 F.R.D. at 614 (applying *Wal-Mart* and denying certification under Rule 23(b)(2)); *McGlenn v. Driveline Retail Merch., Inc.*, 2021 U.S. Dist. LEXIS 9532, at *21 (C.D. Ill. Jan. 19, 2021).

### B.  Plaintiffs cannot satisfy Rule 23(b)(3)'s requirements.

"[F]or certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997). Here, the proposed class claims fail to satisfy both requirements.

#### 1.  The individual claims predominate over class claims.

Rule 23(b)(3)'s predominance requirement is "far more demanding than Rule 23(a)'s commonality requirement." *Friedman*, 304 F.R.D. at 615. The court in *Greene*, for example, found common issues did not predominate in a similar case:

> The issue of reliance lies at the heart of the fraud claim and would be hotly disputed as to each of the 30,000 members of the putative class. Resolving that issue would require receiving evidence as to whether each user read or was made aware of the pertinent provisions in the Terms of Use, how each user subjectively understood those provisions, and whether that understanding influenced each user's decision to leave fiat currency or bitcoins deposited with [Defendant] . . . .

2021 U.S. Dist. LEXIS 116181, at *26–27; *accord In re Synergen*, 154 F.R.D. at 267–68 ("Because questions of fact involving *each* plaintiffs' reliance predominate over issues common to all members of the class, I will deny class certification . . . .").

Here, as in *Greene*, the individual questions listed above predominate over any class questions. Each class member will be subject to different state or foreign laws and have different facts relevant to their claims, necessitating individualized, fact-intensive inquiries. These "individualized inquiries will overwhelm those questions common to the class." *Friedman*, 304 F.R.D. at 615 (quotation omitted). Indeed, "[c]lass certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim," and "[p]redominance is a particularly difficult

hurdle where, as here, the claim is for negligence." *S. Indep. Bank. v. Fred's, Inc.*, 2019 U.S. Dist. LEXIS 40036, at *36–38 (M.D. Ala. Mar. 13, 2019) (quotation omitted); *see also Scarlett v. Air Methods Corp.*, 2020 U.S. Dist. LEXIS 81382, at *40–42 (D. Colo. May 8, 2020) (similar).

Individualized monetary awards also weigh against Rule 23(b)(3) certification, as predominance is "destroyed if individualized issues will overwhelm those questions common to the class." *Wallace*, 725 F.3d at 1220. Here, under Plaintiffs' theories, each plaintiff would be entitled to a different monetary award based on the extent of their claimed loss of funds. Those "individualized monetary claims . . . will overwhelm those questions common to the class." *See id.*; *see also S. Indep. Bank*, 2019 U.S. Dist. LEXIS 40036, at *52–53 ("And Plaintiff will have to prove that the amount of damages each issuing bank incurred came from [Defendant's] breach, not some other event. This is especially true for actual fraud losses.").

### 2. Class-wide resolution would be unmanageable.

For similar reasons, class-wide resolution is not feasible, let alone superior. To start, "[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *See In re Bridgestone*, 288 F.3d at 1018. Nor is this litigation "manageable as a class action even on a statewide basis," *see id.*, because "significant difficulties in the management of the class action" arising from "individualized factual and legal inquiries required as to the putative class" preclude a finding that class adjudication is superior. *See Friedman*, 304 F.R.D. at 616; *see also S. Indep. Bank*, 2019 U.S. Dist. LEXIS 40036, at *58 (similar). The same is true due to the difficulty in ascertaining the proposed class and identifying members.

In sum, because "[P]laintiffs' claims require the application of dozens of states' negligence [and] fraud . . . laws and involve a host of issues necessitating individualized proof," class treatment would "not achieve economies of time, effort, and expense and a class action is therefore not a

superior method for resolving this dispute." *See Morris v. DaVita Healthcare Partners, Inc.*, 308 F.R.D. 360, 379 (D. Colo. 2015); *accord Quinn*, 2006 U.S. Dist. LEXIS 104951, at *19 (class action not superior where it would impose "an extreme burden on the court" due to "fact-intensive inquiries" compounded by "differences in state law").

### IV. Plaintiffs' Proposed Issue Class Under Rule 23(c)(4) Is Also Unmanageable.

Finally, Plaintiffs' proposed issue class under Rule 23(c)(4) of "whether Defendants acted negligently" fails for the same reasons described above. *See* FAC ¶ 103. Namely, this issue is not capable of class-wide resolution; negligence depends on varying state law and/or foreign law and requires an individualized inquiry for each class member. Even issue certification is thus unmanageable. *See DaVita*, 308 F.R.D. at 379 (denying issue certification where "the necessity of applying the law of each plaintiff's home state and the extent to which plaintiffs' claims turn on individual issues make class treatment unworkable"); *Friedman*, 304 F.R.D. at 616 (rejecting issue certification where "there are not just individualized damage inquiries, but individualized liability issues"); *McGlenn*, 2021 U.S. Dist. LEXIS 9532, at *32–34 (similar).

### CONCLUSION

Plaintiffs fail to satisfy the Rule 23 requirements for class certification. The Court should therefore strike the class allegations from Plaintiffs' First Amended Class Action Complaint.

Dated: October 27, 2023.    Respectfully submitted,

*/s/ Jessica J. Smith*
Jessica J. Smith
Nicholas W. Katz
Daniel H. Athenour
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8000

14

Fax: (303) 223-3262
jjsmith@hollandhart.com
nwkatz@hollandhart.com
dhathenour@hollandhart.com
**ATTORNEYS FOR DEFENDANT EVERCODE**

## **CERTIFICATE OF SERVICE**

   I hereby certify that on October 27, 2023, I have caused the foregoing to be served on the following electronically via ECF:

    dthornburgh@awkolaw.com
    nguntner@awkolaw.com
    dkreis@awkolaw.com

   **Attorneys for Plaintiffs**


                */s/ Jessica J. Smith*
                HOLLAND & HART LLP

30698802_v7