**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01582-PAB-MEH

ROBERT MEANY, et al.,

          Plaintiffs,

v.

ATOMIC PROTOCOL SYSTEMS OÜ D/B/A ATOMIC WALLET, *et al.*

          Defendants.

---

**DEFENDANT ATOMIC PROTOCOL SYSTEMS OÜ D/B/A ATOMIC WALLET'S
MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE
12(B)(1), (2) AND (6)**

      Defendant Atomic Protocol Systems Oü d/b/a Atomic Wallet ("Atomic Systems") hereby

moves to dismiss under Rule 12(b)(1), (2), and (6) the claims asserted against it in Plaintiffs' First

Amended Class Action Complaint ("AC" or the "Complaint") (ECF No. 15).[1]

**PRELIMINARY STATEMENT**

      This is a class action case. Cryptocurrency and an alleged hack are at issue. Atomic

Systems is an open-source software developer based in Estonia, with no U.S. ties. Plaintiffs assert

purported class claims on behalf of the alleged owners of approximately 5,500 cryptocurrency

wallets. They say that North Korean hackers allegedly stole their money because of a software

bug. Plaintiffs seek to hold Atomic Systems, who offered Atomic Wallet, the open-source

cryptocurrency wallet software in question, responsible for their losses even though they agreed

to Atomic Systems' Terms of Service ("TOS," ECF No. 32-3). The TOS expressly disclaim

liability for losses due to theft, limit Atomic Systems' liability to $50 per user, and state that

---

[1] **Conferral Certificate**: Atomic Systems' counsel conferred with Plaintiffs' counsel by email and
telephone on November 13, 2023. Plaintiffs oppose this Motion.

Atomic Wallet is provided to users free, but "as-is" and "without any warranty whatsoever."

The Complaint must be dismissed for procedural and substantive reasons. As a threshold matter, the Court lacks subject matter jurisdiction over the action and personal jurisdiction over Estonian defendant Atomic Systems. Plaintiffs fail to meet the Class Action Fairness Act's ("CAFA") $5,000,000 damages requirement as a matter of law, as they allege at most 5,500 class members (AC ¶ 76) who each are limited to $50 of damages (TOS § 8). *See* Section I. Nor does one use of Atomic Wallet in Colorado amount to purposeful availment in the state sufficient to generate personal jurisdiction over that specific defendant or for the non-resident Plaintiffs. *See* Section II.

Even if this Court had jurisdiction over Atomic Systems, Plaintiffs' claims are brought in the wrong forum. The End User License Agreement ("EULA," ECF No. 32-2) governing Plaintiffs' use of Atomic Wallet contains a mandatory forum-selection clause and all disputes related to Atomic Wallet software must be litigated in Tallinn, Estonia. *See* Section III. Even if Plaintiffs' potpourri of state law claims for claims for negligence, gross negligence, fraudulent misrepresentation, fraudulent concealment, and civil conspiracy were brought in the proper forum, these claims fail for the reasons set forth below in Section IV.

## BACKGROUND[2]

Atomic Systems is an Estonian software company. AC ¶ 33. Atomic Systems offers users a license to its non-custodial decentralized cryptocurrency wallet software known as Atomic Wallet. AC ¶¶ 61, 64. Atomic Systems has no access to users' wallets or sensitive information. *Id.* ¶ 64. Atomic Wallet users' funds are not stored in Atomic Wallet itself, they are stored on a blockchain. *Id.* Users are directed to select a secure password for their wallet and are provided "a

---

[2] Unless otherwise indicated, these allegations are drawn from the Complaint and are taken as true only for purposes of Rule 12(b)(6).

set of 12 randomly generated words" that serve as a backup key. *Id.* ¶¶ 60, 65. These backup phrases are stored on users' personal devices, rather than on a network. *Id.* ¶ 65. Atomic Systems warns its customers to "***[t]ake your passwords seriously***," as "***[y]our backup [phrases are] like a key to your wallet, whoever owns it, owns the funds***." *Id.*

When downloading Atomic Wallet, users agreed to the TOS. The TOS state that Atomic Wallet is provided "at no cost, 'as-is' and without any warranty whatsoever, to the maximum extent permissible by law." TOS § 6. The TOS further warn that using virtual currency software is inherently risky, and Atomic Systems "specifically disclaims and shall have no liability . . . for . . . theft of virtual currency tokens." *Id.* § 5. Atomic Systems is also not liable for damages arising from, *inter alia*, "any bugs, viruses, trojan horses, or the like that are found in the Atomic Wallet software or that may be transmitted to or through [its] services by any third party (regardless of the source of origination." *Id.* § 7. Further, the TOS state, in capital letters, that "UNDER NO CIRCUMSTANCES" will Atomic Systems' liability exceed $50 per user. *Id.* § 8.

