**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01582-PAB-MEH

ROBERT MEANY, et al.,

        Plaintiffs,

    v.

ATOMIC PROTOCOL SYSTEMS OÜ D/B/A ATOMIC WALLET, *et al.*

        Defendants.

---

**DEFENDANTS KONSTANTIN GLADYSHEV AND PAVEL SOKOLOV'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), (2) AND (6)**

Defendants Konstantin Gladyshev and Pavel Sokolov (the "Atomic Individuals") hereby move to dismiss under Rules 12(b)(1), (2), and (6) the claims asserted against them in Plaintiffs' First Amended Class Action Complaint ("AC" or the "Complaint") (ECF No. 15).[1]

## PRELIMINARY STATEMENT

This is a class action case. Cryptocurrency and an alleged hack are at issue. Atomic Protocol Systems Oü d/b/a Atomic Wallet ("Atomic Systems") is a software developer based in Estonia, with no U.S. ties. Messrs. Gladyshev and Sokolov are both Russian citizens and residents of Estonia. Plaintiffs assert purported class claims on behalf of the alleged owners of approximately 5,500 cryptocurrency wallets. They say that North Korean hackers allegedly stole their money because of a software bug. Plaintiffs seek to hold the Atomic Individuals personally liable for Plaintiffs' losses because they allegedly oversaw the development of Atomic Wallet, the cryptocurrency wallet software in question.

---

[1] **Conferral Certificate**: The Atomic Individuals' counsel conferred with Plaintiffs' counsel by email and telephone on March 5, 2024. Plaintiffs oppose this Motion.

The Complaint must be dismissed for procedural and substantive reasons. As a threshold matter, the Court lacks personal jurisdiction over the Atomic Individuals, whose jurisdictional contacts must be analyzed separately from those of Atomic Systems (which are also deficient, *see* ECF No. 50 at 6-7). The Atomic Individuals never stepped foot in Colorado and never sold products or services in the state. Though Plaintiffs allege that Mr. Gladyshev made statements concerning Atomic Wallet's security that were published in an online article, these statements did not target Colorado users, and thus do not amount to purposeful availment. To hold otherwise would create universal jurisdiction for all claims based on internet content. *See* Section I.

Even if this Court had jurisdiction over the Atomic Individuals, Plaintiffs' claims are brought in the wrong forum. The End User License Agreement ("EULA," ECF No. 32-2) governing Plaintiffs' use of Atomic Wallet contains a mandatory forum-selection clause, which may properly be raised by the Atomic Individuals. Pursuant to the forum-selection clause, all disputes related to Atomic Wallet software must be litigated in Tallinn, Estonia. *See* Section II. Even if Plaintiffs' potpourri of state law claims were brought in the proper forum, these claims fail for the reasons set forth below in Section III.

Finally, the Court lacks subject matter jurisdiction because Plaintiffs fail to meet the Class Action Fairness Act's ("CAFA") threshold damages requirement. *See* Section IV.

## BACKGROUND[2]

Mr. Gladyshev, Atomic Systems' CEO, and Mr. Sokolov[3], co-founded the company that

---

[2] Unless otherwise indicated, these allegations are drawn from the Complaint and are taken as true solely for purposes of Rule 12(b)(6).

[3] Despite the allegations in the Complaint (AC ¶ 37), Mr. Sokolov is not and never was the CTO of Atomic Systems. Declaration of Pavel Sokolov ("Sokolov Decl.") ¶ 3.

ultimately became Atomic Systems. AC ¶¶ 33, 35, 37.[4] Plaintiffs allege that Mr. Sokolov worked on the development of the cryptocurrency wallet software at issue (*id.* ¶ 57), but do not allege that any of the Atomic Individuals' relevant conduct took part in Colorado. Indeed, neither Mr. Gladyshev nor Mr. Sokolov has ever visited Colorado, and neither owns any property in the United States. Declaration of Konstantin Gladyshev ("Gladyshev Decl.") ¶¶ 5-6; Sokolov Decl. ¶¶ 5-6.

The Complaint is bereft of individualized allegations related to the Atomic Individuals. Plaintiffs allege that the Atomic Individuals founded Atomic Systems and were involved with two other companies that were involved in the development of Atomic Wallet's software. AC ¶ 53. But Plaintiffs fail to explain how those companies each contributed to Plaintiffs' alleged injuries, let alone allege how the Atomic Individuals' conduct in connection with those companies harmed Plaintiffs. The only individualized allegations pertaining to Mr. Gladyshev are (1) that he allegedly made a statement in an interview that Russian cryptocurrency companies are not keen to advertise the fact that their application was made by Russian developers (*id.* ¶ 52) and (2) that he allegedly provided comments to a February 22, 2022 article published by CoinDesk responding to cryptocurrency research and security group Least Authority's security concerns regarding Atomic Wallet (*id.* ¶ 74). With respect to Mr. Sokolov, Plaintiffs allege that, as co-founder of Evercode Lab, he oversaw the development of Atomic Wallet (*id.* ¶ 57) and he founded another cryptocurrency wallet application, which has no connection to Plaintiffs' claims (*id.* ¶ 39).

