IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01582-PAB-MEH

ROBERT MEANY,
GRAHAM DICKINSON,
JOHN BRISCOE,
TODD GAMMON,
MICHAEL FISK,
PAUL UNRUH,
JOVAN SILVA DELGADO,
GREGORY LOBERG,
VINCENT D'AMELIO,
CARTER RUESS,
DANIEL WERTER,
JEFFREY ROGERS,
ERIK NELSON,
LANDON GRUBB,
SAM BREAZEALE,
BRENDA ABBLEY,
DERECK ERNEST,
ERIC JENSEN,
DOUGLAS EDWARDS,
DUSTIN FALK, and
DANIEL HAYES,

       Plaintiffs,

       v.

ATOMIC PROTOCOL SYSTEMS OÜ d/b/a/ Atomic Wallet,
EVERCODE INFINITE d/b/a Evercode Lab,
KONSTANTIN GLADYSHEV a/k/a Konstantin Gladych,
ILIA BRUSOV a/k/a Ilya Berezovsky a/k/a Ilya Bere, and
PAVEL SOKOLOV a/k/a Paul Sokolov,

       Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendant Evercode Infinite's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2), (5), and (6) [Docket No. 32], Defendant Atomic Protocol Systems OÜ d/b/a Atomic Wallet's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6) [Docket No. 50], and Defendants Konstantin Gladyshev and Pavel Sokolov's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6) [Docket No. 84].

## I.   BACKGROUND[1]

Plaintiffs in this case are individuals whose cryptocurrency assets were allegedly stolen by North Korean hackers on June 3, 2023.  Docket No. 15 at 2, 26, ¶¶ 4, 76, 78. Plaintiffs purchased, repurchased, invested, and/or reinvested cryptocurrency using a platform, or "wallet," operated by defendant Atomic Protocol Systems OÜ ("Atomic Wallet").  *Id.* at 5-12, ¶¶ 11-31, 33.  The wallet can be used to hold funds and to buy, sell, and trade cryptocurrency and is available via desktop and mobile application.  *Id.* at 12, ¶ 33.  Atomic Wallet users can access their wallets on different devices and recover the passwords to their wallets using sets of twelve randomly generated words known as "mnemonic keys."  *Id.* at 20, 22-23, ¶¶ 60, 64-65.

Defendant Evercode Infinite ("Evercode") is a software development company that developed the Atomic Wallet platform and applications and created the mnemonic keys.  *Id.* at 12-13, 20, ¶¶ 34, 60.  In addition, Evercode is responsible for updates to the wallet and its applications.  *Id.* at 13, ¶ 34.  Defendant Konstantin Gladyshev is the

---

[1] The facts below are taken from plaintiffs' First Amended Class Action Complaint and Demand for Jury Trial ("complaint"), Docket No. 15, and the declaration of plaintiff Graham Dickinson, Docket No. 60-2, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendants' motions to dismiss.

founder and CEO of Atomic Wallet and owns 74.4% of outstanding shares of the company. *Id.*, ¶ 35. Defendants Ilia Brusov and Pavel Sokolov are shareholders in Atomic Wallet, holding 12.8% each of the outstanding shares of the company, and are co-founders of Evercode. *Id.* at 13-14, ¶¶ 36-37. Mr. Gladyshev, Ms. Brusov, and Mr. Sokolov are Russian citizens. *Id.*, ¶¶ 35-37. Atomic Wallet is incorporated in Estonia. *Id.* at 12, ¶ 33. Evercode is incorporated in the United Arab Emirates. *Id.* at 13, ¶ 34.