Individuals' free license to use Atomic Wallet is also governed by Atomic Systems' EULA (ECF No. 32-2).[3] "By installing, copying, or otherwise using [Atomic Wallet], [users] agree[d] to

---

[3] The Court may consider both the TOS and EULA. On a motion to dismiss, "the court may consider documents incorporated by reference [and] documents referred to in the complaint that are central to the claims . . . ." *Hill v. Ser Jobs for Progress Nat'l, Inc.*, 2019 WL 5964961, at *2 n.2 (D. Colo. Nov. 13, 2019) (citing *Tellabs, Inc v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). The authenticity of the TOS and EULA is not in dispute. Further, these agreements govern the contractual relationship between Plaintiffs and Atomic Systems and are thus central to Plaintiffs' claims. The court may consider both the TOS and EULA, though Plaintiffs carefully avoid mention of either agreement. *See Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1082–83 (D. Colo. 2018) (considering contracts governing the parties' relationship, though "[p]laintiffs never allege the existence of any contracts directly in the complaint"). Plaintiffs may not circumvent these agreements through artful pleading. *See Kelvion, Inc. v. Petrochina Can., Ltd.*, 918 F.3d 1088, 1093–94 (10th Cir. 2019).

be bound by the terms and conditions" of the EULA. EULA at 1. The EULA contains a mandatory forum-selection clause requiring "[a]ny legal action or proceeding relating to this EULA shall be brought exclusively in courts located in Tallinn, Estonia, and each party consents to the jurisdiction thereof." *Id.* § 7.

In March 2021, Least Authority, a cryptocurrency research and security group, was hired to audit Atomic Wallet. AC ¶ 70. On February 10, 2022, Least Authority issued a publicly available online statement cautioning users about alleged security vulnerabilities with Atomic Wallet and recommending against use of the software until those vulnerabilities were remedied. *Id.* ¶ 72 & n.13. At least one news article in February 2022 reported on Least Authority's report. *Id.* ¶ 74 n.14.

On June 3, 2023, North Korean hackers allegedly attacked Atomic Wallet, impacting 5,500 user wallets. *Id.* ¶ 76. The cause of the hack, as Plaintiffs themselves acknowledge, remains unknown. *Id.* ¶¶ 77, 82.

## ARGUMENT

### I. The Court Lacks Subject Matter Jurisdiction Because Plaintiffs Fail to Allege Plausible Damages in Excess of $5,000,000.

The Complaint should be dismissed under Rule 12(b)(1) because this Court lacks subject matter jurisdiction.  Plaintiffs fail to meet CAFA's threshold damages requirement as a matter of law.

Plaintiffs invoke CAFA, 28 U.S.C. § 1332(d)(2), to purportedly establish federal subject matter jurisdiction, alleging damages of approximately $100 million. AC ¶ 40. But the math does not add up. The TOS plainly limit Atomic Systems' liability to $50 per customer. TOS § 8. Plaintiffs allege that "an estimated 5,500 crypto wallets have been affected" by the North Korean hack. AC ¶ 76. This is well below the 100,000 class members required to meet CAFA's $5 million

threshold. *See also id.* ¶¶ 10, 44, 67, 75, 94 (claiming to represent a class of "thousands" not tens or hundreds of thousands). Courts may dismiss an action under Rule 12(b)(1) where it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Here, it is a legal certainty that Plaintiffs' damages will be capped at approximately $275,000 (at $50 per each of the approximately 5,500 impacted accounts).

The legal certainty test is satisfied where, as here, "the terms of a contract limit the plaintiff's possible recovery." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (quoting 14A Wright, Miller, and Cooper, Federal Practice and Procedure, Jurisdiction, § 3702 at 48–50 (2d ed. 1985)); *Fitzgerald v. City of Ottawa, Kan.*, 975 F. Supp. 1402, 1406 (D. Kan. 1997). The applicability of contract's damages cap is a purely legal issue that the Court should decide at the outset of the action, before the parties engage in costly litigation on an action lacking subject matter jurisdiction. *See Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 354 (7th Cir. 1995) (Easterbrook, J.) (the question of whether to dismiss pursuant to failure to meet the threshold pleading requirement because of a limitation of liability provision "is one of prudence, . . . require[ing] the judge to consider [] costs (for both the parties and the two judicial systems)"). In *Pratt Central Park*, Judge Easterbrook reasoned that the district court did not abuse its discretion in dismissing claims on a Rule 12(b)(1) motion for failure to plead the jurisdictional amount, as the parties agreed to a contract limiting damages to $5,000 and the "district court was able to resolve the jurisdictional question without the need for an evidentiary hearing." *Id.* at 354; *see also Valhal Corp. v. Sullivan Assoc., Inc.*, 44 F.3d 195, 202-03, *rehearing en banc denied*, 48 F.3d 760 (3d Cir.1995) (dismissing based on a statutory damage cap);

*Pachinger v. MGM Grand Hotel*, 802 F.2d 362, 364 (9th Cir.1986) (same).