## ARGUMENT

**I.**   **The Court Should Dismiss Under Rule 12(b)(2) for Lack of Personal Jurisdiction.**

Plaintiffs fail to meet the Due Process Clause's "purposeful availment" requirement. The

---

[4] To avoid repetition, this Factual Background section is specific to facts concerning the Atomic Individuals. For a more fulsome recitation of the factual background, the Atomic Individuals respectfully refer the Court to Atomic Systems' opening brief. ECF No. 50 at 2-4.

Atomic Individuals, both Russian citizens and Estonian residents who have never visited the state (Gladyshev Decl. ¶ 5; Sokolov Decl. ¶ 5), have essentially no contacts with Colorado. Plaintiffs failed to plead facts sufficient to establish personal jurisdiction, alleging merely that Mr. Gladyshev made statements that were published in an online publication that were viewable in the forum (AC ¶ 74) and that the Atomic Individuals oversaw the development of the Atomic Wallet software (*id.* ¶ 57).

The Court's exercise of personal jurisdiction is governed by constitutional due process limitations and Colorado's long-arm statute, which "extends jurisdiction to the Constitution's full extent." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). "Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).[5] The Atomic Individuals' Colorado contacts must be analyzed separately from those of Atomic Systems, as "[e]mployees' 'contacts with [the forum state] are not to be judged according to their employer's activities there.'" *Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013) (quoting *Calder v. Jones,* 465 U.S. 783, 790 (1984)). Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder*, 465 U.S. at 790.

Thus, even if Atomic Systems' contacts with Colorado through its provision of Atomic Wallet to customers in Colorado were sufficient to confer personal jurisdiction over that entity— they are not (ECF No. 50 at 6-7)—those alleged contacts do not confer personal jurisdiction over the Atomic Individuals. The Atomic Individuals did not provide cryptocurrency wallet services to

---

[5] Despite Plaintiffs' indication to the contrary (AC ¶ 42), Rule 4(k)(2)'s national contacts test is inapplicable, as it only applies to "a claim that arises under federal law," not to Plaintiffs' state law tort claims. Fed. R. Civ. P. 4(k)(2).

any Colorado residents, even if Atomic Systems did.

**A.   Mr. Gladyshev's Alleged Comments in an Online Publication Do Not Confer Personal Jurisdiction.**

Being quoted in a globally accessible website is not enough for purposeful availment. In evaluating personal jurisdiction based on internet conduct, courts place "emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). "[M]erely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed." *Id.* at 1244. For example, in *Shrader*, the Tenth Circuit held there was no jurisdiction where defendant posted an allegedly defamatory email online which lacked any connection to the forum state. *Id.*; *see also XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 846 (10th Cir. 2020) (no jurisdiction over a foreign defendant who distributed an email to a mass audience, including to individuals in the forum).

Mr. Gladyshev's purported Colorado contacts are even more tenuous than those deemed insufficient in *Shrader* and *XMission*. Whereas defendants in those cases themselves published the online communication that served as the insufficient basis for jurisdiction, here Plaintiffs' only individualized allegation concerning Mr. Gladyshev is that he was quoted in a CoinDesk article addressing security concerns regarding Atomic Wallet. AC ¶ 74. Plaintiffs do not allege that either Mr. Gladyshev's comments or the article were specifically directed at Colorado residents, and thus cannot serve as the basis for personal jurisdiction. *See Shrader*, 633 F.3d at 1240.

**B.   Mr. Sokolov's Development of Atomic Wallet Software Does Not Create Jurisdiction.**

Mr. Sokolov's alleged jurisdictional contacts are even less substantial. Plaintiffs allege only that he oversaw the development of the Atomic Wallet software, without specifying his precise role, let alone how he acted negligently. AC ¶ 57. Even if Plaintiffs sufficiently alleged that Mr.

Sokolov developed the Atomic Wallet software and that conduct somehow amounted to a tort causing harm in Colorado, such alleged conduct is not conduct "taken outside the forum, . . . expressly directed at causing a harmful effect within the forum state." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1198 (Colo. 2005), *as modified on denial of reh'g* (Dec. 19, 2005). Plaintiffs do not dispute that the software was developed abroad and in fact repeatedly highlight the Atomic Individuals' foreign origin. *See* AC ¶¶ 3, 32, 35, 37, 51-52. Plaintiffs nowhere allege that Atomic Wallet was created to "expressly direct[]" harm towards Colorado residents. *Archangel*, 123 P.3d at 1198.