Of the twenty-one named plaintiffs in this case, only Graham Dickinson is a citizen of Colorado. *See id.* at 5-11, ¶¶ 11-31. Mr. Dickinson "became aware of Atomic Wallet while in Colorado after receiving Atomic Wallet's advertisements on the social media platform Twitter, now known as X." Docket No. 60-2 at 2, ¶ 3. He downloaded the Atomic Wallet mobile application onto his phone while he was in Colorado. *Id.*, ¶ 5. After downloading the Atomic Wallet mobile application, Mr. Dickinson received a mnemonic key that he understood to be intended to authenticate his ownership of the wallet and to protect the wallet and the assets contained in it from unauthorized users. *Id.* at 3, ¶¶ 6-10. Mr. Dickinson "routinely communicated with Atomic Wallet and its customer service representatives from [his] home in Denver, Colorado," and it was his "understanding and belief that Atomic Wallet and its customer service representatives knew or should have known that [he] was a citizen and resident [sic] Colorado." *Id.* at 4, ¶¶ 14-15. From time to time, Mr. Dickinson received "cash back tokens" from Atomic Wallet and communicated with Atomic Wallet's customer service representatives concerning the cash back tokens. *Id.*, ¶ 17. When Atomic Wallet sent Mr. Dickinson security updates, which had been developed by Evercode, Mr. Dickinson followed the instructions provided by Atomic Wallet to implement them. *Id.*, ¶ 19. On June 3, 2023,

Mr. Dickinson opened his wallet and discovered that the cryptocurrency he was holding there was gone.  *Id.*, ¶ 20.

Plaintiffs allege that defendants "knew of existing security vulnerabilities in the Atomic Wallet platform since at least as early as April 2021 but failed to take necessary security measures or precautions to protect user data and funds.  In particular, Defendants were informed by its [sic] security auditor Least Authority that funds held in Atomic Wallet may be at risk due to 'existing security vulnerabilities' and that Atomic Wallet should not be deployed or used until the security vulnerabilities were sufficiently remediated but took no measures to inform users of those risks or protect against those risks."  Docket No. 15 at 3, ¶ 5.  Plaintiffs allege that, because defendants failed to implement reasonable safeguards against security vulnerabilities, the Atomic Wallet platform was hacked and plaintiffs' funds were stolen.  *Id.* at 4, ¶ 8.  On June 3, 2023, sources began reporting an attack on Atomic Wallet that has since been linked to a North Korean hacking group.  *Id.* at 26, ¶¶ 76, 78.  An estimated 5,500 wallets were affected by the attack, and losses were reported at over $100 million.  *Id.*, ¶ 76.

Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, seeking to represent one nationwide class and twenty-one subclasses of individuals who used the Atomic Wallet platform and whose assets were stolen in June 2023.  *Id.* at 29-32, ¶ 91.  One of the proposed subclasses, the Colorado Subclass, consists of "[a]ll persons or entities in the state of Colorado who, within the applicable limitations period, purchased, repurchased, invested, and/or reinvested cryptocurrency on the Atomic Wallet platform and whose assets were stolen in June 2023."  *Id.* at 29, ¶ 91(3).  Plaintiffs bring five claims against defendants: negligence, gross negligence,

fraudulent misrepresentation, fraudulent concealment, and civil conspiracy.  *Id.* at 36-40, ¶¶ 105-143.  Plaintiffs assert that the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  *Id.* at 14-15, ¶ 40.

On October 27, 2023, Evercode filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (5), and (6).  Docket No. 32.  Plaintiffs responded, Docket No. 60, and Evercode replied.  Docket No. 66.  On November 16, 2023, Atomic Wallet filed a motion to dismiss pursuant to Rules 12(b)(1), (2), and (6).  Docket No. 50. Plaintiffs responded, Docket No. 63, and Atomic Wallet replied.  Docket No. 71.  On March 14, 2024, Mr. Gladyshev and Mr. Sokolov (the "individual defendants") filed a motion to dismiss pursuant to Rules 12(b)(1), (2), and (6).  Docket No. 84.  Plaintiffs responded,[2] Docket No. 95, and the individual defendants replied.  Docket No. 97.