Here, Plaintiffs agreed to an enforceable $50 per customer damages cap. Such provisions are "generally enforceable because it represents the parties' bargained-for agreement regarding allocation of risks and costs in the event of a breach or other failure of the contemplated transaction." *Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 300 P.3d 963, 968 (Colo. App. 2012); *see also Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 49 (2d Cir. 1993) (upholding a bargained-for limitation of liability provision in a services contract for fire alarm installation, noting that such provisions "help keep alarm services affordable"). As Plaintiffs do not allege a class of at least 100,000, they fail to meet CAFA's $5 million threshold with legal certainty.

## II.   <u>The Court Should Dismiss Under Rule 12(b)(2) for Lack of Personal Jurisdiction</u>.

Plaintiffs fail to meet the Due Process Clause's "purposeful availment" requirement, as they allege only that one customer used Atomic Wallet in Colorado.

The Court's exercise of personal jurisdiction is governed by constitutional due process limitations and Colorado's long-arm statue, which "extends jurisdiction to the Constitution's full extent." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). "Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Rule 4(k)(2)'s national contacts test is inapplicable, as it only applies to "a claim that arises under federal law," not to Plaintiffs' state law tort claims. Fed. R. Civ. P. 4(k)(2).

Plaintiffs allege only one Colorado contact: Atomic Systems' contract to perform services for Colorado resident Graham Dickinson, who allegedly used Atomic Wallet in the state. AC ¶

12.[4] This sole contact is insufficient to establish personal jurisdiction over Atomic Systems. In evaluating personal jurisdiction based on activities conducted over the internet, courts place "emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). While transaction of high volumes of business in a forum over the internet can constitute purposeful availment, the alleged existence of *one* transaction in the forum is insufficient. *Onyx Enterprises Int'l Corp. v. Sloan Int'l Holdings Corp.*, 2020 WL 1958414, at *5 (D. Colo. Mar. 26, 2020), *report and recommendation adopted*, 2020 WL 1955398 (D. Colo. Apr. 23, 2020). The *Onyx Enterprise* court held that it lacked jurisdiction over defendant where defendant "admitted to one contact with Colorado, an order that [p]laintiff sent to [d]efendant." *Id.* The court distinguished cases where plaintiff sufficiently alleged facts that demonstrated a "high volume" of transactions in the forum. *Id.* at *6. Similarly, Plaintiffs have not alleged any such "high volume" here, and thus fail the purposeful availment requirement.

Even if *arguendo*, Atomic Systems' contacts with Colorado were sufficient to create personal jurisdiction related to Dickinson's claims, those contacts are insufficient to provide jurisdiction over the remaining twenty non-resident Plaintiffs. "If a defendant is subject to specific personal jurisdiction, the asserted cause(s) of action must arise from the specific contacts with the forum that gave rise to jurisdiction." *Kennedy v. Mountainside Pizza, Inc.*, 2020 WL 4454897, at *4 (D. Colo. May 14, 2020), *report and recommendation adopted*, 2020 WL 4448771 (D. Colo. Aug. 3, 2020). Even if Atomic Systems had sufficient contacts with Colorado related to Dickinson's injuries, the non-Colorado plaintiffs' injuries did not arise out of those contacts.

---

[4] In the original complaint, Mr. Dickinson was alleged to have used Atomic Wallet while in Connecticut, not Colorado. ECF No. 1 ¶ 9.

III.     **This Action Should Be Dismissed for *Forum Non Conveniens*.**

The Court should dismiss this action for *forum non conveniens*, as it was filed in Colorado in violation of a binding forum-selection clause. "[T]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Normally, a *forum non conveniens* analysis weighs "the plaintiff's choice of forum; cost and convenience to the parties and witnesses; and public administration considerations." *Kelvion, Inc. v. Brion Energy Corp.*, 2017 WL 3711500, at *1 (N.D. Okla. Aug. 28, 2017), *aff'd sub nom. Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088 (10th Cir. 2019). "A valid forum selection clause, however, changes the calculus." *Id.* at *2 (citing *Atl. Marine*, 571 U.S. at 63). "[B]y contract[ing] to bring suit in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Atl. Marine*, 571 U.S. at 63. Thus, absent "'extraordinary circumstances unrelated to the convenience to the parties' that would caution against enforcement of the forum-selection clauses," courts should dismiss actions for *forum non conveniens*. *Almanza v. General Construction Services, Inc.*, 2021 WL 2823228, at *4 (D. Colo. Jan. 29, 2021) (quoting *Atl. Marine*, 571 U.S. at 62).