## II.   This Action Should Be Dismissed for *Forum Non Conveniens.*

The Court should dismiss this action for *forum non conveniens*, as it was filed in Colorado in violation of a binding forum-selection clause. "[T]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of *forum non conveniens.*" *Atl. Marine Constr. Co. v. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Normally, a *forum non conveniens* analysis weighs "the plaintiff's choice of forum; cost and convenience to the parties and witnesses; and public administration considerations." *Kelvion, Inc. v. Brion Energy Corp.*, 2017 WL 3711500, at *1 (N.D. Okla. Aug. 28, 2017), *aff'd sub nom. Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088 (10th Cir. 2019). "A valid forum selection clause, however, changes the calculus." *Id.* at *2 (citing *Atl. Marine*, 571 U.S. at 63). "[B]y contract[ing] to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Atl. Marine*, 571 U.S. at 63. Thus, absent "extraordinary circumstances unrelated to the convenience of the parties," courts should dismiss actions for *forum non conveniens*. *Id.* at 62.[6]

---

[6] Though the Atomic Individuals are not expressly identified as parties to the EULA, they can enforce the EULA's forum-selection clause. As alleged in the Complaint, the Atomic Individuals

**A.      Plaintiffs Are Bound by the EULA's Mandatory Forum-Selection Clause.**

By "installing, copying, or otherwise using the" Atomic Wallet software, Plaintiffs agreed

to be bound by the EULA. EULA at 1. The EULA contains a mandatory forum-selection clause

which requires that "[a]ny legal action or proceeding relating to this EULA ***shall be brought***

***exclusively in courts located in Tallinn, Estonia***, and each party consents to the jurisdiction

thereof." EULA § 7 (emphasis added). "The scope of a forum-selection clause is evaluated

according to ordinary principles of contractual interpretation." *Kelvion*, 918 F.3d at 1092. Section

7 of the EULA constitutes a mandatory forum-selection clause, as it "contain[s] clear language

showing that jurisdiction is appropriate only in the designated forum." *K & V Scientific Co., Inc.*

*v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002). Indeed,

forum-selection clauses with similar language requiring that an action "shall" be brought in a

particular forum are deemed mandatory. *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th

Cir. 1992). Plaintiffs' failure to reference the EULA in the Complaint is of no moment, as one

"cannot defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to

press, and of defendants to name in the suit." *Kelvion*, 918 F.3d at 1093.

"The ordinary meaning of the phrase 'relating to' is broad." *Chelsea Family Pharmacy,*

---

are "closely related to the dispute such that it becomes foreseeable that it will be bound." *Tin Giant,*
*LLC v. Atari VCS, LLC*, 2022 WL 911130, at *3 (D. Colo. Mar. 29, 2022) (citations and quotations
omitted); *accord Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013).
"Under this standard, courts have applied forum-selection clauses to a company's officers and
directors." *Tin Giant, LLC*, 2022 WL 911130, at *3 (finding claims against a member of an LLC
subject to forum selection clause). Here, Plaintiffs allege that the Atomic Individuals' supposed
liability arises from their roles as shareholders, alleged officers (AC ¶¶ 35, 37) and conduct on
behalf of Atomic Systems (*see id.* ¶¶ 57, 74). Accordingly, the Atomic Individuals are "closely
related to the dispute at hand." *Tin Giant*, 2022 WL 911130, at *3. The Atomic Individuals'
invocation of the EULA, which governs all rights and obligations with respect to the use of Atomic
Wallet, is foreseeable and comports with the parties' reasonable expectations. *See Magi XXI*, 714
F.3d at 722 ("[W]here the alleged conduct of the nonparties is closely related to the contractual
relationship, a range of transaction participants . . . should benefit from and be subject to forum
selection clauses." (quotation omitted)).

*PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1199 (10th Cir. 2009); *see also Digital Landscape Inc. v. Media Kings LLC*, 440 P.3d 1200, 1206-07 (Colo. App. 2018)). Plaintiffs allege that Atomic Systems and the Atomic Individuals negligently, or grossly negligently, maintained the security of its software (*e.g.*, AC ¶¶ 106, 111-12), that they misrepresented or omitted details regarding its software's security (*e.g.*, *id.* ¶¶ 118, 130), and that they conspired to make "numerous misrepresentations and omissions . . . about the safety and security of the Atomic Wallet platform" (*id.* ¶ 138). Because this action "relat[es] to" Atomic Systems' license of cryptocurrency wallet software to Plaintiffs, it must be adjudicated in Tallinn. EULA § 7.

## B. Public Interest Factors Favor *Forum Non Conveniens* Dismissal.

The public interest factors at play here all favor litigation in Estonia, not Colorado. Where, as here, there is an enforceable forum-selection clause, "it is [p]laintiffs who bear the burden to show why the public-interest factors weigh against transfer." *Dupray v. Oxford Ins. Co. TN LLC*, 645 F. Supp. 3d 1095, 1108 (D. Colo. 2022) (citing *Alt. Marine*, 571 U.S. at 67). Plaintiffs' choice of forum "merits no weight" where the selection violates a binding forum-selection clause. *Atl. Marine*, 571 U.S. at 63. In such situations, courts "may consider only public-interest factors and not the parties' private interests, because '[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation.'" *Dupray*, 645 F. Supp. 3d at 1101 (quoting *Atl. Marine*, 571 U.S. at 64); *see Kelvion, Inc.*, 918 F.3d at 1094. "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 63 n.6 (quotation omitted).