---

[2] Plaintiffs did not file a response to the individual defendants' motion to dismiss within 21 days, as is required by the local rules.  *See* D.C.COLO.LCivR 7.1(d). However, plaintiffs filed a response on April 15, 2024, Docket No. 93, and filed a motion for extension of time to file a response to the individual defendants' motion to dismiss on April 30, 2024.  Docket No. 96.  The individual defendants filed a motion to strike as untimely plaintiffs' response to the motion to dismiss.  Docket No. 98.  The Court granted plaintiffs' motion for an extension of time and denied the individual defendants' motion to strike.  Docket No. 109.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(2)[3]

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant.  Plaintiff bears the burden of establishing personal jurisdiction.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  Plaintiff can satisfy his burden by making a *prima facie* showing.  *Dudnikov*, 514 F.3d at 1070.  A court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists.  *Ditter v. Subaru Corp.*, No. 20-cv-02908-PAB-MEH, 2022 WL 889102, at *2 (D. Colo. Mar. 25, 2022) (citing *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008)).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further.  *Id.*

---

[3] The Tenth Circuit has noted that the extent of a plaintiff's burden to establish personal jurisdiction and the scope of a court's review "depend in part on the nature of the district court's response to defendants' motion seeking dismissal for lack of personal jurisdiction."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  "A district court has discretion to resolve such a motion in a variety of ways – including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself."  *Id.*  Here, no party requests an evidentiary hearing; however, plaintiffs submit evidence in support of their position.  The Court therefore will exercise its discretion to resolve defendants' motions based on the documents submitted by the parties.  This decision dictates the standard of review applied.  *Id.* at 1070.  When, as here, personal jurisdiction is reviewed on the basis of the complaint and affidavits, the court "tak[es] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiffs' complaint."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–62 (2007)).  "Similarly, any factual disputes in the parties' affidavits must be resolved in plaintiffs' favor."  *Id.* (citing *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)).

However, the plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Tompkins v. Exec. Comm. of S. Baptist Convention*, 2015 WL 1568944, at *4 (D.N.M. Mar. 31, 2015), *aff'd sub nom. Tompkins v. Lifeway Christian Res. of the S. Baptist Convention*, 671 F. App'x 1034 (10th Cir. 2016) (unpublished) (quoting *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *AST Sports Sci.*, 514 F.3d at 1057; *see also Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Dudnikov*, 514 F.3d at 1070.[4]

## III.   ANALYSIS

The motions to dismiss argue that plaintiffs have failed to establish personal jurisdiction over Atomic Wallet, Evercode, and the individual defendants.  Docket No. 32 at 5-9; Docket No. 50 at 6-7; Docket No. 84 at 3-6.  The Court will therefore first determine whether it may exercise personal jurisdiction over these four defendants.[5]

---

[4] Given the Court's resolution of defendants' Rule 12(b)(2) arguments, it is not necessary to consider defendants' Rule 12(b)(1), (5), and (6) arguments.

[5] Although "jurisdictional questions ordinarily must precede merits determinations in dispositional order, . . . there is no mandatory 'sequencing of jurisdictional issues.'" *Sinochem*, 549 U.S. at 431 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).  The Tenth Circuit has held that "[f]ederal courts may choose to avoid difficult subject matter jurisdiction questions and dispose of a case on a 'threshold, nonmerits issue,' . . . so long as resolving the issue 'does not entail any assumption by the court of substantive law-declaring power.'" *Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012) (quoting *Sinochem*, 549 U.S. at 433, 466).  Because the issue of personal jurisdiction is dispositive of the motions to dismiss, the Court will address personal jurisdiction without first analyzing the arguments put forward by

*See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)").

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005); *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1220 (10th Cir. 2021). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. *Ditter*, 2022 WL 889102, at *2. Plaintiffs do not argue that the Court has general jurisdiction over any of the defendants in this case.

---

Atomic Wallet and the individual defendants that the Court lacks subject matter jurisdiction over this case. *See* Docket No. 50 at 4-6; Docket No. 84 at 19-20.