A.     **Plaintiffs Are Bound by the EULA's Mandatory Forum-Selection Clause.**

By "installing, copying, or otherwise using the" Atomic Wallet software, Plaintiffs agreed to be bound by the EULA. EULA at 1. The EULA contains a mandatory forum-selection clause which requires that "[a]ny legal action or proceeding relating to this EULA ***shall be brought exclusively in courts located in Tallinn, Estonia***, and each party consents to the jurisdiction thereof." EULA § 7 (emphasis added). "The scope of a forum-selection clause is evaluated according to ordinary principles of contractual interpretation." *Kelvion*, 918 F.3d at1092. Section

7 of the EULA constitutes a mandatory forum-selection clause, as it "contain[s] clear language showing that jurisdiction is appropriate only in the designated forum." *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002). Indeed, forum-selection clauses with similar language requiring that an action "shall" be brought in a particular forum are deemed mandatory. *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992). Plaintiffs' failure to reference the EULA in the Complaint is of no moment, as one "cannot defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit." *Kelvion*, 918 F.3d at 1093.

"The ordinary meaning of the phrase 'relating to' is broad." *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1199 (10th Cir. 2009); *see also Digital Landscape Inc. v. Media Kings LLC*, 440 P.3d 1200, 1206-07 (Colo. App. 2018)). Plaintiffs allege that Atomic Systems negligently, or grossly negligently, maintained the security of its software (*e.g.*, AC ¶¶ 106, 111-12), that Atomic Systems misrepresented or omitted details regarding its software's security (*e.g.*, *id.* ¶¶ 118, 130), and that Defendants conspired to make "numerous misrepresentations and omissions . . . about the safety and security of the Atomic Wallet platform" (*id.* ¶ 138). Because this action "relat[es] to" Atomic Systems' license of cryptocurrency wallet software to Plaintiffs, it must be adjudicated in Tallinn. EULA § 7.

**B.     Public Interest Factors Favor Dismissal on Grounds of *Forum Non Conveniens.***

The public interest factors at play here all favor litigation in Estonia, not Colorado. Where, as here, there is an enforceable forum-selection clause, "it is [p]laintiffs who bear the burden to show why the public-interest factors weigh against transfer." *Dupray v. Oxford Ins. Co. TN LLC*, 645 F. Supp. 3d 1095, 1108 (D. Colo. 2022) (citing *Alt. Marine*, 571 U.S. at 67). Plaintiffs' choice of forum "merits no weight" where the selection violates a binding forum-selection clause. *Atl.*

*Marine*, 571 U.S. at 63. In such situations, courts "may consider only public-interest factors and not the parties' private interests, because '[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation.'" *Dupray*, 645 F. Supp. 3d at 1101 (quoting *Atl. Marine*, 571 U.S. at 64); *see Kelvion, Inc.*, 918 F.3d at 1094. "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 63 n.6 (quotation omitted).

Here, Plaintiffs present "no evidence that administrative difficulties or court congestion will prevent . . . recei[pt] [of] a timely and fair trial in" the courts of Estonia. *Kelvion, Inc.*, 2017 WL 3711500, at *3 (quotation omitted). Further, Plaintiffs acknowledge that Atomic Systems is an Estonian company. AC ¶ 33. Estonian courts have an interest in resolving disputes concerning Estonian entities. Additionally, public factors favor the enforcement of binding forum-selection clauses, such as EULA § 7. "If forum selection clauses are to be enforced as a matter of public policy, that . . . policy requires that they not be defeated by artful pleading of claims." *Kelvion*, 918 F.3d at 1094 (citations and quotation omitted). "This public policy purpose is especially important where claims grow out of the contractual relationship or if 'the gist' of those claims is a breach of that relationship." *Id.* (citations and quotation marks omitted). Moreover, Colorado has a minimal interest in this action. Defendants are all foreign residents (AC ¶¶ 33-37), and, except for Graham Dickinson, no Plaintiffs are Colorado residents (*id.* ¶¶ 11, 13-31).

## IV.    <u>Plaintiffs Fail to State a Claim Under Rule 12(b)(6).</u>

### A.    <u>Plaintiffs' Claims Are Precluded by the Economic Loss Rule.</u>

Plaintiffs' claims are precluded in full by Colorado's economic loss rule and other states'

similar rules.[5] Because Plaintiffs' relationship with Atomic Systems is governed by interrelated contracts, they are precluded from asserting tort claims arising from that contractual relationship.