Here, Plaintiffs present "no evidence that administrative difficulties or court congestion will prevent . . . recei[pt] [of] a timely and fair trial in" the courts of Estonia. *Kelvion, Inc.*, 2017

WL 3711500, at *3 (quotation omitted). Further, Plaintiffs acknowledge that Atomic Systems is

an Estonian company. AC ¶ 33. Estonian courts have an interest in resolving disputes concerning

Estonian entities. Additionally, public factors favor the enforcement of binding forum-selection

clauses, such as EULA § 7. "If forum selection clauses are to be enforced as a matter of public

policy, that . . . policy requires that they not be defeated by artful pleading of claims." *Kelvion*,

918 F.3d at 1094 (citations and quotation omitted). "This public policy purpose is especially

important where claims grow out of the contractual relationship or if the gist of those claims is a

breach of that relationship." *Id.* (citations and quotation marks omitted). Moreover, Colorado has

a minimal interest in this action. Defendants are all foreign residents (AC ¶¶ 33-37), and, except

for Graham Dickinson, no Plaintiffs are Colorado residents (*id.* ¶¶ 11, 13-31).

### III.   **Plaintiffs Fail to State a Claim Under Rule 12(b)(6).**

#### A.   **Plaintiffs' Sparse Individualized Allegations Are Insufficient.**

Plaintiffs' barebones allegations concerning Messrs. Gladyshev and Sokolov are

insufficient to hold them personally liable. Even if Plaintiffs had sufficiently pleaded tort claims

against Atomic Systems—they have not, as explained in Part III.B-E, *infra*—Plaintiffs' attempt to

hold the Atomic Individuals personally liable simply because of their positions as alleged company

officers is improper.[7] Under Colorado's "responsible corporate officer doctrine," to establish an

officer's personal liability, "a plaintiff must show some form of participation by the officer in the

tort, or at least show that the officer directed, controlled, approved, or ratified the decision that led

to the plaintiff's injury." *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1176–77 (D.

---

[7] Mr. Sokolov is also not liable for the actions of Atomic Systems by virtue of being an individual shareholder. *See Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.*, 176 F. Supp. 2d 1091, 1097 (D. Colo. 2001) ("The mere fact that a corporation commits an unfair labor practice, or breaches a contract, or commits a tort, does not mean that the individual shareholders of the corporation should personally be liable.") (citation omitted).

Colo. 2019) (quotations omitted). "To be found personally liable to third persons for a tort, the officer of a corporation must have participated in the tort." *Hoang v. Arbess*, 80 P.3d 863, 868 (Colo. App. 2003). For example, in *Hoang*, defendant could be held personally liable where he was "personally involved in each step of the construction" and "knew or should have known" that construction techniques did not meet recommendations. *Id.* at 868-69.

Here, by contrast, Plaintiffs' allegations regarding the Atomic Individuals focus largely on their positions, not their conduct.[8] *See* AC ¶¶ 33-35, 37-39, 54, 56. Conspicuously absent from the Complaint are allegations concerning what the Atomic Individuals actually did, let alone any explanation as to how that conduct amounted to a tort. Plaintiffs' primary theory of the Atomic Individuals' liability seems to be that because they were involved in the development of Atomic Wallet, they can be held personally liable for the company's alleged torts. That is not the law, and Plaintiffs' failure to plead facts detailing the Atomic Individuals' personal participation in any wrongdoing that led to Plaintiffs' injuries is fatal to their claims against the Atomic Individuals.

### B.   Plaintiffs' Claims Are Precluded by the Economic Loss Rule.

Plaintiffs' claims are precluded by Colorado's economic loss rule and other states' similar rules.[9] Because Plaintiffs' relationship with Atomic Systems is governed by interrelated contracts,

---

[8] Only one paragraph (AC ¶ 74) in the 41-page Complaint alleges any potentially relevant individualized conduct, and these allegations, which allege Mr. Gladyshev's statements published in a February 22, 2022 CoinDesk article do not give rise to personal liability. As addressed in more detail in Part III.D.1, *infra*, Mr. Gladyshev's statements reported in this article cannot support a claim for fraudulent misrepresentation.

[9] Plaintiffs' claims are governed by the law of the foreign country in which each Defendant resides. *See SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 n.1 (D. Colo. 2017) (selecting law of defendant's forum state in a data breach case brought by citizens of various states); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1245 (D. Colo. 2018) (same). Accordingly, the claims against the Atomic Individuals are governed by Estonian law and the Atomic Individuals reserve the right to seek application of Estonian law to future proceedings. Assuming, *arguendo*, that state law applies, the Atomic Individuals seek dismissal under Colorado law and the law of the other jurisdictions where Plaintiffs reside.

and the Atomic Individuals' alleged conduct took place solely in their capacity as Atomic Systems officers, Plaintiffs cannot assert tort claims governed by that contractual relationship.