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal*., 582 U.S. 255, 262 (2017).  That is, a "plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts." *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V*., 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)); *see also Hood*, 21 F.4th at 1221-22.  In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  The "common formulation of the rule demands that the suit 'arise out of or relate to the defendant's contacts with the forum.'"  *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 362 (2021) (quoting *Bristol-Myers*, 582 U.S. at 262).  This rule does not require "proof of causation" between "a plaintiff's suit and a defendant's activities."  *Id*.  "Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."  *Dudnikov*, 514 F.3d at 1078.

The specific jurisdiction analysis is two-fold.  First, the court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Within this inquiry, the court must determine whether the defendant purposefully directed its activities at residents of the

forum, *Burger King*, 471 U.S. at 472, and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Sup. Ct. of Cal*., 480 U.S. 102, 109 (1987) (internal quotations omitted). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co*., 592 U.S. at 359 (quoting *Burger King*, 471 U.S. at 475); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State"). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co*., 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984)). "They must show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal quotation marks and alterations omitted)). Second, if a defendant's actions create sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 105.

### A. **Atomic Wallet**

Atomic Wallet argues that the Court should dismiss plaintiffs' claims against it for lack of personal jurisdiction because plaintiffs "fail to meet the Due Process Clause's 'purposeful availment' requirement." Docket No. 50 at 6; *see Ford Motor Co*., 592 U.S. at 359. Plaintiffs respond that the purposeful availment requirement is satisfied based on the following actions by Atomic Wallet: (1) marketing Atomic Wallet in Colorado to

Colorado residents; (2) making the Atomic Wallet desktop and mobile applications available to be downloaded in Colorado by Colorado residents; (3) sending cash back tokens to users located in Colorado; (4) making mnemonic keys and security updates available to users in Colorado; and (5) communicating with users located in Colorado. Docket No. 63 at 3.

### 1. Marketing

In *Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011), the Tenth Circuit held that "merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed. . . . Rather, . . . postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message." The Tenth Circuit "observed that Internet activities such as mass emailing, website hosting, and Internet posting are 'peculiarly non-territorial' because 'the internet operates "in" every state regardless of where the user is physically located,' and 'when a person places information on the Internet, he can communicate with persons in virtually every jurisdiction.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 844 (10th Cir. 2020) (quoting *Shrader*, 633 F.3d at 1240). Therefore, courts in this circuit analyze personal jurisdiction in cases concerning internet-based activities by "placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Shrader*, 633 F.3d at 1240.

Plaintiffs argue that Atomic Wallet marketed its platform "in Colorado to Colorado residents," citing Mr. Dickinson's declaration. Docket No. 63 at 3. Mr. Dickinson's

declaration states that he "became aware of Atomic Wallet while in Colorado after receiving Atomic Wallet's advertisements on the social media platform Twitter, now known as X," and that "the advertisements [Mr. Dickinson] read while in Denver, Colorado claimed that Atomic Wallet was a safe and secure platform for cryptocurrency which would allow [him] to stake [his] cryptocurrency to earn interest on any loaned digital asset."  Docket No. 60-2 at 1, ¶¶ 3-4.  Although these statements indicate that advertisements for Atomic Wallet posted on Twitter, now known as X, were viewable in Colorado, they do not establish that Atomic Wallet intentionally directed its internet advertising activity to Colorado.  Moreover, the complaint contains no allegations that Atomic Wallet marketed its platform to Colorado citizens, in particular.  Mr. Dickinson does not, for example, state that he indicated he was a Colorado citizen on any form he filled out when signing up for an Atomic Wallet account or otherwise informed Atomic Wallet that he lived in Colorado.  Thus, plaintiffs do not allege that Atomic Wallet "intentionally direct[ed]" its marketing activity at Colorado "rather than just having the [advertisements] accessible there."  *See Shrader*, 633 F.3d at 1240.  As a result, Atomic Wallet's advertisements do not give rise to personal jurisdiction in Colorado.  *See id*. at 1244 ("merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed"); *Fluent*, 955 F.3d at 846 (finding no personal jurisdiction in Utah over sender of mass marketing emails because plaintiff did not show that marketer knew that any email recipient resided in Utah and "[g]eneral knowledge that a message will have a broad circulation does not suffice"); *cf. XMission L.C. v. PureHealth Research*, 105 F.4th 1300, 1311 (10th Cir. 2024) (finding purposeful availment where company sent marketing emails to former