Colorado's "economic loss rule bars a party that suffered only economic loss as a consequence of a breach of contract from asserting a tort claim premised on the breach unless the breaching party also owed the nonbreaching party an independent duty of care under tort law." *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 506 P.3d 108, 118 (Colo. App. 2021). This rule applies where contractual duties arise from a network of "interrelated contracts." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004).

Here, Plaintiffs' use of Atomic Wallet was governed by the EULA and the TOS. ECF Nos. 32-2, 32-3. These agreements preclude Plaintiffs' claims.

*First*, Plaintiffs assert negligence claims based on Defendants' alleged failure to maintain adequate app security. AC ¶¶ 106–08. "The purpose of the economic loss rule is to prevent parties from turning contract claims into tort claims, encourage parties to allocate risks and costs in their contract bargaining, and enforce those expectancy interests." *Bellwether*, 353 F. Supp. 3d at 1083–84. Here, the contracts between Atomic Systems and Plaintiffs make clear that Atomic Systems did not agree to insure Plaintiffs against loss, but rather expressly allocated the risk to Plaintiffs. *See* TOS § 5 (disclaiming liability for "theft of virtual currency tokens"); § 6 (Atomic Wallet provided "as is" "and without any warranty whatsoever, to the maximum extent permissible by

---

[5] Plaintiffs' claims are governed by the law of the foreign county in which each Defendant resides. *See SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 n.1 (D. Colo. 2017) (selecting law of defendant's forum state in a data breach case brought by citizens of various states); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1245 (D. Colo. 2018) (same). Accordingly, the claims against Atomic Wallet are governed by Estonian law and Atomic Wallet reserves the right to seek application of Estonian law to future proceedings. Assuming, *arguendo*, that state law applies, Atomic Wallet seeks dismissal under Colorado law and the law of the other jurisdictions where Plaintiffs reside.

law"); § 7 (limiting liability from losses from, *inter alia*, unauthorized use of users' wallet due to failure to confidentially maintain users' private keys or any software bugs, viruses, trojan horses, or the like); § 8 (capping liability to $50); EULA § 2(B) ("Licensor shall provide updates and maintenance on the Software on an as needed basis.").[6] The EULA and TOS thus establish the applicable duty of care, and Colorado has not recognized any independent duty "related to data security." *SELCO*, 267 F. Supp. 3d at 1295. That means Plaintiffs' negligence claims are barred by the economic loss rule, and "[i]t makes no difference that [defendants'] contractual duties arise from a web of interrelated agreements . . . rather than bilateral contracts." *Id.* at 1296; *see also Bellwether*, 353 F. Supp. 3d at 1085 (applying Colorado's economic loss rule to data breach claims).[7]

     *Second*, Plaintiffs assert claims for fraudulent misrepresentation, fraudulent concealment, and civil conspiracy based on alleged representations and omissions on Defendants' websites. AC ¶¶ 117–43. But the economic loss rule applies to fraud claims too, where plaintiffs seek to recover through their tort claims relief expressly excluded under the contract. *Dream Finders*, 506 P.3d at 122. Put simply, Plaintiffs cannot pursue tort claims in "an attempt to avoid the application of unfavorable contractual language." *Id.* at 126. Yet that is precisely what Plaintiffs seek to do. Each

---

[6] Indeed, insurance companies, such as Lloyd's, offer insurance to protect against cryptocurrency wallet theft or other malicious hacks. *See* Lloyd's, *Lloyd's Launches New Cryptocurrency Wallet Insurance Solution for Coincover* (Feb. 28, 2020), https://www.lloyds.com/about-lloyds/media-centre/press-releases/lloyds-launches-new-cryptocurrency-wallet-insurance-solution-for-coincover.

[7] So too under at least the laws of California, Connecticut, Idaho, Kansas, Massachusetts, Missouri, New Jersey, New York, Nevada, Oregon, Ohio, South Carolina, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin. *See, e.g., SELCO*, 267 F. Supp. 3d at 1292; *Gordon*, 344 F. Supp. 3d at 1246; *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498–99 (1st Cir. 2009); *Xat.com Ltd. v. Hosting Servs.*, 2017 WL 449652, at *4 (D. Utah Feb. 2, 2017); *Rider v. Uphold HQ Inc.*, 2023 WL 2163208, at *6-*7 (S.D.N.Y. Feb. 22, 2023); *see also* 2 Frumer & Friedman, *Products Liability* § 13.07 (Matthew Bender, rev. ed.) (listing the states following some variation of the economic loss rule and collecting cases).

of the interrelated contracts governing Plaintiffs' use of Atomic Wallet includes multiple specific disclaimers of warranties and representations. EULA §§ 10-11, 12; TOS §§ 5-7, 13. Because these contracts disclaim all warranties and representations, any claims based on alleged representations or omissions made after Plaintiffs began using Atomic Wallet or accessed Defendants' websites are barred by the economic loss rule. *See Dream Finders*, 506 P.3d at 126; *McWhinney*, 2018 WL 4680342, at *16.