Colorado's "economic loss rule bars a party that suffered only economic loss as a consequence of a breach of contract from asserting a tort claim premised on the breach unless the breaching party also owed the nonbreaching party an independent duty of care under tort law." *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 506 P.3d 108, 118 (Colo. App. 2021). This rule applies where contractual duties arise from a network of "interrelated contracts." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004). The Atomic Individuals may invoke the economic loss doctrine, as "[w]hen the economic loss rule bars a claim against a corporate entity, it may also bar claims against that entity's officers and directors, even if the officers and directors were not parties to the contract at issue." *Former TCHR, LLC v. First Hand Mgmt. LLC*, 317 P.3d 1226, 1232 (Colo. App. 2012); *see also McWhinney Holding Co., LLLP v. Poag*, 2019 WL 1429288, at *3 (D. Colo. Mar. 29, 2019) (applying economic loss doctrine to defendants "[e]ven though [they] are not signatories to the [contract in question], [as] their duties stem from that agreement and relate directly to the performance of the agreement").[10]

Here, the Atomic Individuals' only duties to Plaintiffs arise from their creation of Atomic Wallet, and Plaintiffs' use of Atomic Wallet was governed by the EULA (ECF No. 32-2) and the Terms of Service ("TOS," ECF No. 32-3).

*First*, Plaintiffs assert negligence claims based on Defendants' alleged failure to maintain adequate app security. AC ¶¶ 106–08. "The purpose of the economic loss rule is to prevent parties from turning contract claims into tort claims, encourage parties to allocate risks and costs in their

---

[10] This doctrine is equally applicable to Mr. Sokolov in his capacity as a shareholder of Atomic Systems. *See Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1108 (Colo. App. 2004) (applying the economic loss rule to the sole shareholder of the corporate party to the contract).

contract bargaining, and enforce those expectancy interests." *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1083–84 (D. Colo. 2018). Here, the contracts between Atomic Systems and Plaintiffs make clear that Atomic Systems did not agree to insure Plaintiffs against loss, but rather expressly allocated the risk to Plaintiffs. *See* TOS §§ 5, 6, 8 (provisions disclaiming, limiting, and capping Atomic Systems' liability); EULA § 2(B) ("Licensor shall provide updates and maintenance on the Software on an as needed basis.").[11] As the Atomic Individuals' only duties to Plaintiffs arose from Atomic Systems' agreements with Plaintiffs, and Colorado has not recognized any independent duty "related to data security," the EULA and TOS thus establish the applicable duty of care. *SELCO*, 267 F. Supp. 3d at 1295. That means Plaintiffs' negligence claims are barred by the economic loss rule, and "[i]t makes no difference that [defendants'] contractual duties arise from a web of interrelated agreements . . . rather than bilateral contracts." *Id.* at 1296; *see also Bellwether*, 353 F. Supp. 3d at 1085 (applying Colorado's economic loss rule to data breach claims).[12]

*Second*, the economic loss rule also applies to Plaintiffs' claims for fraudulent misrepresentation, fraudulent concealment, and civil conspiracy based on alleged representations and omissions on Defendants' websites. The economic loss rule applies to fraud claims where

---

[11] Indeed, insurance companies, such as Lloyd's, offer insurance to protect against cryptocurrency wallet theft or other malicious hacks. *See* Lloyd's, *Lloyd's Launches New Cryptocurrency Wallet Insurance Solution for Coincover* (Feb. 28, 2020), https://www.lloyds.com/about-lloyds/media-centre/press-releases/lloyds-launches-new-cryptocurrency-wallet-insurance-solution-for-coincover.

[12] So too under at least the laws of California, Connecticut, Idaho, Kansas, Massachusetts, Missouri, New Jersey, New York, Nevada, Oregon, Ohio, South Carolina, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin. *See, e.g., SELCO*, 267 F. Supp. 3d at 1292; *Gordon*, 344 F. Supp. 3d at 1246; *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498–99 (1st Cir. 2009); *Xat.com Ltd. v. Hosting Servs.*, 2017 WL 449652, at *4 (D. Utah Feb. 2, 2017); *Rider v. Uphold HQ Inc.*, 2023 WL 2163208, at *6-*7 (S.D.N.Y. Feb. 22, 2023); *see also* 2 Frumer & Friedman, *Products Liability* § 13.07 (Matthew Bender, rev. ed.) (listing the states following some variation of the economic loss rule and collecting cases).

plaintiffs seek to recover through their tort claims relief expressly excluded under the contract. *Dream Finders*, 506 P.3d at 122. Put simply, Plaintiffs cannot pursue tort claims in "an attempt to avoid the application of unfavorable contractual language." *Id.* at 126. Yet that is precisely what Plaintiffs seek to do. Each of the interrelated contracts governing Plaintiffs' use of Atomic Wallet includes multiple specific disclaimers of warranties and representations. EULA §§ 10-11, 12; TOS §§ 5-7, 13. Because these contracts disclaim all warranties and representations, any claims based on alleged representations or omissions made after Plaintiffs began using Atomic Wallet or accessed Defendants' websites are barred by the economic loss rule. *See Dream Finders*, 506 P.3d at 126; *McWhinney*, 2018 WL 4680342, at *16.

### C.   Plaintiffs' Negligence and Gross Negligence Claims Fail as a Matter of Law.

To prevail on a negligence claim under Colorado law, a plaintiff must show: "(1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff." *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1146 (D. Colo. 2019) (quotation omitted).[13] To establish gross negligence, the plaintiff must show that the defendant acted recklessly, with conscious disregard for the safety of others. *Id.* at 1149. Here, Plaintiffs' negligence claims fail on each element.