customers in Utah knowing that they lived in Utah, thus "expressly aim[ing] its conduct at Utah").  Accordingly, the Court finds that plaintiffs have not alleged purposeful availment based on the advertisements viewed by Mr. Dickinson.

### 2. *Cash Back Tokens, Security Updates, Mnemonic Keys, and Applications*

Plaintiffs' argument that the purposeful availment requirement is satisfied because Atomic Wallet made security updates, mnemonic keys, desktop and mobile applications available to Colorado users and sent cash back tokens to Colorado users, *see* Docket No. 63 at 3, appears to invoke a market exploitation theory of purposeful availment.  The Tenth Circuit has held that "a defendant purposefully directs activities into the forum State if it continuously and deliberately exploits the forum State's market." *Fluent*, 955 F.3d at 849.

One of the factors[6] suggesting purposeful direction based on market exploitation is a "high sales volume and large customer base and revenues" in the forum state.  *Id.* (quoting *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 915 (10th Cir. 2017)).  Courts in this district have found that, in cases involving online sales of tangible goods, "minimum contacts can be established on the basis of the substantial or regular flow of sales from a non-resident company to residents of the forum state."  *SEBO Am., LLC v. Red Vacuums LLC*, No. 23-cv-0116-WJM-SBP, 2024 WL 964816, at *3-4 (D.

---

[6] The other factor identified by the Tenth Circuit is "extensive nationwide advertising or ads targeting the forum state." *Old Republic*, 877 F.3d at 915.  As discussed earlier, plaintiffs have not demonstrated that Atomic Wallet targeted advertising to Colorado, and plaintiffs do not allege that Atomic Wallet engaged in extensive nationwide advertising.  *See id.* at 916 (finding no nationwide marketing effort where defendant marketed using only one platform); *cf. uBID, Inc. v GoDaddy Grp., Inc.*, 623 F.3d 421, 427 (7th Cir. 2010) (finding nationwide marketing effort based on "many television advertisements on national networks . . . [and] extensive venue advertising and celebrity and sports sponsorships.").

Colo. Mar. 6, 2024) (collecting cases).  Here, however, plaintiffs do not allege that any

Colorado citizen except for Mr. Dickinson was an Atomic Wallet user.  Thus, plaintiffs'

allegations concerning "sales volume, customer base, and revenues," *see Old Republic*,

877 F.3d at 915, consist of the allegation that a single individual in Colorado, Mr.

Dickinson, downloaded the Atomic Wallet mobile application, received a mnemonic key,

implemented security updates, and received cash back tokens.  Docket No. 15 at 5,

¶ 12; Docket No. 60-2 at 2-4, ¶¶ 5-6, 17, 19.  This is insufficient to establish market

exploitation.  *See SEBO America, LLC v. Mega Mart Warehouse LLC*, No. 22-cv-02898-

PAB-KAS, 2024 WL 1257534, at *6 (D. Colo. Mar. 25, 2024) (holding that four orders

shipped to Colorado were insufficient to establish personal jurisdiction); *Red Vacuums*,

2024 WL 964816, at *3-4 (holding that seven orders placed from Colorado were

insufficient to establish personal jurisdiction).

      Moreover, the nature of the products at issue here—software applications—

makes it even less likely that Atomic Wallet deliberately exploited the Colorado market

by making the applications, mnemonic keys, and security updates available to Mr.

Dickinson or by sending cash back tokens to him.  Unlike tangible goods that must be

shipped to customers in a forum state, Atomic Wallet's products can reach users

without Atomic Wallet knowing where those users are located.  The Court finds that

plaintiffs have not established purposeful availment based on market exploitation.