**B.    Plaintiffs' Negligence and Gross Negligence Claims Fail as a Matter of Law.**

To prevail on a negligence claim under Colorado law, a plaintiff must show: "(1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff." *Gilbert v. U.S. Olympic Comm'n*, 423 F. Supp. 3d 1112, 1146 (D. Colo. 2019) (quotation omitted).[8] To establish gross negligence, the plaintiff must show that the defendant acted recklessly, with conscious disregard for the safety of others, extending beyond. *Id.* at 1149. Here, Plaintiffs' negligence claims fail on each element.

*First*, Plaintiffs fail to allege facts giving rise to a legal duty. They claim that Defendants owed them duties to maintain Atomic Wallet's security and to protect against hacking. AC ¶¶ 106–08. This Court has repeatedly rejected similar claims because Colorado recognizes no such duty. *See Bellwether*, 353 F. Supp. 3d at 1084; *Gordon*, 344 F. Supp. 3d at 1244 n.5; *SELCO*, 267 F. Supp. 3d at 1295.

Courts in other states at issue, like Virginia and Washington, have likewise declined to recognize any such claimed duty. *See Deutsche Bank Nat'l Tr. Co. v. Buck*, 2019 U.S. Dist. LEXIS 54774, at *15 (E.D. Va. Mar. 29, 2019); *In re MCG Health Data Sec. Issue Litig.*, 2023 WL

---

[8] These elements are generally consistent across state law. *Cf.* Restatement (Second) of Torts § 281.

3057428, at *3-*4 (W.D. Wash. Mar. 27, 2023). Other states, including Connecticut, Idaho, Missouri, Oregon, Tennessee, Texas, Utah, West Virginia, and Wisconsin, appear not to have yet addressed this specific issue. And although some courts have recognized the possibility of a duty in data security cases, that duty only arises where the defendant collects and stores personal, confidential information belonging to the plaintiffs. *See, e.g.*, *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14-*15 (D.N.J. Dec. 16, 2021). Here, in contrast, Plaintiffs acknowledge that Atomic Wallet is a non-custodial, decentralized wallet, meaning that Defendants have no access to Plaintiffs' sensitive information. AC ¶ 64. Nothing in the AC alleges that Defendants collect any confidential or personal information from Plaintiffs.

*Second*, with respect to Plaintiffs' claim of a duty to "ensure that important passwords or security details could not be revealed to bad actors," AC ¶ 107, Plaintiffs do not plausibly allege a breach of that duty. Although Plaintiffs allege that a hack occurred and that their funds were stolen, they do not allege that important passwords or security details were stolen by bad actors from Atomic Systems. *See id.* Instead, they acknowledge that the cause of the hack is unknown. AC ¶ 77.

*Third*, and finally, Plaintiffs do not adequately plead that Atomic Systems' alleged action or inaction proximately caused the North Korean hack. Again, Plaintiffs concede that the cause of the hack is unknown. The only allegation resembling proximate cause is the conclusory and circular assertion that the hack was a result of Defendants' failure to provide sufficient security, as evidenced by the hack. AC ¶ 83. This, too, warrants dismissal. *See Gilbert*, 423 F. Supp. 3d at 1149 (dismissing negligence claim where Plaintiffs relied on "naked assertions" of injury caused by the alleged negligence); *see also M.K. v. Google LLC*, 2023 U.S. Dist. LEXIS 133602, at *25 (N.D. Cal. Aug. 1, 2023) (similar).

For these reasons, Plaintiffs' negligence claims fail, as do their gross negligence claims. *See Weil v. First Nat'l Bank*, 983 P.2d 812, 815 (Colo. App. 1999); *Gilbert*, 423 F. Supp. 3d at 1150 (same).

### C.   Plaintiffs Do Not Adequately Allege Fraud Against Atomic Systems.

Plaintiffs' fraudulent misrepresentation and fraudulent concealment claims also fail for reasons similar to those articulated by Evercode Infinite ("Evercode"). *See* Evercode MTD § III(D). Rule 9(b)'s heightened pleading standard governs these claims, so Plaintiffs must "set forth the time, place[,] and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotation omitted); *accord W. State Bank v. Cosey, L.L.C.*, 2019 WL 5694271, at *3 (D. Colo. Nov. 4, 2019). Where, as here, fraud is alleged against multiple defendants, "blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth." *In re HomeAdvisor, Inc. Litig.*, 491 F. Supp. 3d 879, 892 (D. Colo. 2020) (quotation omitted).