*First*, Plaintiffs fail to allege a legal duty. They claim that Defendants owed them duties to maintain Atomic Wallet's security and to protect against hacking. AC ¶¶ 106–08. This Court has repeatedly rejected similar claims because Colorado recognizes no such duty. *See Bellwether*, 353 F. Supp. 3d at 1084; *Gordon*, 344 F. Supp. 3d at 1244 n.5; *SELCO*, 267 F. Supp. 3d at 1295.[14]

---

[13] These elements are generally consistent across state law. *Cf.* Restatement (Second) of Torts § 281.

[14] Courts in other states at issue, like Virginia and Washington, have likewise declined to recognize any such claimed duty. *See Deutsche Bank Nat'l Tr. Co. v. Buck*, 2019 U.S. Dist. LEXIS 54774, at *15 (E.D. Va. Mar. 29, 2019); *In re MCG Health Data Sec. Issue Litig.*, 2023 WL 3057428, at *3-*4 (W.D. Wash. Mar. 27, 2023). Other states, including Connecticut, Idaho, Missouri, Oregon,

*Second*, with respect to Plaintiffs' claim of a duty to "ensure that important passwords or security details could not be revealed to bad actors," AC ¶ 107, Plaintiffs do not plausibly allege any breach. Although Plaintiffs allege that a hack occurred and that their funds were stolen, they do not allege that important passwords or security details were stolen by bad actors from Atomic Systems. *See id.* Instead, they acknowledge that the cause of the hack is unknown. AC ¶ 77.

*Third*, and finally, Plaintiffs do not adequately plead that Atomic Individuals' alleged action or inaction proximately caused the North Korean hack. Again, Plaintiffs concede that the cause of the hack is unknown. The only allegation resembling proximate cause is the conclusory and circular assertion that the hack was a result of Defendants' failure to provide sufficient security, as evidenced by the hack. AC ¶ 83. This, too, warrants dismissal. *See Gilbert*, 423 F. Supp. 3d at 1149 (dismissing negligence claim where Plaintiffs relied on "naked assertions" of injury caused by the alleged negligence); *see also M.K. v. Google LLC*, 2023 U.S. Dist. LEXIS 133602, at *25 (N.D. Cal. Aug. 1, 2023) (similar).

### D.     Plaintiffs Do Not Adequately Allege Fraud.

Plaintiffs' fraudulent misrepresentation and fraudulent concealment claims also fail for reasons similar to those articulated by Evercode Infinite ("Evercode"). *See* ECF No. 32 § III(D). Rule 9(b)'s heightened pleading standard governs these claims, so Plaintiffs must "set forth the time, place[,] and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th

---

Tennessee, Texas, Utah, West Virginia, and Wisconsin, appear not to have yet addressed this specific issue. And although some courts have recognized the possibility of a duty in data security cases, that duty only arises where the defendant collects and stores personal, confidential information belonging to the plaintiffs. *See, e.g.*, *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14-*15 (D.N.J. Dec. 16, 2021). Here, in contrast, Plaintiffs acknowledge that Atomic Wallet is a non-custodial, decentralized wallet, meaning that Defendants have no access to Plaintiffs' sensitive information. AC ¶ 64. Nothing in the AC alleges that Defendants collect any confidential or personal information from Plaintiffs.

Cir. 2000) (quotation omitted); *accord W. State Bank v. Cosey, L.L.C.*, 2019 WL 5694271, at *3 (D. Colo. Nov. 4, 2019). Where, as here, fraud is alleged against multiple defendants, "blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth." *In re HomeAdvisor, Inc. Litig.*, 491 F. Supp. 3d 879, 892 (D. Colo. 2020) (quotation omitted).

### 1.     **Plaintiffs cannot establish fraudulent misrepresentation.**

To establish fraud by misrepresentation, Plaintiffs must show: "(1) a fraudulent misrepresentation of material fact was made by [the Atomic Individuals]; (2) [Plaintiffs] relied on the misrepresentations; (3) [Plaintiffs] have the right to rely on, or were justified in relying on, the misrepresentation; and (4) the reliance resulted in damages." *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994).[15] Plaintiffs fail to establish each element.

As Plaintiffs do not allege that Mr. Sokolov made any statements regarding Atomic Wallet, claims against him must fail. The only statements attributed to Mr. Gladyshev, based on statements he made in a February 22, 2022 CoinDesk article (AC ¶ 74), are also insufficient to support a claim. The statements that Plaintiffs attribute to Mr. Gladyshev from the CoinDesk article fall into two general categories, which are both insufficiently pleaded: (i) generic statements that "[s]ecurity is [Atomic Systems'] highest priority" (*id.*); and (ii) statements regarding Atomic Systems' plans to enhance the platform's security following the Least Authority Audit (*e.g.*, *id.* ("We have taken all the issues discovered by Least Authority into full account")).