### 3.  *Communications with Colorado Customers*

      Finally, plaintiffs argue that the purposeful availment requirement is satisfied

because Atomic Wallet communicated with users located in Colorado.  Docket No. 63 at

3.  Mr. Dickinson's declaration states that he "routinely received communications from

Atomic Wallet that were sent to the U.S. email address on file with Atomic Wallet" and "routinely communicated with Atomic Wallet and its customer service representatives from [his] home in Denver, Colorado."[7]  Docket No. 60-2 at 3-4, ¶¶ 13-14.  In addition, Mr. Dickinson states that it was his "understanding and belief that Atomic Wallet and its customer service representatives knew or should have known that [he] was a citizen and resident in Colorado."  *Id.* at 4, ¶ 15.

Mr. Dickinson's statement that Atomic Wallet knew he was a Colorado citizen is wholly conclusory, as Mr. Dickinson provides no explanation as to why it would know that.  As such, the Court will disregard it.  However, even if the Court did consider the allegation that Atomic Wallet knew that Mr. Dickinson was a Colorado citizen, it would not constitute purposeful availment.  The Tenth Circuit has held that "a defendant's knowledge of a *plaintiff's* connection to a forum state, without more, cannot establish express aiming towards the forum state."  *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 970 (10th Cir. 2022) (citing *Walden*, 571 U.S. at 289).  The fact that, sometime after he downloaded the Atomic Wallet application, Mr. Dickinson communicated with Atomic Wallet customer representatives who knew he was a Colorado citizen is not evidence that Atomic Wallet intentionally directed its operations at Colorado rather than just having its applications accessible there.  *See Shrader*, 633 F.3d at 1240.  The Court finds that plaintiffs have not alleged purposeful availment based on the communications between Mr. Dickinson and Atomic Wallet and its customer service representatives. Therefore, the Court finds that plaintiffs have failed to demonstrate that Atomic Wallet

---

[7] The declaration states that communications between Mr. Dickinson and Atomic Wallet and/or its customer service representatives are attached as an exhibit to the declaration, Docket No. 60-2 at 4, ¶ 16, but no such exhibit is attached.

purposefully availed itself of Colorado law and have failed to establish that Atomic Wallet has the minimum contacts with Colorado necessary for personal jurisdiction. *See Burger King*, 471 U.S. at 472.

### 4. Tortious Conduct

Plaintiffs also argue that the Court may exercise personal jurisdiction over Atomic Wallet on the basis that "Plaintiff Dickinson and other Colorado proposed class members' Atomic Wallet accounts were hacked while in Colorado" and "Colorado's long-arm statute may also be satisfied . . . 'when tortious conduct initiated in another state causes injury in Colorado." Docket No. 63 at 3 (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1507 (10th Cir. 1995)). Although Colorado's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause," *see Dudnikov,* 514 F.3d at 1070, plaintiffs' failure to establish minimum contacts consistent with the Due Process Clause does not satisfy the Colorado long-arm statute.[8]

The Court will therefore dismiss plaintiffs' claims against Atomic Wallet without prejudice for lack of personal jurisdiction.[9]

### B. Evercode

Evercode argues that the Court lacks personal jurisdiction over it because plaintiffs have failed to establish purposeful availment and have therefore failed to establish that Evercode has minimum contacts with Colorado. Docket No. 32 at 6-7. Evercode claims that plaintiffs "fail to allege any actual contacts between Evercode and

---

[8] Moreover, it is insufficient for the injury resulting from tortious conduct to be felt in Colorado. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985).

[9] *See Hollander v. Sandoz Pharm. Corp*., 289 F.3d 1193, 1216 (10th Cir. 2002) (noting that dismissal for lack of personal jurisdiction is without prejudice).