#### 1.   Plaintiffs cannot establish fraudulent misrepresentation.

To establish fraud by misrepresentation, Plaintiffs must show: "(1) a fraudulent misrepresentation of material fact was made by [Atomic Systems]; (2) [Plaintiffs] relied on the misrepresentations; (3) [Plaintiffs] have the right to rely on, or were justified in relying on, the misrepresentation; and (4) the reliance resulted in damages." *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994).[9] Plaintiffs fail to establish each element.

The statements that Plaintiffs attribute to Atomic Systems fall into three general categories, which are each insufficiently pleaded: (i) generic statements that Atomic Wallet was "secure[]"

---

[9] The elements of fraud are generally consistent across states, such that Plaintiffs' claims fail under the law of each jurisdiction where Plaintiffs reside. *Cf.* Restatement (Second) of Torts § 525.

(*e.g.*, AC ¶ 62) and that "[s]ecurity is [Atomic Systems'] highest priority" (*id.* ¶ 74); (ii) specific statements concerning Atomic Wallet's security (*e.g. id.* ¶ 62 ("Your private keys are encrypted and never leave your device. You fully control your funds.")); and (iii) statements regarding Atomic Systems' plans to enhance the platform's security following the Least Authority Audit (*e.g.*, *id.* ¶ 74 ("We have taken all the issues discovered by Least Authority into full account").

*First*, Plaintiffs do not adequately allege that Atomic Systems misrepresented a material fact. Generic statements regarding the adequacy of Atomic Wallet's security are nonactionable puffery. *Renfro v. Champion Petfoods USA, Inc*, 25 F.4th 1293, 1302 (10th Cir. 2022) ("[S]tatements of opinion such as puffing or praise of goods by seller is no warranty."). As to the second and third categories of alleged misstatements—concerning factual statements regarding Atomic Wallet's specific security measures and plans for improvements—Plaintiffs fail to allege that these statements were false. Plaintiffs do not allege, for example, that customers' private keys were not encrypted and stored on customers' devices or that Atomic Systems was not implementing Least Authority's security recommendations. Rather, Plaintiffs employ circular logic, reasoning that since Plaintiffs' wallets were somehow hacked, Atomic Systems must have lied about its security measures. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1116–17 (D. Colo. 2010) (dismissing fraud claim for insufficient allegations of falsity). Moreover, Atomic Systems' alleged promise of future security enhancements is not actionable, as Plaintiffs do not allege that Atomic Systems lacked a present intent to make such enhancements. *Id.* at 1116.

*Second*, Plaintiffs fail to allege with particularity that they were actually aware of and relied upon Atomic Systems' representations regarding the platform's security and saw those statements before downloading Atomic Wallet. "Plaintiffs cannot state a claim for fraudulent misrepresentation based on misrepresentations of which they were unaware." *Prymak v. Contemp.*

*Fin. Sols., Inc.*, 2007 WL 4250020, at *21 (D. Colo. Nov. 29, 2007); *accord Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (similar). Website statements are likewise not actionable as fraud absent specific allegations for each Plaintiff as to their actual knowledge of and reliance on those statements. *See, e.g.*, *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 897–98 (E.D.N.Y. 2018); *Tyman v. Pfizer, Inc.*, 2017 WL 6988936, at *24 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018).

*Third*, Plaintiffs' supposed reliance was not reasonable, as Atomic Systems' TOS expressly state that its product was sold "at no cost, 'as is' and without any warranty, whatsoever, to the maximum extent permissible by law." TOS § 6. "[C]lear and unequivocal disclaimers . . . will otherwise render a plaintiff's reliance on contradictory statements unreasonable as a matter of law." *Cahey v. Int'l Bus. Machines Corp.*, 2020 WL 5203787, at *11 (D. Colo. Sept. 1, 2020). Further, any reliance would be unreasonable as to the first two categories of statements, which both concern Atomic Wallet's security, since Least Authority publicly warned customers about potential issues with Atomic Wallet's security. AC ¶ 72-73. Because Plaintiffs thus had "access to information that was equally available to both parties and would have led to the true facts, [Plaintiffs] have no right to rely upon the false representation." *M.D.C./Wood*, 866 P.2d at 1382; *see also Brush Creek Airport, LLC v. Avion Park, LLC*, 57 P.3d 738, 749 (Colo. App. 2002) (similar).

*Finally*, Plaintiffs fail to allege that their purported reliance resulted in any damages. Plaintiffs do not allege that their losses were the result of purported security vulnerabilities identified by Least Authority or the specific statements of fact concerning Atomic Wallet's security identified above. Rather, Plaintiffs admit that the cause of the hack is unknown, and therefore cannot establish that Atomic Systems' statements caused their injuries. *See 1881*

*Extraction Co. v. Kiinja Corp.*, 2023 WL 2424837, at *11 (D. Colo. Mar. 9, 2023) (dismissing fraud claim for inadequate causation allegations).