*First*, Plaintiffs do not adequately allege that Mr. Gladyshev misrepresented a material fact. Generic statements regarding the adequacy of Atomic Wallet's security are nonactionable puffery. *Renfro v. Champion Petfoods USA, Inc*, 25 F.4th 1293, 1302 (10th Cir. 2022) ("[S]tatements of

---

[15] The elements of fraud are generally consistent across states, such that Plaintiffs' claims fail under the law of each jurisdiction where Plaintiffs reside. *Cf.* Restatement (Second) of Torts § 525.

opinion such as puffing or praise of goods by seller is no warranty."). As to the second category of alleged misstatements—concerning factual statements regarding plans for improvements to Atomic Wallet—Plaintiffs fail to allege that these statements were false. Plaintiffs do not allege, for example, that Atomic Systems was not implementing Least Authority's security recommendations. Rather, Plaintiffs employ circular logic, reasoning that since Plaintiffs' wallets were somehow hacked, Mr. Gladyshev must have lied about its security measures. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1116–17 (D. Colo. 2010) (dismissing fraud claim for insufficient allegations of falsity). Moreover, Mr. Gladyshev's alleged promise of future security enhancements is not actionable, as Plaintiffs do not allege that he lacked a present intent to make such enhancements. *Id.* at 1116.

*Second*, Plaintiffs fail to allege with particularity that they were actually aware of and relied upon Mr. Gladyshev's representations regarding the platform's security and saw those statements before downloading Atomic Wallet. "Plaintiffs cannot state a claim for fraudulent misrepresentation based on misrepresentations of which they were unaware." *Prymak v. Contemp. Fin. Sols., Inc.*, 2007 WL 4250020, at *21 (D. Colo. Nov. 29, 2007); *accord Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (similar). Website statements are likewise not actionable as fraud absent specific allegations for each Plaintiff as to their actual knowledge of and reliance on those statements. *See, e.g.*, *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 897–98 (E.D.N.Y. 2018); *Tyman v. Pfizer, Inc.*, 2017 WL 6988936, at *24 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018).

*Third*, Plaintiffs' supposed reliance was not reasonable, as Atomic Systems' TOS expressly state that its product was sold "at no cost, 'as-is' and without any warranty whatsoever, to the maximum extent permissible by law." TOS § 6. "[C]lear and unequivocal disclaimers . . . will

otherwise render a plaintiff's reliance on contradictory statements unreasonable as a matter of law." *Cahey v. Int'l Bus. Machines Corp.*, 2020 WL 5203787, at *11 (D. Colo. Sept. 1, 2020). Further, any reliance would be unreasonable as to the first category of statements, which concern Atomic Wallet's security, since Least Authority publicly warned customers about potential issues with Atomic Wallet's security. AC ¶ 72-73. Because Plaintiffs thus had "access to information that was equally available to both parties and would have led to the true facts, [Plaintiffs] have no right to rely upon the false representation." *M.D.C./Wood*, 866 P.2d at 1382; *see also Brush Creek Airport, LLC v. Avion Park, LLC*, 57 P.3d 738, 749 (Colo. App. 2002) (similar).

*Finally*, Plaintiffs fail to allege that their purported reliance resulted in any damages. Plaintiffs do not allege that their losses were the result of purported security vulnerabilities identified by Least Authority or the specific statements of fact concerning Atomic Wallet's security identified above. Rather, Plaintiffs admit that the cause of the hack is unknown, and therefore cannot establish that the Atomic Individuals' statements caused their injuries. *See 1881 Extraction Co. v. Kiinja Corp.*, 2023 WL 2424837, at *11 (D. Colo. Mar. 9, 2023) (dismissing fraud claim for inadequate causation allegations).

### 2.    Plaintiffs fail to allege concealment.

Plaintiffs' concealment claim fails for many of the same reasons. To state this claim, under Colorado law, Plaintiffs must allege:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Baker v. Wood, Ris & Hames, PC*, 364 P.3d 872, 883 (Colo. 2016) (quotation omitted).[16] This

---

[16] The elements of fraudulent nondisclosure or concealment are generally consistent, so Plaintiffs' claims fail no matter which law applies. *Cf.* Restatement (Second) of Torts §§ 550, 551.

claim fails for multiple reasons.

*First*, Atomic Systems and Least Authority publicly disclosed the existence of potential security issues with Atomic Wallet. AC ¶¶ 72-73 (Least Authority's publicly available blog post); *id.* ¶ 74 (Atomic Systems' public response). The Atomic Individuals could not "conceal" something that was publicly available. *See Aaron H. Fleck Revocable Tr. v. First W. Tr. Bank*, 2023 WL 6443880, at *7-*8 (D. Colo. Oct. 3, 2023) (no fraud where the information was public). *Second*, Plaintiffs do not sufficiently allege that the Atomic Individuals intended for Plaintiffs "to act on any purported concealment." *See Baker*, 364 P.3d at 884. Instead, the TOS's disclaimer provisions (TOS § 5) "refute any claim of intended reliance" (*see Baker*, 364 P.3d at 884). *Third*, Plaintiffs do not allege sufficient facts to show "that they acted based on their belief that the facts were other than what they understood them to be and therefore suffered damages." *See id.* Plaintiffs include no specific allegations regarding which Plaintiffs conducted which transactions on Atomic Wallet and when. And again, any reliance would be unjustifiable because of (i) the publicly available information warning against using Atomic Wallet and (ii) the contractual disclaimers. *See Cahey*, 2020 WL 5203787, at *10 (disclaimer language can preclude concealment claim). *Fourth*, and finally, as addressed above, Plaintiffs cannot show that any purported reliance resulted in any damages because the cause of the North Korean hack is unknown. *See Baker*, 364 P.3d at 884 ("[Plaintiffs] did not allege how they were damaged by any action that they took or did not take as a result of their alleged misunderstanding of the true facts.").