Colorado or that Evercode deliberately exploited a Colorado market.  Rather, Evercode's business only runs through the end product, Atomic Wallet."  *Id.* at 6. Plaintiffs respond that Evercode "design[ed] and develop[ed] the Atomic Wallet software, mnemonic keys, and security updates—all of which were downloaded in Colorado and used by Colorado residents including Plaintiff Dickinson."  Docket No. 60 at 7.

Plaintiffs' argument fails for two reasons.  First, as discussed above, making Atomic Wallet software, mnemonic keys, and security updates available to download and use in Colorado by Colorado residents does not, by itself, constitute deliberate exploitation of the Colorado market.  Second, plaintiffs do not allege that Evercode caused Atomic Wallet to make its software, mnemonic keys, and security updates available to Colorado residents, thereby deliberately exploiting the Colorado market.[10] The Supreme Court has held that, for a defendant's contacts with a forum state to constitute purposeful availment, the "contacts must be the defendant's own choice" and must "show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."  *Ford Motor Co.*, 592 U.S. 359 (quoting *Walden,* 571 U.S. at 285) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  Thus, even if plaintiffs could establish that Atomic Wallet has minimum contacts with Colorado because of Atomic Wallet's decision to make the Atomic Wallet software, mnemonic keys, and security updates available to Colorado residents, plaintiffs have not

---

[10] Plaintiffs do not allege any direct contacts between Evercode and Colorado residents.

established that Evercode has minimum contacts with Colorado on that basis given that plaintiffs have not shown that Evercode was involved in Atomic Wallet's decision.  The Court therefore finds that plaintiffs have failed to demonstrate that Evercode purposefully availed itself of Colorado law on the basis that Atomic Wallet software, mnemonic keys, and security updates were available for download and use by Colorado residents.

Plaintiffs' argument that Evercode "is closely affiliated with Atomic Wallet" and that defendants "together operate a web of interrelated crypto blockchain companies," Docket No. 60 at 7, is similarly unavailing.  First, plaintiffs have not established that Atomic Wallet has minimum contacts with Colorado.  Second, even if plaintiffs had established that the Court has personal jurisdiction over Atomic Wallet, it is not enough to show that Evercode is affiliated with another defendant over which the Court has personal jurisdiction.  *See Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.  Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." (quotations and citations omitted)).  To establish that Evercode has minimum contacts with Colorado, plaintiffs must show that Evercode itself took "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within" Colorado.  *See Hanson*, 357 U.S. at 253.  Plaintiffs have failed to do so.

Finally, plaintiffs claim that the "[r]equirements of Colorado's long-arm statute may also be satisfied when . . . tortious conduct initiated in another state causes injury

18

in Colorado," stating that Mr. Dickinson's Atomic Wallet account "was hacked while in Colorado, and as a result, he lost approximately $33,000."  Docket No. 60 at 7 (citations and quotations omitted).  The Court rejects this argument with regard to Evercode for the same reasons that the Court rejected it with regard to Atomic Wallet.

The Court finds that plaintiffs have failed to meet their burden to establish that Evercode has minimum contacts with Colorado.  The Court will therefore dismiss plaintiffs' claims against Evercode without prejudice for lack of personal jurisdiction.

### C.  Mr. Gladyshev and Mr. Sokolov

The individual defendants argue that the Court lacks personal jurisdiction over them because plaintiffs have failed to establish purposeful availment.  Docket No. 84 at 3.  Plaintiffs respond that the individual defendants were "primary participants in the wrongdoing giving rise to this Court's jurisdiction over Atomic Wallet and Evercode" because the individual defendants directed and controlled the contacts that Atomic Wallet and Evercode had with Colorado.  Docket No. 95 at 3.  Accordingly, plaintiffs argue that, "should this Court find that it has personal jurisdiction over Atomic Wallet and/or Evercode, it also has jurisdiction over the Individual Defendants."  *Id.*  Plaintiffs raise no other basis for the Court's exercise of personal jurisdiction over the individual defendants.