### 2.   **Plaintiffs fail to allege concealment.**

Plaintiffs' concealment claim fails for many of the same reasons. To state this claim, under Colorado law, Plaintiffs must allege:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Baker v. Wood, Ris & Hames, PC*, 364 P.3d 872, 883 (Colo. 2016) (quotation omitted).[10] This claim fails for multiple reasons.

*First*, Atomic Systems and Least Authority publicly disclosed the existence of potential security issues with Atomic Wallet. AC ¶¶ 72-73 (Least Authority's publicly available blog post); *id.* ¶ 74 (Atomic Systems' public response). Atomic Systems could not "conceal" something that was publicly available. *See Aaron H. Fleck Revocable Tr. v. First W. Tr. Bank*, 2023 WL 6443880, at *7-*8 (D. Colo. Oct. 3, 2023) (no fraud where the info was publicly available).

*Second*, Plaintiffs do not sufficiently allege that Atomic Systems intended for Plaintiffs "to act on any purported concealment." *See Baker*, 364 P.3d at 884. Instead, the TOS's disclaimer provisions (TOS § 5) "refute any claim of intended reliance" (*see Baker*, 364 P.3d at 884).

*Third*, Plaintiffs do not allege sufficient facts to show "that they acted based on their belief that the facts were other than what they understood them to be and therefore suffered damages." *See id.* Plaintiffs include no specific allegations regarding which Plaintiffs conducted which transactions on Atomic Wallet and when. And again, any reliance would be unjustifiable because

---

[10] The elements of fraudulent nondisclosure or concealment are generally consistent, so Plaintiffs' claims fail no matter which law applies. *Cf.* Restatement (Second) of Torts §§ 550, 551.

of (i) the publicly available information warning against using Atomic Wallet, and (ii) the contractual disclaimers. *See Cahey*, 2020 WL 5203787, at *10 (disclaimer language can preclude concealment claim).

    *Fourth*, and finally, as addressed above, Plaintiffs cannot show that any purported reliance resulted in any damages because the cause of the North Korean hack is unknown. *See Baker*, 364 P.3d at 884 ("[Plaintiffs] did not allege how they were damaged by any action that they took or did not take as a result of their alleged misunderstanding of the true facts.").

    **D.    Plaintiffs Fail to State a Claim for Civil Conspiracy.**

    Plaintiffs' last claim alleges that Defendants conspired to commit fraud. AC ¶¶ 138–39.[13] Under Colorado law, this requires Plaintiffs to show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Vickery v. Evelyn V. Trumble Living Tr.*, 277 P.3d 864, 871 (Colo. App. 2011) (quotation omitted).[11] Because Plaintiffs' conspiracy claim is based on alleged fraud, it must be pleaded with particularity under Rule 9(b). *See Bell v. 3M Co.*, 344 F. Supp. 3d 1207, 1228 (D. Colo. 2018). It is not.

    Plaintiffs include no plausible underlying factual allegations for their conclusion that all Defendants conspired together to commit any unlawful act. *See, e.g.*, *id.* ("[P]laintiffs have also failed to explain how defendants participated in a conspiracy with each other rather than merely participating in parallel conduct."); *Gen. Steel Domestic Sales, LLC v. Chumley*, 2011 WL 2415167, at *6 (D. Colo. June 10, 2011) (similar). In any event, because Plaintiffs fail to state a claim for any underlying predicate unlawful act, their conspiracy claim necessarily fails. *See Vickery*, 277 P.3d at 871.

---

[11] Again, the elements of this claim are generally similar across jurisdictions. Cf. Restatement (Third) of Torts: Liability for Economic Harm § 27.

## CONCLUSION

For these reasons, the Court should dismiss all claims against Atomic Systems.

Dated: November 16, 2023

Respectfully submitted,

**BROWN RUDNICK LLP**

*/s/ Stephen D. Palley*
Stephen D. Palley
601 Thirteenth Street NW Suite 600
Washington, DC 20005
(202) 536-1700 (telephone)
(617) 289-0466 (facsimile)
spalley@brownrudnick.com

Kyle Dorso
One Financial Center
Boston, MA 02111
(617) 856-8200 (telephone)
(617) 289-0899 (facsimile)
kdorso@brownrudnick.com

Jonathan White
Seven Times Square
New York, NY 10036
(212) 209-4800 (telephone)
(212) 209-4801 (facsimile)
jwhite@brownrudnick.com

*Counsel for Defendant Atomic Protocol
Systems Oü d/b/a Atomic Wallet*

**CERTIFICATE OF SERVICE**

I certify that on November 16, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all parties of record.

*/s/      Stephen D. Palley*