### E.    Plaintiffs Fail to State a Claim for Civil Conspiracy.

Plaintiffs' last claim alleges that Defendants conspired to commit fraud. AC ¶¶ 138–39. Under Colorado law, this requires Plaintiffs to show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Vickery v. Evelyn V. Trumble Living Tr.*, 277 P.3d

864, 871 (Colo. App. 2011) (quotation omitted).[17] Because Plaintiffs' conspiracy claim is based on alleged fraud, it must be pleaded with particularity under Rule 9(b). *See Bell v. 3M Co.*, 344 F. Supp. 3d 1207, 1228 (D. Colo. 2018). It is not.

Plaintiffs include no plausible underlying factual allegations for their conclusion that all Defendants conspired together to commit any unlawful act. *See, e.g.*, *id.* ("[P]laintiffs have also failed to explain how defendants participated in a conspiracy with each other rather than merely participating in parallel conduct."); *Gen. Steel Domestic Sales, LLC v. Chumley*, 2011 WL 2415167, at *6 (D. Colo. June 10, 2011) (similar). In any event, because Plaintiffs fail to state a claim for any underlying predicate unlawful act, their conspiracy claim necessarily fails. *See Vickery*, 277 P.3d at 871.

## IV. The Court Lacks Subject Matter Jurisdiction Because Plaintiffs Fail to Allege Plausible Damages in Excess of $5,000,000.

The Complaint should be dismissed under Rule 12(b)(1) because this Court lacks subject matter jurisdiction. Plaintiffs invoke CAFA, 28 U.S.C. § 1332(d)(2), to purportedly establish federal subject matter jurisdiction, alleging damages of approximately $100 million. AC ¶ 40. However, Plaintiffs agreed to an enforceable $50 per customer damages cap with Atomic Systems. TOS § 8.[18] As discussed in Section III.A, *supra*, Plaintiffs' individualized allegations regarding the Atomic Individuals are sparse. Plaintiffs essentially seek to hold the Atomic Individuals liable because they allegedly served as officers of Atomic Systems, who Plaintiffs claim caused them harm. Plaintiffs should not be permitted to make an end-run around the TOS's limitation of liability

---

[17] Again, the elements of this claim are generally similar across jurisdictions. *Cf.* Restatement (Third) of Torts: Liability for Economic Harm § 27.

[18] Such provisions are "generally enforceable because it represents the parties' bargained-for agreement regarding allocation of risks and costs in the event of a breach or other failure of the contemplated transaction." *Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 300 P.3d 963, 968 (Colo. App. 2012).

provision by asserting claims against the Atomic Individuals, who at all times were acting on behalf of Atomic Systems. Because it is a legal certainty that Plaintiffs' damages will be capped at approximately $275,000 (at $50 per each of the approximately 5,500 impacted accounts), which is well below the 100,000 class members required to meet CAFA's $5 million threshold, this action should be dismissed. *See Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016) (permitting dismissal of an action under Rule 12(b)(1) where it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.") (quotation omitted).[19]

## CONCLUSION

For these reasons, the Court should dismiss all claims against Atomic Systems.

Dated: March 14, 2024

Kyle Dorso
One Financial Center
Boston, MA 02111
(617) 856-8200 (telephone)
(617) 289-0899 (facsimile)
kdorso@brownrudnick.com

Jonathan White
Seven Times Square
New York, NY 10036
(212) 209-4800 (telephone)
(212) 209-4801 (facsimile)
jwhite@brownrudnick.com

Respectfully submitted,

**BROWN RUDNICK LLP**

*/s/ Stephen D. Palley*
Stephen D. Palley
601 Thirteenth Street NW Suite 600
Washington, DC 20005
(202) 536-1700 (telephone)
(617) 289-0466 (facsimile)
spalley@brownrudnick.com

*Counsel for Defendants Konstantin Gladyshev and Pavel Sokolov*

---

[19] The legal certainty test is satisfied where, as here, "the terms of a contract limit the plaintiff's possible recovery." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (quotation omitted). The applicability of a contract's damages cap is a purely legal issue that the Court should decide at the outset of the action, before the parties engage in costly litigation on an action lacking subject matter jurisdiction. *See Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 354 (7th Cir. 1995) (Easterbrook, J.) (affirming dismissal on a Rule 12(b)(1) motion for failure to plead the jurisdictional amount based on limitation of liability provision of contract); *see also Valhal Corp. v. Sullivan Assoc., Inc.*, 44 F.3d 195, 202-03, *rehearing en banc denied*, 48 F.3d 760 (3d Cir.1995) (dismissing based on a statutory damage cap).

**CERTIFICATE OF SERVICE**

I certify that on March 14, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all parties of record.


*/s/     Stephen D. Palley*