As discussed above, plaintiffs fail to demonstrate that Atomic Wallet and Evercode had the minimum contacts with Colorado required for this Court to exercise personal jurisdiction over them.  Therefore, plaintiffs cannot establish that the individual defendants had minimum contacts with Colorado on the basis that they were primary

participants[11] in Atomic Wallet and Evercode's alleged wrongdoing.  The Court finds that plaintiffs have failed to demonstrate purposeful availment with regard to the individual defendants and plaintiffs have failed to establish the minimum contacts necessary for personal jurisdiction.  *See Burger King*, 471 U.S. at 472.  The Court will dismiss plaintiffs' claims against the individual defendants without prejudice for lack of personal jurisdiction.

### D.  Ms. Brusov

Pursuant to Fed. R. Civ. P. 4(m),

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specific time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Plaintiffs filed the operative complaint in this case on August 16, 2023.  Docket No.  15.  On December 18, 2023, plaintiffs filed a motion seeking an extension of time to serve Ms. Brusov.  Docket No. 68 at 1.  On January 11, 2024, Magistrate Judge Michael E. Hegarty granted plaintiffs' motion, ordering plaintiffs to serve Ms. Brusov on or before March 18, 2024.  Docket No. 74.  Plaintiffs have not filed a proof of service on Ms. Brusov and Ms. Brusov has not appeared.

### E.  Request to Amend Complaint

Plaintiffs' responses to the motions to dismiss each contain a cursory request for leave to amend the complaint.  Docket No. 60 at 20; Docket No. 63 at 20; Docket No.

---

[11] The individual defendants dispute that plaintiffs' complaint plausibly alleges that the individual defendants were primary participants in Atomic Wallet and Evercode's alleged wrongdoing.  Docket No. 97 at 3.

95 at 20.  These requests do not comply with the local rules, which provide that a motion "shall not be included in a response or reply to the original motion," but must instead "be filed as a separate document."  D.C.COLO.LCivR 7.1(d).  Moreover, plaintiffs do not identify the basis for amendment.  *See* Docket No. 60 at 20; Docket No. 63 at 20; Docket No. 95 at 20.  The Court will therefore deny plaintiffs' requests to amend the complaint.  *See Carraway v. State Farm Fire and Cas. Co.*, 2023 WL 5374393, at *7 (10th Cir. 2023) ("we have consistently affirmed denials of leave to amend where—as here—leave was based on 'fleeting request[s]' which 'd[o] not identify with specificity' the basis for amendment") (quoting *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1172 (10th Cir. 2023)).

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendant Evercode Infinite's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2), (5), and (6) [Docket No. 32] is **GRANTED**.  It is further

**ORDERED** that Defendant Atomic Protocol Systems OÜ d/b/a Atomic Wallet's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6) [Docket No. 50] is **GRANTED**.  It is further

**ORDERED** that Defendants Konstantin Gladyshev and Pavel Sokolov's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6) [Docket No. 84] is **GRANTED**.  It is further

**ORDERED** that Defendant Evercode Infinite's Motion to Dismiss for *Forum Non Conveniens* [Docket No. 54] is **DENIED as moot**.  It is further

**ORDERED** that Defendant Evercode Infinite's Motion to Strike Class Allegations [Docket No. 33] is **DENIED as moot**.  It is further

**ORDERED** that plaintiffs' first, second, third, fourth, and fifth claims against Atomic Wallet, Evercode, Konstantin Gladyshev, and Pavel Sokolov are **DISMISSED without prejudice**.  It is further

**ORDERED** that Atomic Wallet, Evercode, Konstantin Gladyshev, and Pavel Sokolov are dismissed from this case.  It is further

**ORDERED** that, within **21 days** of the entry of this Order, plaintiffs shall show cause why defendant Ilia Brusov should not be dismissed from this case pursuant Fed. R. Civ. P. 4(m).  If plaintiffs fail to show good cause by this deadline, then the Court may dismiss the claim against Ilia Brusov without prejudice under Fed. R. Civ. P. 4(m).

DATED September 10, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge